UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>                 Plaintiff,<br><br>v.<br><br>McCAIN FOODS USA, INC.<br><br>                 Defendant. | Case No. 1:16-cv-00449-BLW<br><br>**STIPULATED ORDER REGARDING E-DISCOVERY** |

Finding good cause therefore,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion (docket no. 16) is GRANTED, and the following Stipulation shall govern E-Discovery in this case:

### GENERAL PRINCIPLES

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the Court's discretion or by agreement of the parties.

3. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

### PRODUCTION FORMAT

4. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

    a. <u>General Document Image Format</u>. Each electronic document shall be produced in single-page, 300 dpi CCITT Group IV black and white tagged Image File Format

("TIFF") format. Where color is imperative to full understanding of the document, color should suitably be produced in full color .jpeg images. Load files shall be provided to indicate the location and unitization of the TIFF files. All data load files shall be compatible with Concordance and Summation and at a minimum, include a DAT file. TIFF files shall be accompanied by searchable text files named as per the TIFF image, shall be provided with page breaks in load file identifying document start and end, and shall be named with a unique production number followed by the appropriate extension. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The image load file shall be produced in .OPT and .LFP format. All documents associated with emails shall be produced with cross reference between the parent email and child attachments intact.

   b. <u>Footer</u>. Each document image shall contain a footer with a sequentially ascending production number.

   c. <u>Non-Convertible Files</u>. Certain Types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *ast. *sldprt. *stp. *.step *.mpeg *.mpg *.ram *.rm *psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma. Each TIFF placeholder will contain the endorsed bates number and endorsed confidentiality designation. The file itself will be produced natively in accordance with paragraph 4(d) of this order.

STIPULATED ORDER REGARDING E-DISCOVERY - 2
4820-0407-2515 v3

      d.    <u>Native Files</u>.  Documents produced in native file format shall be labeled, to the extent practicable, by assigning a Bates number as the file name (e.g. ABC0000001.xls).  The load file should contain a field called "NATIVE" with the path to the corresponding native file.  Native files should be in a directory named "NATIVES."  A party may seek production of native files for any produced images that are deemed unusable, unsearchable, or unduly burdensome.  Upon receipt of such request, the producing party shall produce the document in its native format to the extent it exists.

      e.    <u>Metadata</u>.  Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Exhibit A.  However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original if it is not possible to automate the creation of metadata when the document is collected.  The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

      f.    <u>No Backup Restoration Required</u>.  Absent a showing of good cause, no party need restore any form of media where backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

## **ESI D**ISCLOSURES

5.    As part of the Initial Disclosures due on **March 28, 2017**, or at a later time if agreed to by the parties, each party shall disclose:

      a.    <u>Custodians</u>.  The eight custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, and the type of potentially discoverable information likely to be under his or her control.

    b.  <u>Non-Custodial Data Sources</u>.  A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

    c.  <u>Third-Party Data Sources</u>.  A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

  6.  The parties agree to meet and confer on or before **April 7, 2017** to develop a schedule (not to be filed with the Court) by which proposed email search terms will be exchanged, email searches will be executed, revised email search terms exchanged, and results of such searches exchanged.  The parties shall cooperate in revising the appropriateness of the search terms.  The parties agree that any discussions relating to email search terms, including but not limited to discussions relating to the procedures to be employed for collecting and searching emails and the results of such searches, shall not be a waiver of attorney-client privilege or work product protections.

  7.  Each requesting party shall limit its email production requests to a total of eight custodians and five keyword search terms per custodian per party, and an appropriately-limited time frame for which emails must be collected. The parties may jointly agree to modify this limit without the Court's leave.  Email search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall

count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. The parties agree that within fourteen (14) days of receiving a requesting party's email production requests, the parties will meet and confer to discuss the requesting party's email search terms, including but not limited to the procedures to be employed for collecting and searching emails and reporting the results of such searches as well as a reasonable time frame for email production, and that any such discussions shall not be a waiver of attorney-client privilege or work product protections.

8. The Court shall consider contested requests to run searches using email search terms beyond the default limits upon a showing of good cause and distinct need. The Court shall also consider whether to shift costs for email search terms beyond the default limits that result in unreasonable or disproportionate discovery.

9. Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The requesting party shall not unreasonably oppose such further restrictions designed to reduce the unreasonably large number of immaterial search results.

10. All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format, above.

**PRESERVATION OF ESI**

Case 1:16-cv-00449-BLW   Document 18   Filed 03/14/17   Page 6 of 9

11. The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

12. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided however, that the parties shall take all reasonable steps to preserve all discoverable ESI in their possession, custody, or control.

13. Absent a showing of good cause by the requesting party, the following categories of ESI are not reasonably accessible because of undue burden or cost and need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    e. Server, system or network logs.

    f. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    g. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided* that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

STIPULATED ORDER REGARDING E-DISCOVERY - 6
4820-0407-2515 v3

      h.      Voicemail and text messages.

## PRIVILEGE

14. The Parties stipulate and agree that privileged communications or documents prepared or created after the filing of the Complaint (October 4, 2016) are not required to be listed on a privilege log.

15. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

16. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

DATED: March 14, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court

Case 1:16-cv-00449-BLW   Document 18   Filed 03/14/17   Page 8 of 9

## EXHIBIT A

## TABLE OF METADATA FIELDS

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BegDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the first page of an email. | The Document ID number associated with the first page of a document. |
| EndDoc | Unique ID (Bates number) | Paragraph | The Document ID number associated with the last page of an email. | The Document ID number associated with the last page of a document. |
| BegAttach | Unique ID (Bates number) Parent-Child Relationships | Paragraph | The Document ID number associated with the first page of a parent email. | The Document ID number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Paragraph | The Document ID number associated with the last page of the last attachment to a parent email. | The Document ID number associated with the last page of the last attachment to a parent document. |
| Pages | Pages | Number | The number of pages for an email. | The number of pages for a document. |
| DateSent | | Date (MM/DD/YYYY format) | The date the email was sent. | For email attachments, the date the parent email was sent. |
| Author | Author Display Name (email) | Paragraph | The display name of the author or sender of an email. | The name of the author as identified by the metadata of the document. |
| To | Recipient | Paragraph | The display name of the recipient(s) of an email. | The display name of the recipient(s) of a document (e.g., fax recipients). |
| CC | CC | Paragraph | The display name of the copyee(s) of a email. | |

STIPULATED ORDER REGARDING E-DISCOVERY - 8
4820-0407-2515 v3

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| BCC | BCC | Paragraph | The display name of the blind copyee(s) of an email. | |
| Subject | Subject (email) | Paragraph | The subject line of an email. | The subject of a document from entered metadata. |
| Custodian | Custodian | Paragraph | The custodian of an email. | The custodian of a document. |

//end of text//

Submitted by Dana Herberholz, counsel for Plaintiff J.R. Simplot Company

STIPULATED ORDER REGARDING E-DISCOVERY - 9
4820-0407-2515 v3