Dana M. Herberholz, ISB No. 7440
Christopher Cuneo, ISB No. 8557
Andrew Wake, ISB No. 9486
Margaret N. McGann (*pro hac vice*)
Jordan L. Stott, ISB No. 9820
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID 83702
Telephone: (208) 562-4900
Facsimile: (208) 562-4901
Email: dherberholz@parsonsbehle.com
    ccuneo@parsonsbehle.com
    awake@parsonsbehle.com
    mmcgann@parsonsbehle.com
    jstott@parsonsbehle.com

Attorneys for J.R. Simplot Company

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>McCAIN FOODS USA, INC.<br><br>               Defendant. | Case No. 1:16-cv-00449-DCN<br><br>**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT** |
| McCAIN FOODS LIMITED,<br><br>               Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY,<br><br>               Defendant. | |

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................... 2

LEGAL STANDARDS FOR SUMMARY JUDGMENT IN PATENT CASES ......................... 2

ARGUMENT ............................................................................................................................. 4

      I.      Simplot Does Not Literally Infringe the Asserted Claims Because the Accused Elea PEF Systems Do Not Apply a "High Electric Field" As Required By the Claims ............................................................................ 4

      II.     Summary Judgment of Noninfringement is Appropriate Because McCain Did Not Previously Disclose a Theory of Infringement Under the Doctrine of Equivalents ..................................................................................................... 5

      III.    Simplot Does Not Infringe the '540 Patent As a Matter of Law Because the Doctrine of Equivalents Does Not Apply ....................................................... 10

            A.    Applying the Doctrine of Equivalents Would Render the Claim Term "High Electric Field" Meaningless .................................................. 11

            B.    McCain Disclaimed the Ranges of Electric Fields it Now Attempts to Capture As Equivalents ...................................................................... 14

            C.    The Differences Between the Accused Elea PEF Systems and the Asserted Claims are "Not Insubstantial" ................................................. 18

CONCLUSION .......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*
    616 F.3d 1283 (Fed. Cir. 2010)..................................................... 18

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*
    811 F.3d 1334 (Fed. Cir. 2016).............................................. 11, 18

*Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*
    306 F. App'x 553 (Fed. Cir. 2008) ................................... 12, 13, 14

*Baxter v. Rivers*
    2010 WL 3893967 (D. Idaho 2010)................................................ 3

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)..................................................................... 2, 3

*Conopco, Inc. v. May Dept. Stores Co.*
    46 F.3d 1556 (Fed. Cir. 1994)......................................... 12, 13, 14

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*
    16 F.3d 394 (Fed. Cir. 1994)....................................................... 12

*Edwards Lifesciences LLC v. Cook Inc.*
    582 F.3d 1322 (Fed. Cir. 2009) .................................................. 16

*Ethicon Endo-Surgery, Inc., v. U.S. Surgical Corp.*
    149 F.3d 1309 (Fed. Cir. 1998).................................................... 3

*Exigent Tech., v. Atrana Solutions, Inc.*
    442 F.3d 1301 (Fed. Cir. 2006).................................................... 3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskiki Co.*
    535 U.S. 722 (2002)....................................................... 10, 11, 18

*Finjan, Inc. v. Proofpoint, Inc.*
    No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)............................ 8

*Fleming v. Escort, Inc.*
    No. 1:12-CV-00066-BLW, 2015 WL 1823125 (D. Idaho Apr. 20, 2015) ........................ 7

*Freedman Seating Co. v. Am. Seating Co.*
    420 F.3d 1350 (Fed. Cir. 2005).................................................. 11

*Genentech, Inc. v. Amgen, Inc.*
    289 F.3d 761 (Fed. Cir. 2002)................................................ 9, 10

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*
    452 F.3d 1312 (Fed. Cir. 2006)....................................................................... 15

*Howmedica Osteonics Corp. v. Zimmer, Inc.*
    822 F.3d 1312 (Fed. Cir. 2016)..................................................................... 9, 10

*Innovention Toys, LLC v. MGA Entm't, Inc.*
    637 F.3d 1314 (Fed. Cir. 2011)......................................................................... 3

*J & M Corp. v. Harley-Davidson, Inc.*
    269 F.3d 1360 (Fed. Cir. 2001)....................................................................... 16

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*
    285 F.3d 1046 (Fed. Cir. 2002)....................................................................... 14

*Kimberly-Clark Corp. v. Tyco Int'l, Inc.*
    4 Fed. Appx. 946 (Fed. Cir. 2001).................................................................. 15

*Lear Siegler, Inc. v. Sealy Mattress Co.*
    873 F.2d 1422 (Fed. Cir. 1989)......................................................................... 6

*London v. Carson Pirie Scott & Co.*
    946 F.2d 1534 (Fed. Cir. 1991)......................................................... 10, 11, 18

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ................................ 3

*Moleculon Research Corp. v. CBS, Inc.*
    872 F.2d 407 (Fed. Cir. 1989)..................................................................... 12, 13

*Monsanto Co. v. Syngenta Seeds, Inc.*
    503 F.3d 1352 (Fed. Cir. 2007)......................................................................... 4

*Nazomi Communs., Inc. v. Nokia Corp.*
    2013 WL 3146796 (N.D. Cal. June 18, 2013) ................................................... 8

