UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br> Plaintiff,<br><br> v.<br><br>McCAIN FOODS USA, INC.,<br><br> Defendant.<br><br>McCAIN FOODS LIMITED,<br><br> Plaintiff,<br><br> v.<br><br>J.R. SIMPLOT COMPANY,<br><br> Defendant. | Case No. 1:16-cv-00449-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant McCain's Motion for Partial Reconsideration of the Court's Claim Construction Order. Dkt. 70. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

Following a *Markman* hearing in this case, the Court issued a Memorandum Decision and Order (Dkt. 69) setting forth the construction of certain disputed terms. One of those terms was "high electric field." The parties' respective positions are set forth below.

| Disputed Term | McCain's Construction | Simplot's Construction(s) |
|---|---|---|
| "a high electric field" | an electric field strong enough to make the vegetable and/or fruit easier to cut | 1. An electric field between 45 and 65 V/cm |
| | | 2. To the extent that the term "high electric field" is not limited as indicated by the Examiner, it must be limited to between 30 and 75 V/cm |

In short, Simplot alleged that "high electric field" was vague and must be limited to an electric field range between 45 and 65 V/cm—or at most 30-75 V/cm—as all relevant evidence pointed to this range. McCain, on the other hand, urged the Court to forgo placing numerical limitations in any construction, but allow the definition to simply reflect the purpose of the patent—i.e. that the electric field must simply be strong enough to make the fruit or vegetable easier to cut.

After reviewing (1) the language in the patent summary; (2) the language from the Patent Examiner; (3) McCain's internal documents; and (4) McCain's representations to the European Patent Office, the Court ultimately concluded that the evidence weighed in favor of Simplot's proposed construction and found that a limiting definition was appropriate. The Court construed "high electric field" as "an electric field between 30 and 75 V/cm."

McCain now asks the Court to revisit its construction of the term high electric field.

MEMORANDUM DECISION AND ORDER - 2

## III. LEGAL STANDARD

McCain does not state a rule upon which it bases its request for relief but references in passing Federal Rule of Civil Procedure 59. This Rule does "permit[] a district court to reconsider and amend a previous order," but the Ninth Circuit instructs that the Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

"[T]here are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, No. 1:16-CV-00190-CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)).

## IV. ANALYSIS

McCain argues that the Court erred by failing to follow Federal Circuit precedent and the "exacting standard of disavowal" set forth in *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

*Thorner* provides that:

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in

the context of the specification and prosecution history. . . . There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

669 F.3d at 1365 (internal citations omitted). McCain alleges that the Court committed error by not finding that it (McCain) had affirmatively, clearly, or unmistakably disavowed all voltage ranges outside 30 – 75 V/cm.

Under McCain's reading of *Thorner,* this is true. The Court did not find that McCain had disavowed anything. Rather the Court focused on what McCain had done, which was provide argument, examples, preferred embodiments, statements, and R&D that focused exclusively on the '540 use of a voltage range between 30 – 75 V/cm. Herein lies the problem.

In reaching its conclusion, the Court performed an extremely detailed fact-based inquiry—as it would in non-patent cases—of looking at all available information[1] and then applying those facts to the applicable law. The problem with this inquiry, however, is that it ignored a key principle of patent law and claim construction. Today, the Court remedies that oversight.

Although in practice it appears that McCain almost exclusively uses the PEF technology on potatoes and within a voltage range of 30 – 75 V/cm, that does not mean

---

[1] The Court is not implying that this form of inquiry was somehow incorrect. To be sure, such is the standard. Under *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), it is the Court's duty to examine the intrinsic and extrinsic evidence in order to determine the scope and meaning of the patent claims at issue. In this case, however, the Court did that, but failed to address a legal principle that bears heavily on the disputed claim.

MEMORANDUM DECISION AND ORDER - 4

the patent is limited to those examples, nor that the Court should construe the term "high electric field" in a limited fashion. Thus, the Court believes that it was not so much its failure to identify disavowal in McCain's use of the high electric field that was the problem, but rather the Courts finding that the examples given—even specific, and heavily supported examples—translated into limitations. All the evidence in support of the Court's previous determination is accurate, but it only shows that McCain uses the '540 patent consistent with its preferred embodiment, not that it has conceded other uses or that this primary use encompasses the full extent of the patent's purpose.

