UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>McCAIN FOODS USA, INC.,<br><br>　　　Defendant.<br>―――――――――――――<br>McCAIN FOODS LIMITED,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>J.R. SIMPLOT COMPANY,<br><br>　　　Defendant. | Case No. 1:16-cv-00449-DCN<br><br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff J.R. Simplot Company's ("Simplot") Motion for Leave to File Third-Party Complaint (Dkt. 88), Defendant McCain Foods Limited's ("McCain") Motion to Compel (Dkt. 93) and Simplot's Motion to Amend/Correct Protective Order (Dkt. 98). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral

argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the

Court finds good cause to GRANT Simplot's Motion for Leave to File Third-Party

Complaint, GRANT in PART and DENY in PART McCain's Motion to Compel, and

GRANT Simplot's Motion to Amend/Correct Protective Order.

## II. BACKGROUND

On January 11, 2019, the Court issued its Memorandum Decision and Order (Dkt.

86) granting McCain's Motion for Partial Reconsideration. In its Motion to Reconsider,

McCain petitioned the Court to revisit its *Markman* definition of the term "high electric

field." Dkt. 70. Ultimately, the Court did redefine the term to more fully align with the

purpose of the patent rather than relying on examples, or a preferred embodiment, to

restrict the construction of the term—as it had originally.

On January 24, 2019, Simplot Filed a Motion for Leave to File a Third-Party

Complaint. Dkt. 88. In its Motion, Simplot seeks to file a Third-Party Complaint against

Elea Vertriebsund-Vermarktungsgesellshaft, mbH ("Elea") and Food Physics, LLC (Food

Physics").

On February 21, 2019, McCain notified the Court that the parties had reached an

impasse regarding certain discovery matters—namely the disclosure and/or protection of

certain financial information. Pursuant to the Court's standard practice regarding

discovery disputes, the parties submitted position papers outlining their respective

concerns and a telephonic mediation was held in an effort to informally resolve the

matters. Ultimately, both parties elected—as was their prerogative—to move forward

with formal motions after the informal mediation proved unsuccessful. McCain filed a

Motion to Compel, asking the Court to require that Simplot turn over the sought-after information, and Simplot filed a Motion to Amend/Correct the Protective Order asserting that it would only turn over the requested information if there were substantial protections in place.

The Court will address each Motion in turn.

## III. ANALYSIS

### A. **Simplot's Motion for Leave to File a Third-Party Complaint (Dkt. 88)**

1. Background

On February 21, 2017, McCain filed its Complaint for Patent Infringement against Simplot in the Northern District of Illinois. On August 9, 2017, the Northern District of Illinois transferred McCain's lawsuit to this District, and on November 9, 2017, the Court granted McCain's Motion to Consolidate its lawsuit with a pending action for design patent infringement and trade dress infringement that Simplot had previously filed against McCain. Dkt. 40.

In the patent infringement portion of this case, McCain alleges that Simplot directly infringed U.S. Patent No. 6,821,540 ("the '540 Patent") by using Elea PEF Systems in the United States to treat fruits and vegetables.

Simplot, however, does not design or manufacture any of the Elea PEF Systems accused of infringement. In fact, Simplot purchased four of the accused Elea PEF Systems directly from Elea and one accused Elea PEF System from Elea's exclusive North American Distributor, Food Physics. Simplot asserts that it purchased the accused Elea PEF Systems based on: (1) Elea and Food Physics' express warranty that the ELEA

PEF Systems do not infringe any third party's patent, including the '540 Patent; and (2) Elea and Food Physics' agreement to defend, indemnify, and hold Simplot harmless from any claim of infringement, including claims for infringement of the '540 Patent, based on Simplot's use of the Accused Elea PEF Systems.

Simplot alleges that it notified Elea and Food Physics of the McCain Complaint and the allegations therein, and further, that it demanded indemnity and defense pursuant to the terms of the Equipment Furnish Only Purchase Contracts signed between Simplot, Elea, and Food Physics. According to Simplot, Elea and Food Physics have not agreed to assume their indemnity obligations and have not agreed to defend Simplot against McCain's infringement claims.

On January 23, 2019, Simplot filed a separate lawsuit against Elea and Food Physics to pursue these indemnity claims. That suit, Case No. 1:19-cv-00024, is currently pending before United States Magistrate Judge Candy W. Dale. Judge Dale has stayed her case in light of Simplot's Motion for Leave to File Third-Party Complaint in this case—which Simplot filed the day following the filing of the independent case against Elea and Food Physics. Simplot reasons that allowing a third-party Complaint in this case makes the most sense, but states that in the event the Court denies its request, it will nonetheless pursue its claims independent of this litigation. Similarly, if the Court grants the instant request, Simplot asserts that it will voluntarily dismiss its companion suit pending before Judge Dale.

