UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>McCAIN FOODS USA, INC.,<br><br>　　　Defendant.<br>_____ | Case No. 1:16-cv-00449-DCN<br><br><br>**MEMORANDUM DECISION AND ORDER**<br><br><br>**FILED UNDER SEAL** |
| McCAIN FOODS LIMITED,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>J.R. SIMPLOT COMPANY,<br><br>　　　Defendant.<br>_____ | |
| J.R. SIMPLOT COMPANY,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ELEA VERTRIEBS-UND-<br>VERMARKTUNGSGESELLSCHAFT,<br>MBH; FOOD PHYSICS LLC,<br><br>　　　Third-Party Defendants. | |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by the parties in this case.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

The Court has outlined the salient facts of this case in numerous prior decisions (*see e.g.*, Dkts. 30, 69, 86, 112, 157), assumes the reader's familiarity with those facts, and will not repeat them extensively here. In short, this is a patent infringement case. While there are multiple patents at issue, the patent relevant to the Court's decision today is McCain's utility patent—U.S. Patent No. 6,821,540 ("'540 patent")—which protects McCain's process of using high-energy pulsed electric field ("PEF") technology to treat fruits and vegetables before cooking them.

Following an informal discovery dispute conference with the Court, McCain filed a Motion to Compel on April 29, 2020. Dkt. 165.[1] In its motion, McCain seeks to compel

---

[1] McCain filed its original motion under seal. Some information in the motion itself (as well as the supporting documentation) is proprietary, confidential, and/or otherwise subject to the Protective Order (Dkt. 114) currently in force in this case. McCain dutifully filed a Motion to Seal (Dkt. 164), as well as a redacted version of its motion for the public docket (Dkt. 168). This original motion set in play a string of sealed submissions, motions to seal, and duplicative public filings that continued until recently—some eleven months later. To be sure, the parties' actions were appropriate under the circumstances. The Court simply notes a few things. First, the Court already granted eight of the Motions to Seal (Dkt. 231) and takes the opportunity now to grant the remaining motions (Dkts. 241, 246). Second, the Court will seal this Decision. It does so because the content delves into the matters sealed by the parties. Additionally, as will be explained at the outset of Section III herein, the Court's decision today will also be sealed (and therefore, unpublished) because its discussion of the pending issues is straightforward and succinct thus diminishing its precedential and citational value. Third, because the instant Decision will be sealed, the Court references the sealed, unredacted versions of the parties' briefs throughout its discussion today.

Simplot's responses to certain discovery regarding Simplot's awareness of the '540 patent prior to its purchase of the PEF machines.

A central dispute in this case is whether Simplot willfully infringed the processes claimed in the '540 patent. McCain asserts that Simplot was aware of the patented technology before it purchased and started using PEF machines supplied by Third-Party Defendants Elea GmbH and Food Physics, LLC (collectively "Elea"), but that it nevertheless proceeded with the purchase and use of those machines. For its part, Simplot claims that it relied on certain representations from Elea—along with its own due diligence regarding the patented technology—when it began using the machines and was acting in good faith. McCain counters, however, that insofar as Simplot claims it acted in good faith, it has placed its understanding of the '540 patent (and all prior communications regarding the '540 patent) at issue and must turn over and documents on that topic.

Elea has joined in McCain's request and seeks to compel the same information. Dkt. 172. Simplot strongly objected to both motions, asserting that this information is privileged, irrelevant, and/or could be obtained from other sources. Dkts. 175, 178. Both McCain and Elea replied. Dkts. 181, 186.

After McCain and Elea filed their replies, Simplot filed a Motion for Leave to File a Sur-Reply (Dkt. 188) because, in its estimation, Elea raised various issues for the first time in its reply brief (Dkt. 186). Elea did not object to Simplot's Motion to file a sur-reply, provided it could file a sur-sur reply to the arguments in Simplot's sur-reply. Dkt. 190. Upon review, the Court will GRANT Simplot's Motion and will consider the sur-reply it filed, as well as Elea's sur-sur reply.

MEMORANDUM DECISION AND ORDER - 3

On August 28, 2020, shortly after briefing on the Motion to Compel concluded, Simplot Filed a Motion to Amend/Correct. Dkt. 194. In this Motion, Simplot seeks to amend its Third-Party Complaint in order to interplead Deutsches Institut Für Lebensmitteltechnik e.V. ("DIL") as another Third-Party Defendant (along with Elea and Food Physics). DIL is a German non-profit company devoted to food research. DIL also appears to own an interest, or stake, in Elea. Simplot asserts DIL's inclusion is necessary because it could be jointly and severally responsible (with Elea) for indemnifying Simplot in this lawsuit. Elea strongly opposes the Motion. Dkt. 196.

Before briefing on Simplot's Motion to Amend finished, Simplot filed a Motion for Issuance of Letters of Request to the Central Authority of German. Dkt. 198. In this Motion, Simplot asks that, pursuant to the Hague Convention of 1970, the Court issue letters of request to DIL and three individuals residing in Germany in order to secure discovery from them. Elea opposes this request as well. Dkt. 201.