*OptimumPath, LLC v. Belkin Int'l, Inc.*
    No. C 09-01398 CW, 2011 WL 1399257 (N.D. Cal. Apr. 12, 2011),
    *aff'd,* 466 F. App'x 904 (Fed. Cir. 2012) ............................................... 7, 8, 10

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*
    469 F.3d 978 (Fed. Cir. 2006)........................................................................... 3

*Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*
    822 F.2d 1528 (Fed. Cir. 1987)....................................................................... 20

*Rambus Inc. v. Hynix Semiconductor Inc.*
    No. C-05-00334 RMW, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008).................. 7, 8, 10

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*
   653 F.3d 1296 (Fed. Cir. 2011)...................................................................... 16, 17

*Riles v. Shell Exploration & Prod. Co.*
   298 F.3d 1302 (Fed. Cir. 2002)........................................................................... 4

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*
   242 F.3d 1337 (Fed. Cir. 2001)......................................................................... 15

*Southwall Tech., Inc. v. Cardinal IG Co.*
   54 F.3d 1570 (Fed. Cir. 1995)............................................................................. 4

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*
   347 F.3d 1355 (Fed. Cir. 2003)......................................................................... 19

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*
   520 U.S. 17 (1997)..................................................................... 10, 11, 17, 18

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Court should grant summary judgment that Simplot does not infringe claims 1, 4, 5, and 6 ("Asserted Claims") of U.S. Patent No. 6,821,540 ("the '540 Patent") as a matter of law. Correctly recognizing that the meaning of the term "high electric field" in those claims "is the single largest dispute between the parties," the Court construed the term as requiring the application of "an electric field between 30 and 75 V/cm." It is undisputed that Simplot does not use the accused Pulse Electric Field ("PEF") systems to treat fruits or vegetables with an electric field within this range. Rather, the PEF systems used by Simplot apply a pulse electric field in the range of 1,000 to 1,400 V/cm. Thus, Simplot does not "literally" infringe the Asserted Claims.

Simplot likewise does not infringe under the doctrine of equivalents as a matter of law. McCain never disclosed a theory of infringement under the doctrine of equivalents, and any attempt by McCain to do so now is untimely and should not be allowed. Moreover, even if this Court allows McCain to assert this "alternative" theory of infringement, McCain's claim fails because the doctrine of equivalents is inapplicable for at least three reasons. First, if the doctrine were applied to encompass Simplot's actions, it would effectively read the term "high" (and the applicable range of 30 to 75 V/cm) out of the Asserted Claims, and thus improperly vitiate the claim term. Second, McCain expressly disclaimed all electric fields outside the range of 30 to 75 V/cm in the '540 Patent and cannot use the doctrine of equivalents to recapture expressly disclaimed electric fields. Third, and critically, the 1,000 to 1,400 V/cm field-strength ranges used by Simplot are orders of magnitude outside the claimed field-strength range and, therefore, are not equivalents as a matter of law because they do not "barely avoid" the claimed range and are not merely "insubstantially different" or a "trivial change" from that range. Accordingly, Simplot is entitled to judgment as a matter of law that it does not infringe.

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 1**

## BACKGROUND AND PROCEDURAL HISTORY

Simplot and McCain both use PEF systems supplied by Elea GmBH ("Elea") to process potato products.  Statement of Undisputed Material Facts ("SOF") at ¶ 12; Herberholz Decl. at ¶ 4, Exh. D, Resp. to Interrog. No. 9.  To date, Simplot has purchased and installed in the United States five Elea PEF systems (the "Accused Elea PEF Systems").  SOF at ¶¶ 12-13.  McCain asserts that Simplot's use of the Accused Elea PEF Systems infringes claims 1, 4, 5, and 6 of the '540 Patent. SOF at ¶¶ 1-6.

On August 16, 2018, the Court entered its Memorandum Decision and Order (Dkt. 69) ("Claim Construction Order"), construing the disputed terms of the Asserted Claims.  Recognizing that the meaning of "high electric field" was the "single largest dispute between the parties," the Court devoted more than ten pages of its order to explaining the basis for its construction of "high electric field."  Claim Construction Order at 10-20.  The Court construed the term "high electric field" as "an electric field between 30 and 75 V/cm."  SOF at ¶ 11.

The Accused Elea PEF Systems are not operated with a field-strength range between 30 and 75 V/cm.  SOF at ¶ 18.  Rather, the Accused Elea PEF Systems are factory-set to apply a pulse electric field with a strength range of 1,000 to 1,400 V/cm.  SOF at ¶¶ 14-15.  Simplot does not use the Accused Elea PEF Systems to treat fruits or vegetables with an electric field outside the factory-set range of 1,000 to 1,400 V/cm.  SOF at ¶ 17.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT IN PATENT CASES

Summary judgment is appropriate in patent cases as in other types of cases where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In the District of Idaho, summary judgment is not "a disfavored procedural shortcut, but is instead the

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 2**

principal tool by which factually insufficient claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Baxter v. Rivers*, 2010 WL 3893967, \*1 (D. Idaho 2010) (*quoting Celotex*, 477 U.S. at 327).