In the seminal case, *Phillips v AWH Corp*, the Federal Circuit outlines the difficult task a court has in determining whether an example is just that—an example—or if it is a limitation in the patent. That difficulty aside, the Court has repeatedly and forcefully rejected the idea that examples themselves import limitations on the scope of the patent.

> [W]e recognize that the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice. *See Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186–87 (Fed.Cir.1998) ("there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification"). However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. *See, e.g., Nazomi Communications, Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed.Cir.2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification"); *Liebel–Flarsheim,* 358 F.3d at 906–08; *Teleflex,* 299 F.3d at 1327; *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed.Cir.1985). In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being

> limited to that embodiment. *Gemstar–TV Guide,* 383 F.3d at 1366. That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.
>
> To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. *See Spectra–Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1533 (Fed.Cir.1987). One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, <u>it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive</u>. *See SciMed Life Sys.,* 242 F.3d at 1341. The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent. *See Snow v. Lake Shore & M.S. Ry. Co.,* 121 U.S. 617, 630, 7 S.Ct. 1343, 30 L.Ed. 1004 (1887) (it was clear from the specification that there was "nothing in the context to indicate that the patentee contemplated any alternative" embodiment to the one presented).

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (underlining added). *See also Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) ("Construing the claims in light of the specification does not, however, imply that limitations discussed in the specification may be read into the claims. It is therefore important not to confuse exemplars or preferred embodiments in the specification that serve to teach and enable the invention with limitations that define the outer boundaries of claim scope."); *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005)("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the

specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'"); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although the written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim.").

In this case, there are indications that McCain *did not* intend for the voltage range to be limited to 30 -75 V/cm and that any examples given were just that: examples, not limitations. The purpose of these examples was to "teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so" but do not limit the patent (i.e. the protected, utility process in this case) to these ranges and uses. *See Spectra–Physics, Inc.*, 827 F.2d at 1533.

For instance, the '540 patent uses phrases such as "as an example," Dkt. 53-2, at 3:21, and "by way of example" *id.* at 1:24, when describing the use of the PEF technology on potatoes and at a particular voltage. More to the point, the language in the '540 patent specifically notes that "the following description . . . is given as a non-limiting example," *id.* at 2:63-64, and further that "obviously, the invention is not limited to the embodiment described, and many modifications may be made, while keeping within this invention." *Id.* at 4:19-22.

Additionally, while McCain has (at least internally) stated that certain voltage ranges are not preferred, that does not mean that it has disavowed those ranges:

> Mere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal. *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1335 (Fed.Cir.2009) (holding

MEMORANDUM DECISION AND ORDER - 7

> that even a direct criticism of a particular technique did not rise to the level of clear disavowal). In *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* we explained that even where a particular structure makes it "particularly difficult" to obtain certain benefits of the claimed invention, this does not rise to the level of disavowal of the structure. 620 F.3d 1305, 1315 (Fed.Cir.2010). It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation. We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer.

*Thorner*, 669 F.3d at 1366–67. Under the circumstances, the Court cannot read a limitation into the '540 patent that McCain has not affirmatively rejected *even if the majority of the '540 patent's preferred uses fall within a limited voltage range*.

As the Court noted in its original decision, the examples using a voltage range of 30 – 75 V/cm were "the only examples given," and while some flexibility was built into the '540 patent, there was no evidence that McCain meant to encompass "voltage magnitudes hundreds or thousands of volts higher." Dkt. 69, at 18-19. This language is not necessarily at odds with the Court's reconsideration today. The Court is not trying to split too fine a hair in this decision: it did err, but that error is more nuanced that even McCain appears to argue in its opening brief in support of reconsideration[2] as it focuses almost solely on trying to prove that there are examples outside of the 30-75 V/cm

---

[2] McCain's opening brief focuses on disavowal and examples of other voltage ranges, whereas its reply brief is more focused on the legal principle the Court finds most persuasive—the difference between examples and limitations.

range.³ Examples are in fact, the problem. Under *Phillips* and *Thorner* the Court should not have allowed specific embodiments or examples to form the bases for its claim construction *unless it was clear that those examples were meant to be read as boundaries of the claim scope.*⁴

Thus, whatever examples exist (in the patent or in practice) may in fact still lend credence to an argument that there has been disavowal or that the doctrine of equivalents may not apply because of the magnitudes of differences, but the Court's job at claim construction is to define disputed terms in order to (ultimately) aid a finder of fact in determining infringement.