2. Legal Standard

The impleader provision of Federal Rule of Civil Procedure 14 allows a defendant

to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The purpose of impleader is to "promote judicial efficiency by avoiding separate actions against third parties who may be liable to defendant for part or all of a plaintiff's original claim." *Whitt v. Papa Murphy's Int'l, LLC*, No. 1:18-CV-00231-BLW, 2018 WL 6310265, at *1 (D. Idaho Dec. 3, 2018) (internal citation omitted); *see also Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*, No. 1:08-CV- 00229-BLW, 2012 WL 5285901, at *2 (D. Idaho Oct. 25, 2012). Impleader is appropriate where "a defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Whitt*, 2018 WL 6310265, at *1 (quoting *Stewart v. Am. Int'l Oil 7 Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988)).

"The decision to implead a third-party defendant is addressed to the sound discretion of the trial court." *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986); *Huntsman*, 2012 WL 5285901, at *2–3. In exercising discretion whether to grant leave to file a third-party complaint, courts have considered a number of factors, including: (1) timeliness of the motion; (2) whether impleader would delay or unduly complicate the trial; (3) prejudice to the third party; and (4) prejudice to the "original plaintiff." *Id.*, *see also Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D. Cal. 2008); 6 Fed. Prac. & Proc. Civ § 1443 (3d ed.).

   3.   Analysis

   Before turning to specific factors, the Court will address Simplot's overarching argument that judicial economy favors granting its Motion for Leave to File Third-Party

Complaint. As this Court noted previously in this case, "avoiding duplicative work, unnecessary expense to clients, inconsistent results, and excessive use of judicial resources" is of paramount importance. The Court made that determination in relation to the issue of consolidation, but the reasoning rings true here as well—and to some degree, interpleader is consolidation. Here, Elea and Food Physics are already involved in this case. While their degree of involvement is not as significant as it will undoubtedly be if joined as third-party Defendants, allowing Simplot to litigate these related issues in this lawsuit would conserve judicial resources.

The current case and underlying design and utility patent infringement claims, as well as the trade dress infringement claim, are complicated issues. This Court is deeply invested in those issues and while the new allegations against Elea and Food Physics are not identical claims per se—they are, after all, essentially just contract claims *about* patent infringement indemnity—this Court is in a good position to take those issues up with limited additional work and resources.

This Court is keenly aware of the parties, facts, legal issues, and rulings applicable in this case. While Judge Dale is undoubtedly qualified to hear such a case, a separate lawsuit is unnecessary as this Court could quite easily address an ancillary issue related to indemnification. Finally, the whole issue of indemnification is interwoven with the issue of infringement itself and may or may not even become relevant. This Court will be at the forefront of those determinations and is best suited to address the issue—again, should it even arise.

The Court will briefly address some of the guiding factors previously outlined.

a.  Timeliness of the Motion

McCain argues that Simplot's Motion is untimely because 1) it could have filed

such a motion sooner, and 2) allowing amendment at this stage will inevitably delay trial.

Taking the issues up in reverse order, the Court finds McCain's "trial date"

argument meritless as no trial date is set in this matter.[1] Discovery is ongoing at this point

and the dispositive motion deadline is many months away. With the relatively simply

issues at play between Simplot and Elea, it is unlikely that further extensions of any

deadlines will be necessary—at least for those reasons.

To be sure, Simplot's actions should not unduly, or unfairly, prejudice McCain,

but Simplot is within its right to bring in a potentially liable party to defend itself against

McCain's claims of infringement. Further, it will be up to Simplot to timely and

efficiently undertake preparation for its claims against Elea. Simplot asserts that the

discovery related to its Third-Party claims is "minimal" and can likely be completed

within the already set timeframe. The Court is not sure if this is possible or not, but again,

---

[1] McCain—in this motion and others—continues to assert that "this case is ripe for a trial date" and respectfully, but steadfastly, requests that the Court set this case for trial immediately. Whether McCain is unaware of this Court's standard practice due to the presence of out of state counsel or the Court's own failure to articulate its procedures, it takes the opportunity to clarify that the Court does not set trial dates until after ruling on all dispositive motions. Statistically speaking, very few civil matters go to trial and experience has shown that setting dates early on proves problematic as they often must be altered or vacated. This case, in fact, illustrates this principle. The parties have moved various deadlines for various reasons (including due to stays from the Court) during the course of this litigation. Had the Court blocked out days, or weeks, for a trial up front, that setting would have been vacated and inevitably caused delays or scheduling problems in other cases. In short, due to the Court's heavy docket, a trial date is only set when it becomes clear that a case will likely proceed to trial—and after the close of all discovery and any rulings on dispositive motions.

a 4-8 week delay (for example) in this case is still a far cry from the resources that would be necessary to conduct separate litigation and trials.[2]

Laying aside trial dates, stays, and calendaring, the Court finds that Simplot filed this Motion as soon as it became reasonably necessary. Simplot has been diligently litigating this matter. Early on in this case—and particularly following the Court's original *Markman* decision—Simplot was operating under the impression that its use of the PEF technology *did not* even qualify as a protected use under the '540 patent. While that position—or a variation of that position—might yet prevail in one form or another, following the Court's reversal of its definition of the disputed claim term "high electric field," Simplot determined that now was the appropriate time to bring Elea and Food Physics into this suit. In fact, it was a mere 13 days after the Court's Decision on McCain's Motion to Reconsider when Simplot filed its Motion for Leave to Filed a Third-Party Complaint.