On November 30, 2020, a few weeks after the conclusion of the briefing on its Motion for Letters, Simplot filed two Motions for Partial Summary Judgment—one against Elea (Dkt. 207), and one against Food Physics (Dkt. 209). In these Motions, Simplot argues the Court should grant partial summary judgment on the issue of indemnity and find that Elea and Food Physics breached their contractual duty to defend Simplot against McCain's patent infringement claim. In response, Elea filed a Motion to Continue Pursuant to Federal Rule of Civil Procedure 56(d) asking the Court to either deny Simplot's motions outright, or, alternatively, hold the Motions in abeyance until after the close of discovery. Dkt. 219.Notably, Elea asserted that the resolution of the pending Motion to Compel, as well as

other outstanding discovery, could be probative of issues at bar in the Motions for Summary Judgment. Oddly, however, despite arguing more discovery was necessary to respond to Simplot's Motions, Elea also filed responsive briefs. Dkts. 221, 222. Simplot opposed the Motion to Continue. Dkt. 240. The briefing on the Motions for Summary Judgment and the Motion to Continue concluded in March 2021.

Finally, the Court notes the parties recently extended the discovery deadlines in this case. Dkt. 234. Fact discovery closes in approximately one month—on April 30, 2021— and the dispositive motion deadline is currently set for October 1, 2021.

### III. ANALYSIS

Before turning to the pending motions, the Court begins with two thoughts.

First, as evident from the Court's recitation of the filings over the past year, some of the pending motions are related to each other. Additionally, it appears the resolution of the first motion (McCain and Elea's Motion to Compel) will impact the later filed motions. This overlap, coupled with the time it has taken the Court to address these Motions, creates some problems in itself. For example, one of Simplot's main points in opposition to McCain and Elea's Motion to Compel is that numerous depositions had (at that time) yet to be taken and that those depositions might resolve some of the issues raised in the Motion to Compel. The Court knows from subsequent briefing that many of those depositions have, in fact, now occurred; it does not know, however, whether the posture of the original Motion to Compel has changed in light of this continued (and still ongoing) discovery. These changed circumstances certainly play a role in the Court's decision today, but it strives to address the motions as filed to best analyze the underlying legal concepts and

MEMORANDUM DECISION AND ORDER - 5

relevant arguments.

Second, scattered throughout the briefing are references to timing and how one party or another has not been diligent. The parties have been kind in not directing any ire at the Court; however, the reality is that the judicial resources in the District of Idaho make some delay largely unavoidable. On top of that, the global COVID-19 pandemic has brought challenges of its own—to timing, resources, and the ongoing disposition of this, and many other, cases. The Court mentions timing for two reasons. First, the Court does not wish to delay discovery any longer. The swift resolution of the pending motions will ensure the continued progression of this case. Second—and in order to accomplish its first goal—the Court's decision today will be somewhat lighter on analysis than prior decisions. The currently pending motions—not including the motions to seal, motions for extensions, and/or the redacted copies of the same—consist of over 400 pages of briefing and over 3,700 pages of supporting materials. The Court appreciates Counsels' attention to detail and zealous advocacy; each does his or her client a great service. That said, attaching hundreds (or thousands) of pages of materials to a given brief, when a few relevant pages would likely do, is largely ineffective and unnecessary.

The Court has reviewed all the materials that are relevant to its decision today, but it will not address every fact, nor analyze every argument, raised in the over 4,000 pages of materials. Doing so would take additional time and only delay matters longer. To be sure, the Court will discuss its rational as to the decisions reached; however, the motions at issue today are almost exclusively discovery motions over which the Court has great latitude. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (setting forth

standard of review and explaining that district courts have "wide discretion in controlling discovery"). Quick action is necessary here to avoid further delay.

### A. Motion to Compel (Dkt. 165)

*1. Background*

While patent infringement (as a whole) is the core dispute of this lawsuit, a large component of that dispute is whether Simplot *willfully* infringed the '540 patent— assuming infringement occurred at all. McCain and Elea believe that Simplot is withholding documents—including email communications—from them that relate to its "understanding" of the '540 patent. Specifically, McCain and Elea believe that Simplot is withholding communications with DIL and/or Elea that discuss *when* Simplot knew about the '540 patent, *what* it knew about the '540 patent, and *who* (at Simplot) had this knowledge. These types of documents could prove important because what Simplot knew and/or understood about the '540 patent before it purchased the PEF machines could be relevant to the concept of willfulness. McCain and Elea contend Simplot has been selective in the information it has chosen to share on this topic and that they should get to see "**all** of Simplot's communications about the '540 patent." Dkt. 165, at 5 (emphasis added).

In addition, McCain and Elea claim that Simplot originally withheld some of these communications under the attorney-client privilege or the common interest privilege but that it has since waived these privileges (by producing and relying on some of the documents it claimed as privileged in its own briefing) and must, therefore, turn **everything** over. Elea sums up this position well:

Simplot's selective disclosure of its correspondence with DIL and the Third-

Party Defendants—correspondence that Simplot previously withheld as attorney-client privileged—and Simplot's asserted reliance on the advice it received from DIL and/or Elea as support for its claims and defenses constitute a waiver of privilege. This waiver extends to **all** documents and communications that relate to the '540 patent. Accordingly, Simplot should be compelled to produce **all** documents and communications that relate to the '540 patent.

Dkt. 173, at 5 (emphasis added).

For its part, Simplot argues that it has not withheld any information, has not waived any privilege, and that McCain and Elea are simply trying to bully it into disclosing privileged materials and/or force it to incur more discovery expenses.

   2. *Legal Standard*

Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.* A party may move for an order compelling a discovery response pursuant to Federal Rule of Civil Procedure 37(a)(3)(B).