Where, as here, a party seeks summary judgment of noninfringement, "nothing more is required than the filing of a … motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which the accused [products] did not meet the claim limitations." *Exigent Tech., v. Atrana Solutions, Inc*., 442 F.3d 1301, 1309 (Fed. Cir. 2006). The burden of production then shifts to the patentee to "identify genuine issues that preclude summary judgment." *Optivus Tech., Inc. v. Ion Beam Applications S.A*., 469 F.3d 978, 990 (Fed. Cir. 2006). Infringement is a question of fact and, therefore, "is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement." *Ethicon Endo-Surgery, Inc., v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

To establish a prima facie case of infringement, McCain must show that Simplot makes, uses, sells, offers to sell, or imports a product that infringes at least one of the Asserted Claims in the '540 Patent. *See* 35 U.S.C. § 271(a). A determination of patent infringement involves a two-step inquiry: (1) interpreting the claims to determine their scope and meaning; and (2) comparing the construed claims to the devices accused of infringing. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). This Court has already performed step one. *See* Claim Construction Order at 5-24. In regard to the remaining step two, "a court may determine infringement on summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Innovention Toys, LLC v. MGA Entm't, Inc*., 637 F.3d 1314, 1319 (Fed. Cir. 2011).

<u>**ARGUMENT**</u>

Simplot is entitled to summary judgment of noninfringement.  McCain cannot prove literal infringement because Simplot does not treat products with a "high electric field," as required by the language of the Asserted Claims.  McCain cannot prove infringement under the doctrine of equivalents because it never previously disclosed such a theory of infringement and because the doctrine of equivalents does not apply as a matter of law.

**I.     SIMPLOT DOES NOT LITERALLY INFRINGE THE ASSERTED CLAIMS BECAUSE THE ACCUSED ELEA PEF SYSTEMS DO NOT APPLY A "HIGH ELECTRIC FIELD" AS REQUIRED BY THE CLAIMS**

Simplot does not literally infringe the Asserted Claims as a matter of law.  "To prove literal infringement, the patentee must show that the accused device contains every limitation of the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement." *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1308 (Fed. Cir. 2002).  In other words, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  Where, as here, the asserted patent claims are directed to processes, the patent owner must prove that the alleged infringer performed all steps of the claimed process. *Monsanto Co. v. Syngenta Seeds, Inc*., 503 F.3d 1352, 1359 (Fed. Cir. 2007).

The Asserted Claims all require the application of a "high electric field" to "vegetables and/or fruit."  SOF at ¶¶ 9-10.  The Court construed a "high electric field" as "an electric field between 30 and 75 V/cm."  SOF at ¶ 11.  Therefore, to prove literal infringement, McCain must prove that Simplot uses the Accused Elea PEF Systems to perform every step of the Asserted Claims, including treating vegetables and/or fruit by applying an electric field having a field strength within the range of 30 to 75 V/cm.

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 4**

It is undisputed that Simplot does not use the Accused Elea PEF Systems to treat fruits or vegetables with an electric field even remotely close to the 30 to 75 V/cm field-strength range. The Accused Elea PEF Systems are supplied by Elea GmbH, and that company factory-sets the systems to operate at a field-strength range of 1,000 V/cm to 1,400 V/cm.  SOF at ¶ 14.  Elea's operating conditions expressly set forth that range.  SOF at ¶ 15.  In accordance with the machines' factory settings and the supplier's operating specifications, Simplot uses the Accused Elea PEF Systems to apply a pulsed electric field ranging from 1,000 to 1,400 V/cm.  SOF at ¶¶ 16-17.[1]

It is undisputed that Simplot has never operated the Accused Elea PEF Systems outside the factory-set range of 1,000 to 1,400 V/cm.  SOF at ¶ 17.  It is also undisputed that Simplot has never used those systems to treat products with an electric field within the range of 30 to 75 V/cm, as required to literally infringe the Asserted Claims as a matter of law.  SOF at ¶ 18.  Indeed, as manufactured, the Accused Elea PEF Systems are not even capable of applying an electric field within that field-strength range.  Declaration of Stefan Töpfl Ph.D. in Support of Motion for Partial Summary Judgment of Noninfringement ("Töpfl Decl.") at ¶ 6.  Accordingly, no reasonable fact finder could find that Simplot literally infringes the Asserted Claims, and Simplot is entitled to summary judgment of no literal infringement.

## II.   SUMMARY JUDGMENT OF NONINFRINGEMENT IS APPROPRIATE BECAUSE MCCAIN DID NOT PREVIOUSLY DISCLOSE A THEORY OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Summary judgment of noninfringement under the doctrine of equivalents is also appropriate because McCain did not properly disclose such an infringement theory as required by this Court's rules.  The doctrine of equivalents is not a theory of infringement that a patentee may

---

[1] McCain knows this all too well.  Indeed, McCain uses the same Elea PEF Systems that it accuses of infringement here and, therefore, knows or should know how those systems operate.  Herberholz Decl. at ¶ 4, Exh. D, Resp. to Interrog. No. 9.

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 5**

casually assert "in the alternative" to a claim for literal infringement if it receives an unfavorable claim construction order.  *See Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement.").

McCain cannot dispute that its infringement contentions fail to disclose such an equivalents theory.  Indeed, McCain recently filed a Motion for Leave to Amend its Infringement Contentions (Dkt. 71) ("Motion for Leave") seeking, for the first time, to disclose its new theory of infringement under the doctrine of equivalents.  McCain's Motion for Leave—filed after the Court's Claim Construction Order, after the close of claim construction discovery, and nearly two years into this litigation—is untimely and should be denied, and Simplot will oppose the motion.