The bottom line is that the Court cannot reconcile its restrictive voltage definition with the language in *Phillips*, *Intervet*, and *Thorner* that specifically warn against equating examples with limitations.

The Court believes it erred in allowing examples to ultimately rule the day and overshadow the patent's broader purpose. As a utility patent, the '540 patent claims and protects the *process as a whole*. McCain has given examples of how the '540 patent is to

---

³ McCain's argument that by referencing other patents, the '540 patent somehow incorporated those designs and embodiments (and thus a broad voltage range) is unpersuasive. Additionally, the Court does not appreciate McCain trying to distance itself from the overwhelming evidence presented by Simplot (and essentially adopted by the Court) that suggests McCain actually uses this PEF technology in a way other than that which is the preferred embodiment. While the limitation the Court read into the '540 patent may be legally incongruent, McCain has still not presented any factual evidence that it uses the '540 patent on any other vegetable or at any other voltage range.

⁴ In other words, the Court did not err in its factual analysis, but in its legal application of those facts to the principles of patent construction (those same facts notwithstanding).

MEMORANDUM DECISION AND ORDER - 9

be used, but those examples only instruct one skilled in the art of the preferred—but not exclusive—method for utilizing the technology. The purpose of this high electric field is what is important, not the actual range. Here, the '540 patent uses the high electric field to make a fruit or vegetable less resistant to cutting. Rather than a strict numerical definition, this type of definition—that goes to the purpose of the patent and does not read a limitation from the specifications or preferred embodiment—is most appropriate.

The Court does not take reconsideration lightly. For judicial economy and ultimately pure justice, the Court strives to give each case its upmost attention and obtain the most accurate result. The mere fact that the Court devoted almost 11 pages within its prior 29-page decision to this topic illustrates that it was something the Court tried to thoroughly and carefully analyze. That being said, it appears the Court failed to recognize an important and crucial principle of claim construction. The Court has undertaken a second, in-depth, time-consuming study of claim construction principles and the facts of this case. Ultimately, the Court has determined that it must revisit—in fact reverse—its prior determination and interpretation of the term "high electric field."

Finally, the Court reemphasizes that its holding today bears solely on the definition of the term "high electric field." The Court noted in its original decision that Simplot's indefinite argument as it relates to the term "high" would be better left for summary judgment (as with indefinite arguments on any of the claim terms, as well as disavowal arguments related to the design patents). That remains true. The Court's decision today is only a partial reconsideration in that it has reconsidered the definition of

"high electric field" and vacates its prior definition in favor of one that better aligns with the purpose of a utility patent and does not impermissibly read an example as a limitation.

## V. ORDER

1. McCain's Motion to Reconsider (Dkt. 70) is GRANTED.

2. "High Electric Field" – shall be defined as "an electric field strong enough to make the vegetable and/or fruit easier to cut."

3. In light of this Decision, McCain's Motion for Leave to Amend (Dkt. 71) and Simplot's Motion for Partial Summary Judgment (Dkt. 77) are DEEMED MOOT. If either of those motions are still relevant, they can simply be modified and refiled. Additionally, Simplot's Motion for Partial Summary Judgment will not act as a bar to any future motions for summary judgment.[5]

DATED: January 11, 2019

David C. Nye
Chief U.S. District Court Judge

---

[5] The Court normally limits a party to one motion for summary judgment; however, by virtue of this decision, Simplot's motion (as written) is moot. Simplot can refile a Motion for Summary Judgment if it so desires. Additionally, as Simplot's Motion was for Partial Summary Judgment, such a filing would not preclude a motion for summary judgment on another basis or on other claims or patents at issue in this case.