All things considered, the Court finds that Simplot's Motion was timely filed.

b. Complication of issues/trial

Next, the Court turns to the issue of confusion. Simplot asserts that its third-party complaint will not result in confusion because the additional issues—unlike complex patent matters—are simple contractual disputes. Simplot further claims that interpleader

_____

[2] In fact, were the Court to deny the motion, and McCain were to prevail at trial against Simplot, it would undoubtedly have to wait until the indemnification issues were resolved before proceeding any further (i.e. before collecting on any judgment or damages award). Determining those issues in this case will, in the overall scheme of things, benefit McCain as well.

will actually simplify trial as it will illicit answers to inevitable jury questions regarding Elea's liability or defense. The Court is not entirely sure that a jury would understand third-party indemnification in patent cases as a matter of course, but can appreciate Simplot's position that with overlapping witnesses and testimony, it would be expedient to try the issues together.

For its part, McCain asserts that including these issues with the underlying patent claims will complicate the structure of the trial and confuse the jury.[3] McCain's main concern seems to be that Simplot's third-party claims may mislead a jury into thinking that Elea and Food Physics' products are what directly infringed on the '540 patent rather than Simplot's use of those products and its process (wherein potential infringement actually lies).

Simplot counters that it fully understands the difference between products and processes and notes that its agreement with Elea and Food Physics warrantied that Simplot's *use* would not infringe any patent—i.e. it is Simplot's position that the patented process is what Elea and Food Physics must indemnify it from in the first place. Whether a jury would conflate products and processes is ultimately irrelevant because, as Simplot notes, the Court can clear up "any confusion that could otherwise occur as a result of

---

[3] As an aside, McCain claims that Simplot "openly seeks to use the proposed third-party claims to confuse the jury," "admits that it seeks to mislead the jury," that jury confusion is "Simplot's true motive" and that it is beyond "obvious that Simplot seeks impleader to confuse the jury and complicate the trial." Dkt. 90, at 1, 3, 7. The Court disagrees with McCain's interpretation.

impleading Elea and Food Physics." Dkt. 91, at 11. That said, the parties are likewise responsible for ensuring that misunderstanding and error do not occur during trial.

While McCain may have concerns regarding potential confusion at trial, it will have a full and fair opportunity to explain and clarify anything it fears may be unclear. As the Court noted previously, "juries frequently hear cases is which various claims require different evidence, testimony, and even standards of proof. With appropriate preparation, the Court can adequately instruct a jury to avoid any confusion." Dkt. 40, at 5.

To be sure, this final concern—jury confusion—is the subject of McCain's request that, in the event the Court allows Simplot to file its third-party complaint, it should nonetheless sever, or bifurcate, these claims and try them separately.

However, such a course of action would (at least to some small degree) defeat the purpose of interpleader. While the Court would be the same, holding two trials would still result in added time and expense.

More importantly, however, there are ways to alleviate McCain's concerns short of severing Simplot's third-party claims. McCain is concerned about infringement, liability, and indemnification. As McCain correctly points out, Simplot's claims against Elea and Food Physics do not relate to the underlying liability claims per se and are, in fact, contingent upon the resolution of those claims. While the Court agrees with this idea—that the jury may not even need to address Elea and Food Physics depending on its findings of infringement—the solution is not necessarily to hold a separate trial, but to hold off on *the indemnification portion* of the trial until the *infringement portion* is dealt

with.[4] In fact, as the Court has already noted, it might already have to do something along these lines. *See* Dkt. 40, at 6 (noting that while consolidation of the design patent claims, the utility patent claims, and the trade dress infringement claims was appropriate, severing the issues for trial may be necessary depending on how the case played out).

In short, McCain has expressed valid concerns; however, the Court will not make a determination at this time regarding bifurcation or severance of the third-party claims— or any of the claims at issue in this case. For the reasons outlined above, the Court finds it unlikely that it would hold completely separate trials in these matters, however, it might structure the trial in phases to ensure clarity, eliminate confusion, and avoid unnecessary time, expense, and duplication of work.

Those issues aside, the Court ultimately finds that allowing Simplot to implead Elea and Food Physics will not confuse or complicate the issues or trial.

c. Prejudice to third party or original plaintiff

Finally, there is no expressed, or known, prejudice to Elea or Food Physics. Neither are parties to this suit and neither have even appeared in Judge Dale's case. Additionally, it will likely be to these parties' benefit to enter a case where the Court is already apprised of the relevant facts, background, and issues.

---

[4] In other words, similar to a civil case in which a jury hears and determines liability before hearing or determining damages, or a criminal case where enhancements or other charges are not dealt with until the underlying guilt or innocence is determined, the Court might hold this trial in phases. Infringement could be dealt with first, then liability, damages, and indemnification. Again, this approach saves resources. Were the Court to hold two separate trials, the second jury would nonetheless need substantial background (that could have been gleaned from the first phase of trial) in order to resolve Simplot's third-party claims.