Under Federal Rule of Civil Procedure 37, a party may move to compel discovery responses if, among other things, an opposing party fails to answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). "While the moving party must make a threshold showing of relevance . . . the party resisting discovery carries the 'heavy burden' of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper." *Strojnik v. Block 22 LLC*, No. 1:18-cv-00556-BLW, 2019 WL 6315523, at *2 (D. Idaho Nov. 25, 2019) (internal citation omitted)**.**

### 3. *Analysis*

The Court has multiple concerns with this dispute which make its decision on the Motion to Compel all the more challenging.

First, the Court is concerned with Simplot's calculated response to McCain's allegations that it has withheld information. In replying to this assertion, Simplot reviews the ESI process it went through in this case, explains how it used the exact search terms McCain wanted, and then affirms that it has not withheld any "*responsive* emails." Dkt. 175, at 6 (emphasis added). Simplot goes on to claim that even if certain documents existed, they "were not captured by McCain's *choice* of keywords/custodians." *Id.* at 9 (emphasis added).[2] To be sure, it is not Simplot's job to craft ESI keywords or designate custodians for McCain. Nevertheless, to essentially hide behind McCain's choice in keywords appears to indicate there *are* responsive documents out there, but that Simplot won't turn them over because McCain didn't pick precise enough search words. This concerns the Court.

Second, the Court is quite concerned with McCain and Elea's position that because Simplot might have waived its previously-claimed privileges as to certain documents and/or certain topics, it has wholesale waived any and all claims to protect any and all documents related to Simplot's understanding of the '540 patent. Such an assertion seems far too broad. *See e.g., Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th

---

[2] A specific example of this problem is ESI related to Simplot's Chief IP Counsel, Dr. Vid Mohan-Ram. In its opposition to the Third-Party Defendants' Motion to Sever, Simplot relied on certain communications between Dr. Mohan-Ram and others which had not been produced to McCain previously. *See generally* Dkt. 145. Simplot claims there is no error here because McCain never designated Dr. Mohan-Ram as a custodian nor provided Simplot with keywords for searching his emails. Although this appears to be accurate, and the Court is not implying Simplot did anything inherently wrong, it also illustrates the Court's concern that there may have been some gamesmanship during this process.

Cir. 1981) (if waiver occurs, it applies "only [] to communications about the matter actually disclosed").

To begin, the whole concept of waiver here is suspect. McCain and Elea argue that because Simplot originally claimed various aspects of its analyses of the '540 patent were protected from discovery—specifically that any of its communications with DIL, Elea, and/or Food Physics were protected by the attorney-client privilege, the common interest privilege, and the work-product privilege—but then disclosed certain emails in subsequent briefing against Elea, it abandoned and waived that privilege. This assertion, however, is not exactly accurate. It appears that Simplot actually produced the emails in question during its original ESI discovery period with McCain. That Simplot took a position in an answer to an interrogatory (that certain information might be held back) but then later disclosed some information (that arguably might have fallen in that category) does not implicate a blanket waiver of its previously asserted privilege. Critically, Simplot *never actually designated* such materials as privileged.

The Court must digress briefly to discuss these emails themselves. While not the exclusive basis for either party's argument, all cite to an email exchange that has, somewhat surprisingly, taken on an expansive role in this case. In short, these emails were between a Simplot-Australia employee (Franca Curulli) and two DIL/Elea employees (Stefan Töpfl[3] and Nick Speakman) and took place prior to Simplot's purchase of the PEF systems from

---

[3] This individual's name is sometimes spelled Toepfl or simply Topfl (i.e. the same as the German spelling but without the umlaut/diaeresis) in some English documents. For simplicity, the Court will simply use "Topfl."

Elea. In relevant part, Curulli discusses PEF technology, various patents around the globe that might affect this technology, and opines on the validity of the '540 patent. In addition, Curulli mentions talking to a patent attorney and that he or she (the patent attorney) confirmed her (Curulli's) understanding of the current state of any applicable patents and whether or not the use of the PEF machines would constitute infringement.

McCain and Elea both argue that Simplot's decision to produce these emails *after* claiming various privileges on the subject matter is a waiver of those privileges. Again, it is hard to accept the idea that waiver occurred here when no claim was ever made concerning these specific emails. Although the Court understands McCain and Elea's argument that Simplot's decision to turn over these emails (even though they were never designated as privileged) implies they are abandoning their prior position, this is difficult to stomach.

First, a party could claim a privilege early on in discovery, but then walk that back and/or modify it once it actually began reviewing the materials to be produced.[4] Additionally, it is not hard to imagine that Simplot viewed these communications differently than those it specifically designated as privileged (even though they arguably are similar).[5] After all, the party asserting the privilege is in the best position to know whether something should be protected or not.

---

[4] The Court is not implying that happened in this case. It is simply saying that as discovery occurs, a party's position could change one way or another.

[5] Again, the Court is not implying that Simplot *hasn't* been selective to some degree in its production. However, it goes without saying that the discovery and production process is precisely that: a selective process of deciding which documents are relevant, which are not, and which fall under any applicable privilege. Selectivity is, therefore, part of the process itself.

MEMORANDUM DECISION AND ORDER - 11

Second, the Court has trouble specifically accepting that the attorney-client privilege has been waived in this instance because none of the individuals here—Curulli, Topfl, and Speakman—are attorneys. So, even if another privilege had been waived (which again, is suspect), the Court is not comfortable with the idea that such would open the doors to the entirety of communications within the Simplot company and encompass each and every document related to the '540 patent—particularly any authored by Simplot's in-house attorneys and presumably protected under the attorney-client privilege.