In any event, analysis of McCain's contentions demonstrates what McCain effectively admits by the filing of its Motion for Leave—that McCain has never appropriately contended infringement under the doctrine of equivalents.  To properly assert such an infringement claim, McCain was required under this Court's rules to serve infringement contentions that identified, among other information, "[w]hether *each limitation of each asserted claim* is alleged to be literally present *or present under the doctrine of equivalents* in the Accused Instrumentality." LPR 3.1(e) (emphasis added).  The rules further required McCain to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."  LPR 3.1(c).

McCain's infringement contentions fall well short of this element-by-element requirement. The only purported "disclosure" of an infringement theory under the doctrine of equivalents in McCain's infringement contentions is a two-sentence boilerplate reservation:

> Based on information available to it at this time, McCain contends that each
> element of each of the Asserted Claims of the '540 patent is literally infringed by

Simplot's PEF Systems, and use thereof, in its United States plants to process potato products, as shown in Exhibit C. ***To the extent that Simplot contends that any element of any Asserted Claim is not literally infringed, each such element of the Asserted Claims may instead, or in addition, be infringed by the Accused Instrumentalities under the doctrine of equivalents***.

SOF at ¶ 7 (emphasis added).  Although McCain's infringement contentions include a claim chart purporting to show "how each claim element is *literally* present," and thus satisfied the local rules regarding literal infringement, in stark contrast, McCain's claim chart fails to satisfy those rules in regard to the doctrine of equivalents.  The chart includes another boilerplate reservation but no mention of whether, or how, any element of the Asserted Claims is present under the doctrine of equivalents.  SOF at ¶ 8.

Courts have consistently held that boilerplate assertions, like McCain's, are insufficient to sustain a theory of infringement based on the doctrine of equivalents.  *E.g. OptimumPath, LLC v. Belkin Int'l, Inc.*, No. C 09-01398 CW, 2011 WL 1399257, at *8 (N.D. Cal. Apr. 12, 2011), *aff'd*, 466 F. App'x 904 (Fed. Cir. 2012); *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008).  These cases and others from the Northern District of California are particularly persuasive because the requirements for infringement contentions in that district are *identical* to those in this district.  *Compare* LPR 3.1 *with* N.D. Cal. LPR 3-1.  Indeed, this district's rules were adopted from the Northern District of California's, and this Court "hence looks there for guidance."  *Fleming v. Escort, Inc.*, No. 1:12-CV-00066-BLW, 2015 WL 1823125, at *1 (D. Idaho Apr. 20, 2015).

In *Rambus*, the court granted the accused infringer's motion for summary judgment of noninfringement under the doctrine of equivalents where the patent owner, Rambus, did not provide an element-by-element analysis of its doctrine of equivalents claim, as required by LPR 3-1(e).  *Rambus*, 2008 WL 5411564, at *3.  Instead, Rambus relied on the following: "To the extent that any limitation is found to be not literally present, Rambus asserts that such limitation

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 7**

is present under the doctrine of equivalents." *Id.*   Holding that Rambus's "boilerplate reservation"—which is virtually identical to McCain's reservation here—failed to comply with LPR 3-1(e) the court cautioned that the doctrine of equivalents "is not designed to give a patentee a second shot at proving infringement '[t]o the extent that any limitation is not found to be literally present.'" *Id.*

Similarly, in *OptimumPath*, the court denied the patent owner's attempt to rely on the doctrine of equivalents to avoid summary judgment because the patent owner did not disclose its doctrine of equivalents claim in accordance with LPR 3-1(e). *OptimumPath,* 2011 WL 1399257, at *8.   Rather than disclosing its theory on an element-by-element basis, the patent owner attempted to reserve its equivalents claim through the following "catch-all statement:"

> [D]isclosures pursuant to Patent L.R. 3-1(c) are set forth in the chart as Exhibit A. For purposes of infringement of the '281 Patent and the disclosure requirements of L.R. 3-1(c), OptimumPath asserts that the Accused Instrumentalities all function in the same or substantially similar manner and include the same or substantially similar components.

*Id.* at *7-8.   Holding that such language "falls short of the requirements of Patent Local Rule 3-1(e)," the Court "barred" the patentee from asserting a claim under the doctrine of equivalents. *Id.*[2]

McCain's infringement contentions, like those in *Rambus* and *OptimumPath*, do not comply with the disclosure requirements of LPR 3.1(e) and do not state a claim for infringement

---

[2] Other courts in the Northern District of California have held that boilerplate assertions of the doctrine of equivalents, like McCain's, are insufficient. *E.g., Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) ("It is improper to assert the doctrine of equivalents with generic "placeholder" language on the hope that future discovery might support such an assertion."); *Nazomi Communs., Inc. v. Nokia Corp.*, 2013 WL 3146796, *5 (N.D. Cal. June 18, 2013) (boilerplate reservation that, if a limitation is not literally infringed, the accused product "embodies the claim element or limitation under the doctrine of equivalents" was insufficient to comply with the patent local rules and, therefore, patentee was barred from relying on the doctrine of equivalents on summary judgment).

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 8**

under the doctrine of equivalents sufficient to survive summary judgment.  McCain's contentions include no element-by-element disclosure of any theory of infringement under the doctrine of equivalents, and their only mention of the doctrine of equivalents consists of the most general form of a blanket reservation.  Thus, McCain is barred from pursuing a doctrine of equivalents claim because it failed to appropriately preserve or present such a claim, and the Court should grant summary judgment of noninfringement in favor of Simplot on this ground alone.