As for McCain, the only prejudice the Court sees is the possibility of confusion at trial. As explained above, however, there are ways to adequately deal with any concerns that may arise.

In conclusion, the Court finds that Simplot's Motion to File Third-Party Complaint is timely, will not unduly delay the posture of this case or confuse the issues, and that any related concerns can be dealt with as they arise.

In furtherance of judicial economy, and the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court GRANTS Simplot's Motion and will allow it to file its Third-Party Complaint against Elea and Food Physics. Simplot must do so within 7 days of the date of this order.

## B. **McCain's Motion to Compel (Dkt. 93)**

1. Background

Beginning in the fall of 2017, McCain began seeking—among other things—financial information related to Simplot's use of the PEF technology at issue in this case. After McCain served Interrogatories related to this information, the Court stayed discovery pending its *Markman* ruling. Upon the Court's issuance of its *Markman* ruling (Dkt. 69) McCain undertook efforts to obtain the information it had previously sought from Simplot.

Around the same time, however, McCain filed a Motion for Reconsideration of the Court's *Markman* ruling and, in an effort to conserve resources, the Court stayed discovery again pending disposition of that Motion. *See* Dkt. 81. Ultimately, the Court granted McCain's Motion and on January 11, 2019, discovery resumed. Once again,

McCain sought the financial information originally requested, and submitted additional Interrogatories. Simplot expressed hesitancy in producing the information, but stated that it would produce what was requested in due time. Although the parties held numerous meet-and-confer conferences on this topic, ultimately Simplot refused to produce the requested information without certain assurances from McCain as to its use and dissemination.

Following this breakdown in communication, McCain approached the Court, and, pursuant to the Court's standard practice—and as outlined in the case management order (Dkt. 28, at 3-4)—requested an informal mediation to resolve the matters. Counsel and the Court met telephonically and discussed various options. Ultimately, neither side felt satisfied with the results of the mediation and each filed a motion: McCain filed the instant Motion to Compel, and Simplot filed a Motion to Amend/Correct Protective Order. As part of its motion, McCain seeks Rule 37 sanctions against Simplot for its failure to timely respond to its Interrogatories.

2. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." If a party served with discovery fails to adequately respond, the serving party may file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a). The Court has broad discretion in deciding whether to compel discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

3. Analysis

McCain's Motion to Compel and Simplot's Motion to Amend Protective Order go hand in hand. McCain asserts that the Court can decide its Motion to Compel independent of Simplot's Motion to Amend Protective Order. The Court agrees in principle, but not in practice.

McCain's Motion to Compel seeks information that Simplot has failed to produce. Simplot "agrees that . . . the information McCain has requested is relevant to this action" and that it has always been "willing to produce the information once adequate protections [have been] entered by this Court." Dkt. 97, at 2. Those protections, however, are not currently in effect—hence Simplot's Motion to Amend the Protective Order. Thus, to a certain degree, McCain's Motion is granted because, as will be discussed in greater detail below, the Court will be amending the protective order in this case—thus quelling Simplot's fears—and will require Simplot to immediately comply with McCain's request. That said, the Court will not require Simplot to produce the information in the absence of the amended protective order, nor will the Court impose sanctions against Simplot, so, in that respect, McCain's motion is denied.

The substantive reasons for the necessity of an Amended Protective Order, as well as an in-depth discussion concerning the information sought, is more appropriately included in the following section, however, the Court wishes to discuss here some procedural issues—specifically timing and intent—and the broader question of whether Rule 37 sanctions are appropriate in this case.

The interesting part about these two interrelated motions is that each side agrees, in part, with the other side's position. Simplot admits that the information McCain seeks is relevant and must be turned over. McCain, in turn, recognizes that the information it requests is highly confidential and warrants protection. The disagreement, however, centers around the level of protection necessary to protect the interest of either party.

This explanation, in itself, cuts against sanctions. This is clearly an important topic, both sides have diligently tried to resolve the issues—between themselves and with the Court's involvement—and ultimately needed to file formal motions.

McCain argues that sanctions are warranted because Simplot waited too long to file its motion to amend the protective order. Additionally, McCain argues that Simplot's request is contradicted by its actions—namely, that Simplot agreed to the current protective order and has already produced certain information that is similar to the information it now refuses to provide without further protections.

The Court first considers McCain's timing argument. As discussed above, discovery in this case has been stayed and re-started numerous times and for a variety of reasons. Some of those reasons were precipitated by the parties, others by the Court. Regardless of the reasons, this case has proceeded in a slightly slower, but measured, timeframe. Until the Court's decision regarding McCain's Motion for Reconsideration, Simplot thought this case was going in an entirely different direction. The Court is not implying that Simplot *could not* have turned over the information sooner, but rather that its delay in doing so does not seem malicious. Once the trajectory of the case was clear,

Simplot began actively trying to assess its options relative to McCain's requests. As such, the Court does not agree that the timing of Simplot's Motion warrants sanctions.