McCain and Elea are correct that *sometimes* a party waives its privilege to whole swaths of material because of actions it has taken. Again though, it does not appear that Simplot's actions here have risen to that level. What's more, such considerations must be balanced with the reality that allowing unfettered access to a party's state of mind in an infringement action (which would apply to most, if not all, infringement cases) would essentially eviscerate in-house counsel's ability to candidly advise his or her client (employer) on such matters. Such an approach does not sit well with the Court. A party should be able to present a defense to an accusation of willful infringement *without* exposing itself to intrusive discovery. *See Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 1366037, at *2 (N.D. Cal. Apr. 3, 2013) (accused infringer "does not waive attorney-client privilege merely by denying that it acted willfully").

The above aside, the Court's third concern is prejudice to McCain and Elea. McCain and Elea argue that Simplot should not be allowed to use favorable information as a sword while simultaneously shielding unfavorable information under the guise of privilege. The Court agrees. However, it appears that McCain and Elea already have access to some of

this information. Additionally, at the time the Motion to Compel was filed, Elea had yet to respond to Simplot's discovery requests and numerous key depositions had not yet been taken. In subsequent briefing, it has become clear that McCain and Elea have been able to explore these topics in greater detail.[6]

The Court has another concern related to prejudice: Simplot repeatedly states that McCain and Elea miss the mark because it has not disclosed any opinions of counsel as a defense to willful infringement and has no intention of doing so. With this argument, Simplot itself misses the mark. Regardless of whether Simplot puts forth an official advice-of-counsel defense, the discovery McCain and Elea seek could nevertheless support their claim that Simplot knew of the '540 patent before it purchased the PEF machines. What's more, it appears some of the information Simplot may rely upon came from attorneys within Simplot itself. Thus, while Simplot may not be claiming an official "advice-of-counsel" defense, it, nonetheless, appears to be utilizing some statements of counsel in this case. Again, the Court is not implying malfeasance. But, Simplot is walking a fine line between what it discloses to aid its case against Elea and whether McCain (and Elea) can dig into those issues further in their cases against Simplot.[7]

---

[6] In later briefing, Simplot confirms that the parties have engaged in discovery on these topics. McCain and Elea are quick to note, however, that ofttimes Simplot instructed its witnesses not to answer questions that appeared to lead down this path. Thus, the Court does not know what, if anything, was actually gleaned from the discovery into these topics.

[7] The Court previously allowed Simplot to interplead Third-Party Defendants in this case—as opposed to filing a separate lawsuit—so as to avoid conflicting results and to promote judicial economy. While the Court stands by its ruling, it has already noted some delicate matters that might arise as a result of its decision—such as the awkward position Elea might find itself in during trial (if trial is not held in phases).

Furthermore, it is not the lack of an advice-of-counsel defense that convinces the Court the information sought should remain secure, but the fact that many of the communications appear to involve attorneys within Simplot[8] and would thus fall under the attorney-client privilege.[9] That aside, Simplot's affirmative renunciation of any advice-of-counsel defense does weigh slightly in its favor on this issue. *See e.g., Postx Corp. v. Secure Data in Motion, Inc*., 2004 WL 2663518, at *5 (N.D. Cal. Nov. 20, 2004) (by disavowing intent to use advice of counsel as a defense, plaintiff "is not using the attorney-client privilege as a sword, [and therefore] it has not relinquished its use as a shield").

Finally, the Court is concerned with the speculative nature of McCain and Elea's request. Pursuant to Federal Rule of Civil Procedure 26, the Court typically allows very broad discovery. *See e.g., Rafferty v. Keypoint Gov't Sols., Inc*., No. 4:16-CV-00210-DCN, 2018 WL 3059600, at *4 ("[P]re-trial discovery is ordinarily 'accorded a broad and liberal

---

It appears that another downside of that decision is the potential overlap in discovery. As noted, Simplot did not produce (and/or preserved on its privilege log) certain discovery in its case against McCain. Such appears to have been appropriate. That said, Simplot then needed some of the same discovery in its battle against Elea. Were these cases separate, this issue might not have arisen at all. Regardless, Simplot preferred to run these cases concurrent (and the Court agreed) and it must deal with the consequences—good or bad.

[8] Not to put too fine a point on it, but the Court is mainly talking about Dr. Mohan-Ram. McCain and Elea assert that while Dr. Mohan-Ram is in-house counsel, he nevertheless must turn over his communications regarding the '540 patent because Simplot has claimed it did "due diligence" before purchasing the PEF systems. In order to evaluate and analyze this due diligence, McCain and Elea seek to discover Dr. Mohan-Ram's communications (with others and within Simplot itself). McCain and Elea have a reasonable point, and the Court does not make this decision lightly, but Dr. Mohan-Ram's position as in-house counsel (and the inherent attorney-client nature of that position) must be afforded proper consideration.