The Federal Circuit has affirmed decisions granting summary judgment on the doctrine of equivalents under such circumstances.  In *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312 (Fed. Cir. 2016), the court affirmed the district court's decision to bar patent owner from asserting infringement under the doctrine of equivalents where patent owner attempted merely to "reserve[] the right" to assert a theory of infringement under the doctrine of equivalents and, therefore, failed to comply with disclosure requirements of patent local rules.  *Id.* at 1319, 1324.

Similarly, in *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761 (Fed. Cir. 2002), the court affirmed the district court's decision to bar the patent owner from asserting infringement under the doctrine of equivalents because the patent owner did not disclose a doctrine of equivalents theory of infringement in its complaint or claim charts.  *Id.* at 768, 774.  Instead, and *after the court entered its claim construction order*, the patent owner sought to amend its claim chart to assert an equivalents claim, arguing that it was not required to previously assert such a claim because the initial claim chart was not "final."  *Id.* at 773.  The Federal Circuit rejected this argument as "fl[ying] in the face of common sense and years of Federal Circuit precedent," and noting that the patentee "must have known that it could initially assert both types [literal and doctrine of equivalents] of infringement."  *Id.*

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 9**

As stated in those decisions, the Court has broad discretion to bar McCain from arguing infringement under the doctrine of equivalents under such circumstances, and its decision to do so is reviewed on appeal for abuse of discretion.  *Howmedica*, 822 F.3d at 1320, 1324.  Specifically, the Federal Circuit "defers to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Genentech,* 289 F.3d at 774.  Like the district courts in *Howmedica*, *Genentech*, *Rambus*, and *OptimumPath*, the Court should exercise its discretion here and bar McCain's from proceeding with a doctrine of equivalents theory of infringement.

## III.   SIMPLOT DOES NOT INFRINGE THE '540 PATENT AS A MATTER OF LAW BECAUSE THE DOCTRINE OF EQUIVALENTS DOES NOT APPLY

Even if the Court allows McCain to pursue its new doctrine of equivalents theory, Simplot does not infringe by equivalents as a matter of law.  A process that does not literally infringe a patent claim may still infringe under the doctrine of equivalents if the process "contains elements *identical or equivalent* to each claimed element of the patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997) (emphasis added).  The premise of the doctrine of equivalents is "language's inability to capture the essence of innovation," and its goal is to prevent fraud on the patent through an overly literal reading of the claims.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabuskiki Co.*, 535 U.S. 722, 734 (2002).

Applying the doctrine of equivalents is the "exception, not the rule."  *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991).  Courts apply the doctrine in limited circumstances to ensure that patent owners are not deprived of the benefits of their patents "by competitors who appropriate the essence of an invention *while barely avoiding the literal language of the claims*."  *Id.* (emphasis added).  In other words, the doctrine allows a patent owner

to "claim those insubstantial alterations that were not captured in drafting the original patent claim *but which could be created through trivial changes*." *Festo*, 535 U.S. at 733 (emphasis added).

No exception justifies application of the doctrine in this case. There are three separate and independent grounds why the doctrine cannot apply to Simplot's use of the Accused Elea PEF Systems as a matter of law. First, applying the doctrine here would effectively read the term "high electric field" out of the Asserted Claims, and the doctrine of equivalents does not allow McCain to rewrite the claims to avoid the Court's case-dispositive claim construction order. *See London, 946 F.2d at 1538* (The doctrine of equivalents is not "simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims."). Second, application of the doctrine here is barred by disclaiming statements McCain made in the patent specification. Third, Simplot does not come remotely close to literally infringing the Asserted Claims—much less "barely avoid" infringement—nor is the accused process merely a "trivial change" or an "insubstantial alteration" of the claimed process. Therefore, Simplot is entitled to summary judgment of no infringement under the doctrine of equivalents.

### A. Applying the Doctrine of Equivalents Would Render the Claim Term "High Electric Field" Meaningless

The doctrine of equivalents cannot be applied here because it would "vitiate" a claim limitation; that is, it would render the claim limitation "inconsequential or ineffective." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). The Supreme Court has confirmed that summary judgment is the appropriate remedy and "should" be granted in cases where the theory of equivalence would "entirely vitiate a particular claim element." *See Warner-Jenkinson,* 520 U.S. at 39 n.8. Whether claim vitiation bars application of the doctrine of equivalents is an issue of law. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358–59 (Fed. Cir. 2005).

Summary judgment is mandated here because stretching the claims to encompass the accused process used by Simplot would effectively eliminate the "high electric field" limitation. Recently, in its Motion for Leave, McCain raises a new infringement theory under the doctrine of equivalents, asserting that applying ***any*** electric field that makes the fruit or vegetable easier to cut is equivalent to applying an electric field in the claimed range of 30-75 V/cm.  *See* Evans Decl., Exh. 3 (Dkt. 71-4) at 14.  McCain's theory stretches the claim scope far beyond the scope disclosed in the patent.  McCain drafted the claims to recite a "high electric field," not "any electric field." Likewise, in the specification, McCain described the invention such that, as this Court determined, the term "high electric field" means a specific field strength in the range of 30-75 V/cm.  Indeed, nowhere did McCain state that "any" electric field is suitable for the claimed invention.