As for McCain's argument that Simplot's motion contradicts its prior actions, the Court once again disagrees. It is important to note that a party is allowed to modify, alter, expand, restrict, (or even reverse) its position on issues during the course of litigation. Substantively, such a course may be unwise, but procedurally, there are times when one's position could, or should, change as more information becomes relevant, as decisions are issued, and as issues are narrowed. Litigation is an evolving endeavor and although Simplot did agree to the prior protective order,[5] there is nothing that prohibits it from seeking amendments or modifications now. Tellingly, the protective order itself grants either party the "right . . . *to seek further or additional protection* of any Discovery Material or *to modify* this Order in any way." Dkt. 41-1 at 5 (emphasis added).

In light of these considerations, the Court does not find that Simplot utilized dilatory tactics or pursued its position unreasonably. Sanctions are, therefore, not appropriate. McCain's Motion to Compel is therefore GRANTED in PART and DENIED in PART. The Court will require that Simply produce the information McCain seeks— once the amended protective order is in place. The Court also orders Simplot to fully and fairly respond to McCain's Interrogatories. The Court will not, however, impose sanctions.

---

[5] It does appear, however, that Simplot and McCain had different perspectives (although such perspectives are only now coming to light) on the interpretation of whether materials produced for "damages" purposes—and subject to disclosure procedures—included financially sensitive information.

**C. Simplot's Motion to Amend/Correct Protective Order (Dkt. 98)**

1. Background

While the Court has discussed the procedural background of what led up to the filing of the instant motions, it takes the opportunity now to delve into the Protective Orders in this case and the specific information at issue.

Early on in this case, the parties filed a stipulated protective order in an effort to protect the disclosure and dissemination of certain materials and information. *See* Dkts. 36, 37. The parties subsequently amended the original protective order and stipulated to an amended protective order. *See* Dkts. 41, 46.

Of relevance here are certain sections of that revised protective order. Section VIII of the order explains that either party can designate material as "confidential." Dkt. 41-1, at 7. If either party so designates, that information can only be shared with a limited number of people. *Id.* Section IX outlines that either party can further designate information as "confidential – outside attorneys' eyes only" (*id.* at 10) and this information, in turn, can only be shared with an even smaller group of individuals— namely outside counsel and retained experts and consultants only.

It is also important to note that the parties agreed "pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, [and] customer or vendor information . . ." would merit the "confidential – outside attorneys' eyes only" designation. *Id.* at 9.

Section X mandates that prior to the disclosure of any protected materials to individuals who fall under Section VIII and Section IX—i.e. outside retained experts or

consultants—if the person has been retained as a testifying or non-testifying expert with regard to damages, a disclosure process must occur that allows the producing party to object to anyone so identified. These individuals must also sign a document wherein each affirms that he or she is aware of the provisions of the protective order, swear to abide by the same, and further certifies that their professional activities are not in any way related to Simplot, McCain, or any competitors of either company.

Simplot now seeks to amend the amended protective order to ensure that financial documents are covered under the disclosure provisions regardless of whether they will be shown to damage experts or other experts more generally. McCain contends the current protections are sufficient to meet the needs of the parties.

2. Legal Standard

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)).

Additionally, "a district court has broad discretion in deciding whether to modify protective orders." *Lahrichi v. Lumera Corp.*, 433 F. App'x 519, 521 (9th Cir. 2011); *see also Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d

1217, 1219 (9th Cir.1995).

3. Discussion

In its Motion, Simplot asserts that, while McCain originally represented that only damages experts would need access to the sensitive financial information at issue, it has now taken the position that under the current protective order it only has to go through the disclosure process if the expert is related to damages, i.e. it can provide Simplot's financials to any other expert—without disclosing them—so long as that individual does not later testify regarding damages.

This appears to be a correct reading of the language at issue and Simplot does not necessarily dispute that this is a logical interpretation of the protective order. That said, Simplot contends that it did not think there were other non-damage experts who would need sensitive financial information[6] in this case and that (based upon that assumption) it agreed to the provisions at issue in the first place. Simplot adds that had it known (then) that the present interpretation is how McCain understood or intended to interpret those provisions (then or now), it would not have agreed to the protective order as written.

The Court digresses for a moment to address a procedural—or more accurately, a professional—issue.

Throughout the briefing submitted for the current motions, the parties levy numerous allegations against each other. Each opines as to what the other side "meant,"

_____

[6] In other words, Simplot believed that sensitive financial information only related to damages and thus its concerns were abated under Section X's disclosure process.

"intended," or "understood" throughout the protective order negotiations—some of which has been outlined above. Many of the arguments raised are simple banter and are ultimately irrelevant, while some provide context or background and have slightly more relevance. Still others, however, are speculative at best,[7] flat out incorrect at worst,[8] and/or are improperly raised—specifically in reference to the Court and informal discovery disputes.[9] Finally, procedural errors are also present in the parties' briefs.[10]

To be sure, attorneys should zealously defend their clients. That said, zealous advocacy does not overshadow common courtesy or factual accuracy. The parties in this case are sophisticated and the attorneys representing them—from within the District of

---

[7] For example, Simplot repeatedly states that McCain has changed its position on why it needs this information—first it was experts, now it is for outside counsel—and that this change in position is indicative of some nefarious scheme. *See* Dkt. 97, at 4. McCain has explained, however, that while its experts will eventually need the information, its outside counsel needs it now in order to adequately prepare for mediation. This is a reasonable request.