[9] Again, however, the Court will not allow Simplot to hide behind the attorney-client privilege for documents that are unfavorable to its position and watch as it only produces favorable things. If it appears this is the case, the Court will reconsider this decision. Although, by all accounts, Simplot has already disclosed things that are (arguably) not favorable to its position, thus the Court hopes this concern will not come to fruition.

treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth" (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). That said, McCain's "*belie[f]* there are additional materials . . . that are relevant but have not been produced" (Dkt. 165, at 4), is insufficient to support a finding that the parties should reengage in expansive ESI discovery.[10]

Weighing all the competing interests, the Court finds that it is not clear Simplot has waived any privileges. Even assuming arguendo that Simplot did waive formerly asserted privileges as to certain documents and conversations, such was not a wholesale waiver to everything related to the '540 patent. And again, even assuming for the sake of argument Simplot waived a privilege, it *did not* waive the attorney-client privilege. The Court will not grant the Motion to Compel based on Simplot's purported waiver.

The above aside, the Court will likewise not allow Simplot any unfair advantage in this case. Substantial discovery has occurred since the filing of this motion. Should McCain or Elea be able to point to a specific document it believes Simplot failed to procedure or that it impermissibly placed on its privilege log, it may do so, and the Court will take that up in due course. Additionally, the Court will not allow Simplot to proceed with any theory at trial upon which McCain and Elea were not given a fair opportunity to conduct discovery.

In short, the Court DENIES McCain and Elea's motions without prejudice and

---

[10] Not to contradict its conclusion that the request is speculative, but the Court must point out that McCain and Elea have been able to cite to discovery *already produced* on these topics. This illustrates they *have* been able to delve into these issues (at least in small part) already. The Court can also only assume that in the intervening eleven months, more information has come to light. Thus, it appears McCain and Elea can already make the argument they intend to make; albeit with less evidence than they would like.

subject to refiling if there have been any material changes (due to discovery) since the Motions were originally filed.

### B. Motion to Amend/Correct (Dkt. 193)

#### 1. Background

On August 28, 2020, Simplot filed a Motion for Leave to Amend its Third-Party Complaint. Dkt. 193. In this Motion, Simplot argues that the Court should allow interpleader at this stage because it appears DIL—the manufacturer of the accused PEF systems—is already intertwined with the other Third-Party Defendants. Simplot argues that DIL and/or Elea are alter egos of each other and, therefore, DIL is jointly and severally liable for Elea's purported contractual breach in this case. In Simplot's estimation, "DIL belongs in this case as much as Elea and Food Physics." Dkt. 194, at 8.

Elea strongly opposes the motion. In its opposition, Elea thoroughly discusses each of Simplot's proposed claims against DIL and explains why they would be subject to dismissal, judgment on the pleadings, and/or would never otherwise make it to trial. Simplot responded in kind. As will be discussed below, however, the Court finds it extremely difficult to opine on the validity of any of Simplot's proposed claims at this stage when little to no discovery with DIL has been performed. Moreover, while the underlying validity of the proposed claims *could* play into the Court's analysis on interpleader, that concept is not one of the things the Court must consider today. Today, the question is whether interpleader is appropriate. Upon review, the Court finds it is not—at this time.

#### 2. Legal Standard

Federal Rule of Civil Procedure 14 allows a defendant to "serve a summons and

MEMORANDUM DECISION AND ORDER - 16

complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). The purpose of impleader is to "promote judicial efficiency by avoiding separate actions against third parties who may be liable to defendant for part or all of [a] plaintiff's original claim." *Whitt v. Papa Murphy's Int'l, LLC*, No. 1:18-CV-00231-BLW, 2018 WL 6310265, at *1 (D. Idaho Dec. 3, 2018) (cleaned up).

"The decision whether to implead a third-party defendant is addressed to the sound discretion of the trial court." *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). In deciding whether to grant leave to file a third-party complaint, courts have considered a number of factors, including: (1) timeliness of the motion; (2) whether impleader would delay or unduly complicate the trial; (3) prejudice to the third party; and (4) prejudice to the original plaintiff.

3. *Analysis*

The Court has two concerns. First, the appropriateness of the request, and second the timing of the request.

First, the Court is not ready to delve into whether or not Simplot's claims against DIL would survive an early motion to dismiss because it is not sure DIL is necessary in the first instance. By all accounts, it appears DIL is a non-profit organization devoted to food research with no commercial objective. Simplot claims that while this may well be the case, DIL also might have created Elea as its alter ego *to pursue commercial purposes* and thus, DIL should be brought into this case. The Court finds these assertions to be too attenuated at this stage. While it appears DIL does hold a stake in Elea, Simplot does not know what that stake is, and is not certain of the nature of these two entities' relationship. Additionally,

it appears the structure of the relationship might be similar to that of a limited liability company in the United States—i.e. it was set up to *avoid* liability—thus DIL's inclusion might be unnecessary to effectuate relief and/or might be legally impossible under German law.

The Court realizes Simplot does not know what it does not know and, therefore, cannot piece together the full picture until it does. That said, interpleader is not necessarily the best route to accomplish this goal. Ofttimes, the Court will allow some limited discovery to flesh out jurisdictional questions or a party's role in a case. In this case, such limited discovery will take the form of Simplot's Letters of Request. Now, a question may arise as to why not just let DIL into the case, do the discover the Court is suggesting and *then* (if the discovery fails to support Simplot's theory) let DIL out of the case. This brings the Court to its second concern: timing.