McCain's theory thus is improper because it effectively attempts to delete the word "high" (and that word's disclosed meaning) from the claims and substitute the word "any," which would "entirely vitiate" that claim limit as construed by the Court.  While the doctrine of equivalents affords McCain some flexibility, McCain cannot use the doctrine of equivalents as "a license to ignore claim limitations" and "extend or enlarge the scope of the claims." *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 398 (Fed. Cir. 1994).  Courts have routinely held that patent owners may not use the doctrine of equivalence to read numerical limitations out of a claim. *E.g.*, *Conopco, Inc. v. May Dept. Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994); *Moleculon Research Corp. v. CBS, Inc.*, 872 F.2d 407, 409-10 (Fed. Cir. 1989); *Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*, 306 F. App'x 553, 558 (Fed. Cir. 2008).

Importantly, even if the doctrine were used only to stretch the claim scope to encompass the field strength used in the Accused Elea PEF Systems (rather than "any" electric field), it would nevertheless vitiate the claim scope and constitute reversible error.  The Federal Circuit has

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 12**

reversed district court findings of infringement under the doctrine of equivalents under far less extreme circumstances.  For example, in *Moleculon,* the court reversed the district court's finding of infringement under the doctrine of equivalents where the asserted claims required engaging 8 cube pieces and rotating 4 pieces to solve a puzzle, and the accused Rubik's cube products required engaging a minimum of 26 pieces and rotating a minimum of 8 or 9 pieces.  *Moleculon*, 872 F.2d at 409.  The Federal Circuit held that the finding of equivalents "***entirely read[]*** the number of cubelets and their corresponding engagement/rotation ***out of every step of the claim***." *Id.* (emphasis added).  Similarly, in *Conopco,* the Federal Circuit reversed the district court's finding that the ratio of 169.2:1 of ingredients in the accused lotion product was equivalent to "about 40:1" in the asserted claims because the district court's application of the doctrine of equivalents "***eviscerate[d] the plain meaning of that limitation***." *Conopco*, 46 F.3d at 1562 (emphasis added).

In contrast, granting summary judgment of noninfringement under such circumstances is the appropriate course of action.  For example, in *Amazin' Raisins*, the Federal Circuit affirmed summary judgment of noninfringement under the doctrine of equivalents where the asserted claim required product with a moisture content of approximately 10 to 18% and the accused product had a moisture content of approximately 87 to 90%.  *Amazin' Raisins,* 306 F. App'x at 558 ("To find that an item of fruit with a moisture content between 87 to 90% is insubstantially different from an item of dried fruit with a moisture content between 10 to 18% ***would defy reason and necessarily render the 'dried fruit' limitation meaningless.***"). *Id*. at 558-59 (emphasis added).

The application of those cases here compels summary judgment of noninfringement because the differences between the Asserted Claims and Accused Elea PEF Systems are even more substantial.  In *Moleculon*, the number of engaged pieces of the accused product (26) exceeded the number of engaged pieces recited the in asserted claims (8) by **325%** or, in other

words, by 3.25 times as many.  In *Conopco* the formulation ratio of the accused product (169.2:1) exceeded the formulation ratio of the asserted claim (40:1) by **423%,** or by 4.23 times as much. And in *Amazin' Raisins,* the moisture content of the accused product (87 to 90%) exceeded that required by the asserted claims (10 to 18%) by **483% to 900%,** or 4.83 to 9 times as much.

Here, the pulsed electric field of the accused product ranges from 1,000 V/cm to 1,400 V/cm, and thus exceeds the "high electric field" of the asserted claims (30 to 75 V/cm) by **1,300% to 4,600%** or, in other words, by 13 to 46 times as much.[3]  Thus, finding that Simplot's use of the Accused Elea PEF Systems is an equivalent to the claimed process, "would defy reason and necessarily render" the claim "limitation meaningless."  Summary judgment of noninfringement under the doctrine of equivalents is therefore proper for this reason alone.

### B.    McCain Disclaimed the Ranges of Electric Fields it Now Attempts to Capture As Equivalents

Next, McCain also cannot prove infringement under the doctrine of equivalents as a matter of law for the separate and independent reason that McCain disclaimed all electric fields outside of the range of 45 to 65 V/cm by referring to that specific range as "the invention" in the '540 Patent specification.  McCain "cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc).

The principle of disavowal/disclaimer derives from the fact that patents serve a public notice function.  The public is entitled to rely on representations made in the specification as to the scope of patent claims.  *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318, 1320

---

[3]  Specifically, the lowest end of the accused process is 1,000 V/cm, which is 13 times greater than the highest end—75 V/cm—of the claimed range.  The highest end of the accused process is 1,400 V/cm, which is 46 times greater than the lowest end—30 V/cm—of the claimed range.

(Fed. Cir. 2006) ("The public is entitled to take the patentee at his word" when the patentee states what "the invention is" in the patent specification.).   "The public notice function of patents is defeated if a patentee can subsequently and substantially alter the meaning of his claims by a post-hoc, litigation-driven 'definition' unsupported by the specification." *Kimberly-Clark Corp. v. Tyco Int'l, Inc.*, 4 Fed. Appx. 946, 951 (Fed. Cir. 2001).