[8] McCain repeatedly claims that Simplot has been withholding this information for years, however, as has already been discussed, the Court *formally* stayed all discovery in this case prior to the *Markman* hearing, and then again during its consideration of McCain's Motion for Reconsideration. *See* Dkt. 81. Strikingly, the Court specifically noted that it would "not . . . require that Simplot address McCain's request regarding . . . the related sales and financial information." *Id*, at 3. Simplot was, therefore, not unnecessarily withholding information but was following the Court's orders.

[9] For example, McCain claims that the Court "rejected" Simplot's proposal (Dkt. 100, at 6), and "agreed with McCain" regarding advance disclosure (Dkt. 100, at 4). The Court may or may not have agreed with one party or another during informal discussions and may or may not have recommended a course of action that favored or disfavored one party's position at the time, but as the Court's website indicates— and as was reiterated by the Court's law clerk verbally during each of the various calls and is now memorialized in the record (Dkt. 93-20, at 2)—the discovery dispute process is not binding on the parties. Either party is free to pursue formal motions if desired. Suffice it to say, it is inappropriate to cite the Court's informal suggestions as binding authority in the present motions, when such suggestions were made informally and off the record.

[10] In its Reply brief (Dkt. 101), Simplot appears to utilize shorter spacing in order to accommodate a longer brief. Such a practice is not appropriate. *See* Dist. Idaho Loc. Civ. R. 7.1(a)(2) ("the use of small fonts and/or *minimal spacing* to comply with the page limitation is not acceptable."). The Court has frequently stricken materials that are not in compliance with the local rules, requiring the offending party to re-submit those materials. As substantial time has passed since the filing of this brief, the Court will accept it as written without modification. Future filings, however, that do not comply with all applicable rules will not be accepted.

Idaho and without—are of the highest caliber. The Court expects both sides to temper their arguments, be clear and accurate in their positions, work diligently and with respect towards one another, and to follow all rules of the Court.

In summary, regardless of what either side thought the other side thought, or how each intended to interpret the protective order previously, the Court is still left with the current dispute—whether to modify the protective order at this juncture or leave it as written.

McCain readily admits that the information sought is relevant, is protectable as attorneys' eyes only, but contends the advanced disclosure and veto requirements suggested by Simplot—that already pertain to damages experts under Sections VIII and IX of the existing protective order—go too far. In support, McCain raises two general concerns.

First, McCain alleges that the notice and disclosure requirements violate the work-product doctrine. Specifically, McCain argues that under Rule 26 of the Federal Rules of Civil Procedure, it need not disclosure the identity of non-testifying experts. The Court disagrees.

Under the Federal Rules of Civil Procedure, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). In a similar vein, a party "may not . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).

To be clear, neither party (nor the Court) is suggesting that Rule 26 requires that

McCain (or Simplot) provide the "facts known or opinions held" by any expert to the

other side. The disagreement between the parties, however, is whether that protection

extends to the experts' identities and curriculum vitaes. Under the circumstances, the

Court finds that the protections of Rule 26 do not extend that far *in this case and as to*

*these materials*.

McCain's position—that Rule 26 protections *extend* to an expert's identity—is not

wholly without merit. Numerous Federal District Courts, from within the Ninth Circuit

and without, have weighed in on this issue and some have, in fact, determined that even

an expert's identity need not be disclosed. *See*, *e.g.*, *Burt v. AVCO Corp.*, No. CV-15-

3355-MWF-PJWX, 2015 WL 12912366, at *4 (C.D. Cal. Nov. 17, 2015) ("Many courts

have recognized that the identity of non-testifying consulting experts is not discoverable

absent a showing of exceptional circumstances under which it is impracticable for the

party seeking discovery to obtain facts or opinions on the same subject by other means.")

(internal citations omitted); *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 97–98

(N.D. Cal. 1986) ("[D]iscovery of the identities of non-testifying experts should be

subject to the same standard as discovery of their opinions, namely, the 'exceptional

circumstances' standard."); *See also* 8A Fed. Prac. & Proc. Civ. § 2032 (3d ed.)

(analyzing various approaches and noting the split of authority).

Conversely, however, there are numerous cases in which courts have determined

that an experts' identify is quantifiably different from his or her opinions. Most relevant

for the Court's purposes today is the Ninth Circuit's decision in *Ibrahim v. Dep't of*

*Homeland Sec.*, wherein the Court explicitly stated that Rule 26 "does not prevent disclosure of the identity of a nontestifying expert, but only 'facts known or opinions held' by such an expert." 669 F.3d 983, 999 (9th Cir. 2012) (citing Fed. R. Civ. P. 26(b)(3)(B)). In that case, the Circuit also adopted the underlying District Court's finding that:

> It is commonplace for experts and consultants on both sides of any ordinary civil action to be vetted so that trade secrets and other sensitive information will not fall into the hands of someone with an adverse position to the owner of the sensitive information (other than, of course, adverse parties to the litigation itself). The risk is simply too great that someone in such an adverse position will be tempted to misuse sensitive information for a purpose other than the litigation.