Not only is it unclear that DIL will be a necessary party in this case at all, it is also not clear they are a necessary party *at this point*. Infringement has not been established; neither has indemnification. The Court has taken a broad approach to discovery in this case. Against McCain's wishes, the Court allowed Simplot to interplead Elea. Then, against Elea's wishes, it denied a stay of discovery of the third-party claims and required that all claims and all parties engage in discovery. The Court did both with an eye towards judicial economy.[11] That said, at this point, judicial economy dictates that the case press forward. Once some of these critical questions have been answered, the Court *might* allow Simplot

---

[11] The Court also did this because, critically, *Simplot and Elea are parties to a contract*. Elea's inclusion in this suit was, therefore, not as difficulty a question. No such contract exists between Simplot and DIL.

to interplead DIL. For example, *if* some limited discovery clearly shows that DIL needs to be a party to this case *now,* the Court might interplead them. The Court may, however, wait until indemnification has been determined. The outcome of that decision will, obviously, affect any claims (or potential claims) against DIL. In like manner, the Court may even wait until infringement has been decided to determine whether to allow DIL into this case. Again, while the Court has thus far managed the case in an effort to be as economical as possible, at some point, the "first phase" (of infringement) needs to be decided.

The Court recognizes that its decision today *does not* solve Simplot's concern that Elea (and/or DIL) should be indemnifying it *now* and paying its ongoing legal fees. However, that is something, too, that the Court can address at a later date. All parties are keeping accurate records of expenses incurred (including reasonable attorneys' fees). It will not be difficult to calculate a raw reimbursement should that become necessary.

Also, the Court is aware of a recent discovery dispute between Simplot and Elea concerning Simplot's desire to discover some of Elea's financial information—including potentially DIL's interest. The Court's law clerk has indicated that dispute hinges, in part, on the resolution of this Motion to Interplead. Without the benefit of full briefing on the financial disclosure issue the Court will not opine substantially on further discovery at this time. Suffice it to say, once the limited discovery has occurred, it *might* be appropriate for Simplot to renew its request for such financial discovery. At that time (assuming discovery fleshes out things the way Simplot hopes they will) the Court would likely see more utility in granting such a request.

In sum, the Court has weighed and balanced the various interests here. It finds that

MEMORANDUM DECISION AND ORDER - 19

Simplot was not dilatory in bringing its motion. Nor does it find that interpleading DIL would unduly complicate trial. The Court does, however, find there might be some minor delay were it to interplead DIL at this point. Also, while McCain did not file anything in response to Simplot's Motion, it (as an original Plaintiff)[12] may suffer some prejudice were the Court to interplead DIL. In short, the Court finds that it is not appropriate *at this time* to grant Simplot's Motion to Amend/Correct. The Court's denial will be without prejudice and subject to refiling. Should the limited discovery the Court allows produce information that supports Simplot's Motion, it can re-notice it up at that time.

### C. Motion for Issuance of Letters of Request (Dkt. 198)

#### 1. *Background*

On September 30, 2020, Simplot filed its Motion for Issuance of Letters of Request to the Central Authority of Germany. Dkt. 198. In its motion, Simplot asks the Court to issue Letters of Request ("Letters") to DIL, Stefan Topfl, Volker Heinz, and Dietrich Knorr. Dkt. 199, at 2. As mentioned, DIL is a non-profit organization in Germany and appears to me a member of Elea. Topfl is the managing director of Elea and a shareholder. Heinz is the managing director of DIL and the managing director of his family's foundation, which is a member of Elea. Knorr is a former colleague of Topfl's from the Technical University of Berlin.

In Simplot's view, DIL and the aforementioned individuals may be in possession of

---

[12] Not only are there counterclaims in this case raised by McCain, but McCain is the "original Plaintiff" in the consolidated case (Case No. 1-17-cv-00350-DCN). Thus, it would likely be considered the "original Plaintiff" in the interpleader analysis.

knowledge and/or testimony which is necessary in the case. In addition, if the Court denies its Motion to Amend (which it has), Simplot argues it will have no other way to reach out to DIL or these individuals to see what, if anything, they can contribute to this case. For these reasons, it believes the Court should issues the Letters. Simplot has supplied the Court with proposed Letters for each entity/individual, as well as a list of requests for production and a list of deposition topics. Dkts. 198-1–198-12.

Elea opposes the Motions for numerous reasons.[13] First, it asserts the Letters might not even be accepted by Germany based on the Country's laws. Second, it believes the requests are unnecessary and duplicative of information it has provided (or will yet provide) Simplot. And third, it believes the requests are overbroad and unduly burdensome.

### 2. Legal Standard

The Hague Convention affords U.S. litigants an opportunity to seek international judicial assistance to take discovery in foreign jurisdictions. 23 U.S.T. 2555, T.I.A.S. No. 7444, art. 1. *See also, Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa,* 482 U.S. 522, 546 (1987). Under the Hague Convention, a party can ask a U.S. Court to issue a letter of request that the Court will then transmit to a foreign judicial authority, through a diplomatic or counselor agent, or by a private commissioner appointed by the foreign state, to elicit discovery of foreign third parties. This Court is authorized to issue letters of request and to transmit letters of request directly to Germany under Rule 28

---

[13] It appears that when Simplot first approached Elea about some of this discovery, Elea told Simplot it would need to pursue such through Federal Rule of Civil Procedure 45 and/or the Hague Convention. However, now that Simplot has done so, Elea objects.

of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2).

"A court should determine both whether the discovery sought falls within the scope of discovery authorized by the Federal Rules, as well as whether considerations of comity warrant the requested discovery." *Id.* (citation omitted). The United States Supreme Court has identified a five-factor comity analysis for courts to consider when determining whether to grant a request for issuance of letters rogatory. *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 12061801, at *4 (S.D. Cal. Jan. 14, 2013). As identified by the Supreme Court, the comity factors are:

> (1) The importance to the . . . litigation of the documents or other information requested;
> (2) The degree of specificity of the request;
> (3) Whether the information originated in the United States;
> (4) The availability of alternative means of securing the information;
> (5) The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Societe Nationale Industrielle Aerospatiale,* 482 U.S. 522, at n. 28.