One type of disavowal occurs when, as here, the specification states that certain features are part of "the invention."   In such cases, the features are required claim components, and any device lacking such features cannot infringe.  *See Honeywell*, 452 F.3d at 1318 (holding that claim term "fuel injection system component" limited to a "fuel filter" because specification repeatedly stated "the present invention" is a "fuel filter," even though claim language arguably supported broader interpretation); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001) (holding that specification defined catheter of "the present invention" as a coaxial lumen catheter, thus excluding catheters made with side-by-side tubes, and noting "the characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure").

Here, the patent expressly limits the claim scope.  The specification includes a section titled "***Summary of the Invention***," which by its own words, and by the words in the section, identify what McCain repeatedly stated "***the invention***" to be.  Herberholz Decl. Exh. C., '540 Patent at 2:34-35, 40 (emphasis added).  That section states that "an electric field of 46 [sic; 45] to 65 V/cm [should be] applied…during a period of between 3 and 5 seconds."  *Id.* at 2:55-58.  By specifically declaring that "the invention" requires such a field, McCain expressly disavowed other electrical field strengths.

The specification later refers to the same end points of this range—45 and 65 V/cm—when disclosing the temperature increase and resistance to cutting of potatoes treated with such an electrical field.  *Id.* at 3:2-56.  It then states that the use of these field strengths means that they were "applied [to the potatoes] under the conditions of ***the invention***."  *Id.* at 3:58 (emphasis added).  This statement reinforces that "the invention" is limited to the ranges bounded by these endpoints.  Although this statement is in the "Description of the Preferred Embodiment" and initially refers to the electrical field-strength range "[a]s an example" (*id*. at 3:1-21), it also states that these ranges are "the invention."  These statements thus operate to define "the invention," not a preferred embodiment.  *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) ("when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment").

Each of these statements provides notice to the public of the scope of "the invention" and, correspondingly, the scope of the claim language.  The public is entitled to rely on these statements that such is "the invention" McCain discovered and claimed.  McCain cannot, through the guise of post-hoc litigation arguments and a new doctrine of equivalents theory, seek to defeat the public notice function by expanding the claim scope to vastly different electric field strengths.

The Federal Circuit has held that there can be no infringement under the doctrine equivalents where, as here, the patent owner disclaims subject matter required by the asserted claim.  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1307 (Fed. Cir. 2011); *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001) ("The scope of equivalents may ... be limited by statements in the specification that disclaim coverage of certain subject matter.").  In *Retractable Technologies*, the Federal Circuit reversed the district court's denial of a motion for JMOL of noninfringement under the doctrine of equivalents where the patent

owner sought to reclaim subject matter that it disclaimed in the patent specifications.  *Retractable Techs.*, 653 F.3d at 1307.  The specifications expressly stated that "the invention" was a syringe with a one-piece body and distinguished the prior art based on that feature.  *Retractable Techs.*, 653 F.3d at 1305.  Nowhere did the specifications disclose a syringe with a multi-piece body.  *Id.* Reversing the jury's infringement finding, the Federal Circuit held that, as a matter of law, the patent owner "cannot use the doctrine of equivalents to claim subject matter [syringes with multi-piece bodies] that the specifications expressly state fall outside the invention."  *Id.* at 1307.

Here, like *Retractable Technologies*, McCain is barred from applying the doctrine of equivalents to recapture subject matter it disclaimed.  McCain drafted the specification and referred to the "high electric field" in the range of 45 to 65 V/cm as "the invention," and disclosed no "high electric field" outside the range of 30 to 75 V/cm.  Having disclaimed "high electric fields" outside this range, McCain cannot use the doctrine of equivalents to capture all electric fields, including those with field strengths 13 to 46 times outside this range as used by Simplot.

McCain's theory that an electric field strength of 30 to 75 V/cm is equivalent to the electric field strengths of 1,000 to 1,400 V/cm used by Simplot defies reason.  Allowing McCain to apply this theory would effectively rewrite the Asserted Claims and strip the specification of meaning. It would also defeat the public-notice function of patents and run afoul of the Supreme Court's warning against broad application of the doctrine of equivalents.  *Warner-Jenkinson Co,* 520 U.S. at 29 ("There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement.").  If courts applied the doctrine of equivalents as broadly as McCain suggests, patent claims "will cease to serve their intended purpose," and "[c]ompetitors will never know whether their actions infringe

a granted patent." *London*, 946 F.2d at 1538. Therefore, as a matter of law, the doctrine of equivalents does not apply for this additional reason.

### C.   The Differences Between the Accused Elea PEF Systems and the Asserted Claims are "Not Insubstantial"

Yet another separate and independent reason why summary judgment of no infringement under the doctrine of equivalents is appropriate here is that the differences between the claimed range of electric field strengths and the field strengths applied by Simplot are "not insubstantial." The Supreme Court has emphasized that "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim." *Warner-Jenkinson*, 520 U.S. at 29. To survive summary judgment on its doctrine of equivalents claim, McCain must prove "on a limitation-by-limitation basis" that the differences between the Accused Elea PEF Systems and the Asserted Claims are insubstantial. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (affirming summary judgment of noninfringement on patent owner's doctrine of equivalents claim where patent owner failed to establish insubstantiality).