*Id.* at 999. As is often the case, the specific facts underlying the various decisions play an integral role in the overall outcome. On one hand, the *Burt* court found—in balancing the attorney-client and attorney-work product doctrines with the International Traffic in Arms Regulations—that the disclosure of expert identities was inappropriate. On the other hand, the *Ibrahim* Court found—when balancing the attorney-work product doctrine and national security (specifically a TSA background check)—disclosure of identities was appropriate. While the underlying facts here differ from those in both *Burt* and *Ibrahim*, the Ninth Circuit has provided clear direction on the matter, which this Court must follow.

To be sure, even knowing the identity of a particular expert may provide some context, content, or insight into the other side's strategy, but the simple fact remains: Rule 26 does not protect identity, but only "mental impressions, conclusions, opinions, or

legal theories." Fed. R. Civ. P. 26(b)(3)(B). Thus, the Court finds McCain's first argument unpersuasive.

Second, McCain asserts that this type of information is already protected, and as a result, Simplot's concerns are unfounded. As previously noted "pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, [and] customer or vendor information" is protectable as "confidential – outside attorneys' eyes only" materials under Section IX of the existing protective order. Under such a designation, the disclosure requirements of Section X apply to any expert—testifying or nontestifying—if they were retained with regard to *damages*.

McCain's argument rings hollow as it has apparently now indicated there are other experts—not specifically retained for damages—who it feels must review Simplot's sensitive financial information. In other words, the current protective order would not require that McCain follow the notice and disclosure requirements if it showed Simplot's information to another expert so long as that expert had not been retained for damage purposes.

To this concern, however, McCain points to "Exhibit A" of the protective order. As both sides are well aware, early on in this case, the Court and Counsel determined that an efficient and effective way to protect confidential information was to require that any individual who viewed said information signed a non-disclosure agreement. The parties crafted such an agreement—namely "Exhibit A." *See* Dkt. 41-1, at 20-21. As outlined in Section X(b), any person who has been retained for an issue other than damages must fill

out Exhibit A—and provide other professional information—before reviewing any materials designated confidential or "confidential – outside attorneys' eyes only" under Sections VIII of IX.

The current protective order outlines that the disclosing party must maintain a record of all individuals who execute such an affidavit and present it to the other side within 30 days of the disposition of this case.

Under the requirements of Exhibit A, each individual must attest under oath that he or she agrees to be bound by the terms of the protective order. Furthermore, each person must certify "under penalty of perjury that, apart from this matter, none of [their] professional activities related directly or indirectly to Simplot/McCain or a Simplot/McCain competitor and [they] have confirmed that undertaking this engagement does not post a conflict that would disqualify [them] from serving as a witness on behalf of Simplot/McCain." *Id.*

Simplot contends that Exhibit A is insufficient under the circumstances and that there may be individuals who could attest to the above statement, but with whom Simplot would still not want its sensitive financial information shared. Accordingly, Simplot asserts that the only way to guarantee the protections it desires is to follow the notice and disclosure practice already in place for damages experts. To be sure, some of Simplot's

concerns appear unlikely,[11] but the concerns are valid and real nonetheless. McCain does not dispute this.

Simplot is a private, closely held company. Brent Moylan, Vice President of Finance for Simplot has explained that the information McCain seeks is not accessible to the vast majority of Simplot employees—let alone the public at large—but is only known to a controlled group of management and senior executives. Dkt. 98-3, at 2. Furthermore, McCain is Simplot's competitor in the market and, as the Court previously held, proprietary financial information should be afforded the upmost protections and safeguards when it comes to its dissemination—particularly to a direct competitor. *See Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, No. 4:16-CV-00427-DCN, 2017 WL 4839375, at *2 n.1 (D. Idaho Oct. 26, 2017) (collecting cases in the Ninth Circuit recognizing proprietary sales information as confidential information to be protected).

Finally, both sides appear to recognize that even though Section IX lists "pricing information, financial data" and other terms related to financial business activities as the types of information that would properly be designated as "confidential – outside attorneys' eyes only," information, those terms are never defined. Considering this

---

[11] Simplot suggests that McCain might share this highly competitive information with a disgruntled former employee, a potential customer, or a future employee of either company. Dkt. 101, at 6-7. This is pure speculation on Simpot's part and frankly—in the case of the futuristic employee—almost impossible to determine (after all, unless someone is already in negotiations with the company, how would one know at the present time that they are a future employee).

ambiguity, both sides fear that "satellite litigation" may arise over what is or is not "financial information." Dkt. 100, at 10; Dkt. 101, at 13.

Upon review, the Court does not find that extending the disclosure requirements to experts beyond damages[12] violates Federal Rule of Civil Procedure 26. Likewise, the Court finds that the current protective order is insufficient to protect Simplot's information. In sum, the most efficient course of action is to modify the protective order.

With that in mind, the Court now considers how the protective order should be modified.