*3. Analysis*

First, the Court notes its concern that the German government *may not* accept its Letters.[14] Further, even if accepted, the Letters might not yield fruit—because compliance is not compulsory and/or the recipients may themselves raise objections. That said, the Court will not know until Simplot tries.

---

[14] In truth, the Court had a similar concern with the prior Letters it issued to individuals and entities in France. Those Letters, however, were accepted and processed by French authorities. The Court can only hope a similar outcome occurs here.

Second, the Court does not believe there will be any extensive delays in issuing the Letters because discovery *will remain ongoing* in the United States. While it is likely the Letters will not be issued, served, and/or responded to by the close of fact discovery, the parties will then engage in expert discovery for many months. If these issues linger into expert discovery, the Court can deal with any subsequent matters that may arise. In fact, the parties already contemplate as much. Dkt. 234, at 2 n.1.

Third, it does appear that *some* of the information sought could be relevant to this case. As the Court previously discussed, while it "does not wish to burden non-parties— particularly foreign non-parties—[it] must provide the parties [in this case] with a fair and reasonable opportunity" to conduct discovery. Dkt. 157, at 32. As noted, the Court will allow Simplot to engage in some limited discovery to flesh out the relationship between DIL and Elea in order to determine if it should allow their interpleader.[15]

Lastly, it has been roughly six months since Simplot made this request. Additionally, the request was made in the midst of Elea's discovery production. Some of the questions/requests may now be moot. Thus, the Court will require Simplot to review and confirm the content of the requests before the Court signs them. Simplot can remove anything it wishes; however, it cannot add anything without the Court's express permission. Even then, some of the current requests seem unnecessary on the whole. The

---

[15] Again, an argument could be made that interpleading DIL would be easier as that might "go further" towards receiving the information (because DIL would be a party in the suit) as opposed to a non-obligatory Letter to a non-party. That said, the Court still finds that interpleading DIL is unnecessary at this point. In addition, these matters are purely discretionary and not interpleading DIL will not materially harm Simplot. Nevertheless, the Court does think that some investigation into DIL is necessary— regardless of whether it ultimately interpleads them in the case.

Court will address each proposed recipient in turn:

a. <u>DIL</u>

The Court will allow the requests for production attached to DIL's Letter to proceed at this point, but not the deposition topics. To be sure, Simplot can have that document translated into German and "on-deck," but it shall hold it back until the Court determines the level of activity DIL will have in this case. There is no need for DIL to prepare for a deposition that may or may not occur. The requests for production should yield sufficient information for Simplot (and eventually the Court) to determine DIL's involvement—if any.[16]

b. <u>Topfl</u>

First, while it appears Elea did not initial wish to produce Topfl for deposition, they have since stated he is "subject to deposition in this case" due to his position as managing director of Elea. Dkt. 201, at 3. And in fact, Topfl's deposition is currently scheduled for some time in April 2021. Topfl's deposition—which is, arguably, one of the most important depositions that will take place in this case—could negate the need for a separate Letter to Topfl altogether.[17] Presumably in preparation for this deposition, Simplot has propounded on Elea and Topfl similar questions, requests, and topics of discussion as those listed in its Letter. To that end, the Court will not issue a Letter to Topfl at this time. Simplot

---

[16] To be sure, the deposition topics largely mirror the requests for production and the delivery of the deposition topics in itself does not mean a deposition will actually occur; however, the Court wishes to take these discovery matters one step at a time.

[17] Frankly, Topfl's deposition may negate some of the other requests as well. Assuming Topfl's deposition proves helpful, Simplot should withdraw any unnecessary or duplicative requests from its Letters to the other individuals.

can renew this request after Topfl's deposition should it deem such to be necessary.

   c.  Knorr

        Elea does not object to this request other than to say it might cause delay, extra

costs, and be cumulative of other requests. As the Court has outlined, the delay in this case

will be minimal. Further, the costs will almost exclusively be borne by Simplot, and any

duplicative requests (of materials Elea has already produced) should be fettered out by

Simplot prior to the Court's sending the Letter. In short, the Court will allow the Letter to

Knorr with its attachments.

   d.  Heinz

        While Elea opposes the deposition requests directed at Heinz, it does not oppose

portions of Simplot's requested discovery because they appear to relate (in part) to the

meeting between Simplot and Elea in 2017 where Simplot purportedly represented it would

not seek indemnification from Elea. Similar to its holding regarding DIL, the Court will

allow the request for production to proceed, but not the deposition topics. Should such

ultimately become necessary, the Court will revisit this issue.

        In short, Simplot shall review the current requests, take out any duplicative or

unnecessary requests, and within seven (7) days of the date of this order submit *word copies*

of its Letters to the Court's law clerk for signature. The Court will sign: DIL's Letter (with

the RFPs); Knorr's Letter (with the RFPs and deposition topics); and Heinz's Letter (with

the RFPs). The Court will not allow DIL or Heinz's deposition topics to be transmitted,

nor a Letter to Topfl at this time.