As stated above, the doctrine of equivalents applies when the accused product or process uses only "insubstantial alterations," "trivial changes," or "barely avoid[s] the literal language of the claims. *Festo*, 535 U.S. at 733-4; *London*, 946 F.2d at 1538. Accordingly, the Federal Circuit has held that a modest numerical discrepancy between a claimed range and that employed in an accused product is not, by itself, a basis for determining that a device does not infringe under the doctrine of equivalents. *See, e.g., Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283 (Fed. Cir. 2010) (vacating summary judgment of noninfringement under doctrine of equivalents where claims required absorption rate of at least 3500 nanograms/milliliter/hour, and accused product's maximum absorption rate was 3493.38 nanograms/milliliter/hour).

**MEMORANDUM IN SUPPORT OF J.R. SIMPLOT COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF '540 PATENT - 18**

In stark contrast, the Federal Circuit has held that where, as here, the claimed equivalent range is significantly outside the claimed range, the doctrine of equivalents does not apply.  For example, in *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355 (Fed. Cir. 2003), the Federal Circuit affirmed the district court's grant of summary judgment of noninfringement under the doctrine of equivalents where the asserted claims required gasoline "having a boiling point range of 121—345°F" and where the boiling points of the accused fuels ranged from 373.8°F to 472.9°F.  *Id.* at 1357, 1360.  The boiling point range of the accused fuels was 8% to 37% higher than the claimed range's highest point.  Because the accused fuels did not "simply depart by a few degrees from 345°F," the Court held that "no reasonable trier of fact could find only insubstantial differences" between the asserted claims and the accused fuels.  *Id.* at 1360.

Here, as in *Talbert Fuel,* the differences between the accused products and the Asserted Claims are not insubstantial, and the electric field strengths applied in the Accused Elea PEF Systems does not "simply depart by a few" volts per centimeter from the Asserted Claims.  Rather, Simplot uses the Accused Elea PEF Systems to apply a pulse electric field between 13 and 46 times higher than the range of the claimed "high electric field."  Even using only the highest point in the claimed range (75 V/cm), the accused systems apply a pulse electric field between 13 and 18.67 times greater.  No reasonable trier of fact could conclude that this difference is "insubstantial."  Notably, this 1300% to 1867% difference is far more substantial than the 8% to 37% difference that *Talbert Fuel* deemed far too high be an equivalent.  Thus, because summary judgment of noninfringement was warranted in *Talbert Fuel,* it is certainly warranted here.

This is not a case where Simplot applied an electric field of 75.1 V/cm, 75.2 V/cm, or any other electric field strength that could be termed a mere "trivial change" over the claimed 30 to 75 V/cm "high electric field."  This also is not a case where Simplot might be said to "barely avoid"

literal infringement by using electric fields of 76 V/cm, or even perhaps up to 80 V/cm.  Indeed, Simplot is not even using field strengths of the substantially larger amount of 100 V/cm, but instead applies fields at least ten times greater than that already substantially greater amount. Consequently, Simplot cannot infringe under the doctrine of equivalents as a matter of law.  *See Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987) ("Though the doctrine of equivalents is designed to do equity, and to relieve an inventor form a semantic strait jacket when equity requires, it is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices, i.e., to permit a claim expansion that would encompass more than an insubstantial change.").

McCain's new doctrine of equivalents theory is nothing more than an attempt to recapture a claim scope that the Court already rejected during claim construction.  As this Court correctly determined, there is "no evidence" that McCain intended to "deviate much outside the suggested range" of 45-65 V/cm.  Claim Construction Order at 18.  Rather, recognizing that McCain was allowed some "flexibility" in its claims, the Court held that "McCain meant flexibility in and around the 45 to 65 V/cm range—a tweaking of the specifics as it were—not flexibility that would encompass voltage magnitudes hundreds or thousands of volts higher, let alone all voltages." *Id.* The Court correctly noted that its construction of "high electric field" (30 to 75 V/cm) allowed for "flexibility slightly above and slightly below" the range of 45 to 65 V/cm. *Id.* at 19.  This modest degree of flexibility does not allow McCain to stretch the claims to systems applying 13 to 46 times stronger fields.  Because the electric field of the Accused Elea PEF Systems is substantially different from the high electric field of the Asserted Claims, and because this disparity is not a mere "trivial change," no reasonable trier of fact could find the electric fields equivalent.

## <u>CONCLUSION</u>

For each of the foregoing reasons, Simplot's Motion for Partial Summary Judgment of Noninfringement of the '540 Patent should be granted.

DATED THIS 27th day of September, 2018.

PARSONS BEHLE & LATIMER

By */s/ Dana M. Herberholz*
    Dana M. Herberholz
    Christopher Cuneo
    Andrew Wake
    Margaret N. McGann
    Jordan L. Stott
Attorneys for J.R. Simplot Company

<u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that on the 27th day of September, 2018, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

       Meredith M. Wilkes, Attorney for McCain
       mwilkes@jonesday.com

       John C. Evans, Attorney for McCain
       jcevans@jonesday.com

       John A. Marlott, Attorney for McCain
       jamarlott@jonesday.com

       Joshua R. Nightingale, Attorney for McCain
       jrnightingale@jonesday.com

       David B. Cochran, Attorney for McCain
       dcochran@jonesday.com

       Michael G. Brady, Attorney for McCain
       mbrady@eberle.com


                                */s/ Dana M. Herberholz*
                                Dana M. Herberholz