McCain's position aside (that any modification is unnecessary), it suggests that in the event the Court determines some type of modification is warranted, the modifications should take the form of a new subsection in Section X indicating that the disclosure and veto provisions apply to retained testify and non-testifying experts with respect to sensitive financial information contained in documents found at certain bates numbers identified by the parties. Simplot argues such a provision is far too narrow for its purposes and that the process of identifying specific bates numbers would be unduly cumbersome.

For its part, Simplot suggests that simply striking the word "damages" from Section X—so that the notice and disclosure requirements applied to any expert who

---

[12] Again, it is of little consequence, but why this specific type of expert would be more deserving of the notice and disclosure requirements—as opposed to any other—is debatable. McCain does not seem to have a problem disclosing any damages expert's identity, but strongly opposes disclosing any others (as a violation of the work product doctrine). While there may be nuances, the Court sees no meaningful distinction warranting selective treatment of experts. As the Court has now found, Rule 26 does not shield an expert's identity (regardless of the purpose for their retention), but only their opinions, etc.

reviewed material designated as "confidential – outside attorneys' eyes only,"—is the simplest way to proceed. McCain argues that this amendment is overbroad and that changing the whole provision at this point would be chaotic as material has already been produced by both sides under the existing provisions.

The two suggestions on how to proceed are not that far apart in reality, and each has advantages as well as drawbacks. Additionally, both appear time consuming, but in different ways.

McCain's proposal is fairly specific, and the Court is concerned that it will suffer from the same "satellite litigation" concerns as have already been addressed, i.e. what is or is not considered "sensitive financial information."

On the other hand, the Court is concerned that Simplot's proposal is too broad. Specifically, under Simplot's proposal, each expert who deals with Section IX ("confidential – outside attorneys' eyes only") materials must now be disclosed. The Court is not concerned with what has already been produced as Simplot has stated (and the Court is in agreement) that the application of any change to the protective order is not retroactive. That said, there is a group of individuals—those retained for non-damage and/or non-financial reasons but who must review "confidential – outside attorneys' eyes only" information—that must now be disclosed, when previously such was not required.[13] In other words, Simplot's proposal will capture a group of people it does not

---

[13] For example, Simplot claims that it is not asking McCain to disclose the identities of its experts and

necessarily intend, or need, to capture.[14]

These observations notwithstanding, the Court has determined that Rule 26 does not prohibit the notice and disclosure provisions of the protective order in the first place. In other words, the subgroup of people the Court is concerned about would have likely fallen within the notice requirements in the first instance had the parties not restricted Section X to damages experts from the outset.[15] Thus, the Court's concern is specific to this case and the timing of what has been disclosed thus far with what will yet be disclosed; not any specific legal concern.[16]

Upon review, the Court finds that the producing party is in the best position to know the appropriate designation for any particular piece of information. Simplot's proposal squares with that responsibility and limits the potential for future litigation over specific definitions. Furthermore, while the new protective order *may* now capture certain other experts who (under the prior protective order) did not have to be disclosed, such is simply the nature of evolving litigation.[17]

---

consultants to date who have received Simplot's highly confidential information (such as technical and marketing information). That is all well and good, but now those same people *would* have to be disclosed.

[14] An alternative could be a completely separate designation such as "confidential – outside attorney's eyes only – financial." The Court has approved similar tiers within protective orders in the past. *See, e.g.*, *Nelson-Ricks Cheese Company, Inc. v. Lakeview Cheese Company, LLC*, Case No. 4:16-cv-00427-DCN, Dkt. 58. This designation, however, would likely not be immune from the disagreements regarding the scope and definition of "financial", and may create another layer of potential confusion.

[15] In fact, it appears this two-tiered framework for protective orders is fairly common in patent cases.

[16] It goes without saying that the Court will not tolerate arbitrary designations made in an effort to include or exclude certain information or to use the notice and disclosure process as a sword to expand Rule 26 beyond what has been explained today.

[17] Again, it is hard to see any real objection to the new requirements as these individuals *could* have already fallen under such a provision, but for the parties stipulated order. While the new provisions change the dynamics of this case, such a disclosure practice is not fundamentally unfair or out of the ordinary in protective orders dealing with proprietary or confidential information.

Accordingly, the Court will GRANT Simplot's Motion and accept its proposed amendments to the existing protective order.

## IV. ORDER

1. Simplot's Motion for Leave to File Third-Party Complaint (Dkt. 88) is GRANTED. Simplot shall file its Third-Party Complaint within seven (7) days of the date of this order.

2. McCain's Motion to Compel (Dkt. 93) is GRANTED in PART and DENIED in PART. Simplot shall produce the information McCain seeks—once the amended protective order is in place—and fully and fairly respond to McCain's Interrogatories. The Court will not, however, impose sanctions.

3. Simplot's Motion to Amend/Correct Protective Order (Dkt. 98) is GRANTED. Simplot shall file the Amended Protective Order (Dkt. 98-1) within seven (7) days of the date of this order. The Amended Protective Order shall govern this case moving forward; it will not be applied retroactively.

DATED: July 1, 2019

David C. Nye
Chief U.S. District Court Judge