MEMORANDUM DECISION AND ORDER - 25

### D. Motion to Continue (Dkt. 219)

#### 1. Background

On November 30, 2020, Simplot filed two Motions for Partial Summary Judgment—one against Elea (Dkt. 207), and one against Food Physics (Dkt. 209)—which largely mirror each other. In its Motions, Simplot argues the Court should grant partial summary judgment on the issue of indemnity, find that Elea and Food Physics breached their contractual duty to defend Simplot against McCain's patent infringement claim, and enforce Simplot's request that Elea defend Simplot *now*. In response, Elea filed a Motion to Continue Pursuant to Rule 56(d) asking that the Court deny Simplot's motions outright, or alternatively, hold the Motions in abeyance until after the close of discovery. Dkt. 219. Simplot opposes the Motion to Continue. Dkt. 240.

Neither side sought a stay from the Court in regard to the briefing on Simplot's Motions for Summary Judgment. Similarly, neither side sought to expedite the briefing on Elea's Motion to Continue—in fact the briefing deadlines were extended. Dkts. 215, 233. As a result, the Motions overlapped, and the Court did not have the opportunity to rule on the Motion for a Continuance before the conclusion of briefing on the Motions for Summary Judgment. Thus, while a continuance has been sought, briefing has concluded, and the Motions for Summary Judgment are arguably ripe for adjudication. As will be explained, however, the Court does not wish to rule on this critical issue prematurely and will grant the continuance.

#### 2. Legal Standard

When a party opposing a motion for summary judgment cannot present "facts

essential to justify his opposition" to the motion, Rule 56(d) permits the party to submit an affidavit or declaration stating the reasons the party is unable to present the evidence, and the court may continue or deny the motion if the opposing party needs to discover essential facts. The burden is on the party seeking additional discovery pursuant to Rule 56(d) to demonstrate that: (1) the information sought would prevent summary judgment; and (2) the information sought exists. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084 (9th Cir. 2009); *Izaguirre v. Greenwood Motor Lines, Inc.*, No. CIV. 1:10–581 WBS, 2011 WL 5325658 at * 6 (D. Idaho 2011).

Rule 56(d) requires a non-movant to "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Id.*, Fed. R. Civ. P. 56(d). It is critical that the non-moving party explain why he or she cannot oppose the motion via an affidavit or declaration. Explanations that are merely contained in a memorandum are not sufficient. *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir. 1986).

*3. Analysis*

The Court understands Simplot's opposition to Elea's Motion to Continue and its desire to resolve the issue of indemnity as soon as reasonably possible. Nevertheless, the Court is unwilling to do so on what could potentially be an incomplete record. Simplot's point is well taken that Elea's decision to respond to its motions demonstrates, in part, that additional discovery is unnecessary. However, it is clear that ongoing discovery *is* affecting this issue and may continue to do so. In fact, Simplot itself appears to have relied on documents and/or deposition testimony that post-dates its original Motions for Summary

Judgment in rebuffing Elea's Motion to Continue. Thus, while Elea was able to respond at the current juncture to the best of its abilities, it has set forth "by affidavit" the specific reasons  it needs more time and also that the discovery it seeks is available and will likely affect the current dispute. Dkts. 219-2, 247-1. At the time of Elea's filing, numerous depositions that could lead to relevant discovery had not yet been taken. While some of those have now occurred, others are still outstanding. Additionally, this decision itself will shape the ongoing discovery in this case. Supplemental briefing on the Motions for Summary Judgment (from both parties) will be relevant and beneficial to the Court.

Under the circumstances, the most equitable and economical thing to do is wait until the full scope of the matter is available for the Court's review. Anything less could result in subsequent motions and/or the parties incurring more time and expense. Accordingly, the Court will grant the Motion to Continue.[18]

## IV. ORDER

1. McCain's Motion to Compel (Dkt. 165) is DENIED.

2. Elea's joinder (Dkt. 172) is, likewise, DENIED.[19]

3. Simplot's Motion to Amend/Correct (Dkt. 193) is DENIED.[20]

---

[18] As a purely practical matter, the Court notes that it typically holds oral argument on Motions for Summary Judgment. It intends to do so on Simplot's Motions. Due to the Court's calendar, however, even were it to deny the Motion to Continue, it likely would not be able to schedule a hearing for 60-90 days. Thus, the Court likely would have asked for supplementation in light of the ongoing discovery, even if it denied the Motion to Continue.

[19] As noted, the Court's denial of McCain and Elea's Motion to Compel is without prejudice and subject to refiling if intervening discovery has altered the parties' positions.

[20] Also as noted, the Court's denial of Simplot's Motion to Amend is without prejudice subject to refiling at a later date should such become necessarily in light of discovery obtained from the Letters.

4. Simplot's Motion for Issuance of Letters (Dkt. 198) is GRANTED in PART and DENIED in PART as outlined above.[21]

5. Elea's Motion to Continue (Dkt. 219) is GRANTED.

6. Simplot's Motions for Partial Summary Judgment (Dkts. 206, 208) are held in abeyance until discovery is complete. Once discovery concludes (and/or the parties indicate they are prepared to do so) the Court will allow supplemental briefing on the Motions.

7. The various procedural motions (Dkts. 188, 241, 246) are GRANTED.

DATED: April 2, 2021

David C. Nye
Chief U.S. District Court Judge

---

[21] As directed, Simplot shall review the requests and submit updated *word* copies of the relevant documents within seven days of the date of this order. Those can be emailed directly to the Court's law clerk, Bennett Briggs, for processing.