UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>McCAIN FOODS USA, INC.,<br><br>    Defendant.<br>_____<br><br>McCAIN FOODS LIMITED,<br><br>    Plaintiff,<br><br>    v.<br><br>J.R. SIMPLOT COMPANY,<br><br>    Defendant.<br>_____<br><br>J.R. SIMPLOT COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ELEA VERTRIEBS-UND-<br>VERMARKTUNGSGESELLSCHAFT,<br>MBH; FOOD PHYSICS LLC,<br><br>    Third-Party Defendants. | Case No. 1:16-cv-00449-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is McCain Foods Limited and McCain Foods USA, Inc.'s

("McCain") Motion to Amend/Correct Infringement Contentions (Dkt. 306) and J.R. Simplot Company's ("Simplot") Motion to Amend/Correct (Dkt. 308).[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS both Motions.

## II. ANALYSIS

### A. McCain's Motion to Amend/Correct Infringement Contentions (Dkt. 306)

#### 1. Background

McCain brings the instant motion to amend its infringement contentions to "align and conform . . . with the evidence produced during discovery and the opinions offered by [the parties'] experts." Dkt. 306-1, at 2. Notably, McCain "does not think this amendment is necessary," but "brings [it] in an abundance of caution to streamline issues . . . and avoid needless disputes about the scope of expert opinions proffered in this case." *Id.*

McCain argues that, from the outset of this litigation, the parties have engaged in discovery based upon the understanding that McCain has accused Simplot of: (1) infringing McCain's U.S. Patent Number 6,821,540 ("the '540 Patent") via Simplot's PEFed potato

---

[1] In conjunction with these motions and the subsequent briefing, the parties filed various Motions to Seal. Dkts. 305, 312, 318. The parties correctly filed redacted copies of the submissions for the public record. None of the Motions to Seal are opposed. Good cause appearing, the motions are GRANTED and the designated documents shall remain under seal.

products processed in the United States, or processed in Canada and imported for sale into the United States; and (2) infringing McCain's U.S. Design Patent Number D720,916 ("the '916 patent") with Simplot's SIDEWINDERS products.

Recently, Simplot's damages expert, Ryan Sullivan, suggested in his expert report (filed on the final day of expert discovery) that Simplot's products PEFed in Canada and imported for sale in the United States, as well as nine SIDEWINDERS SKUs,[2] should be *excluded* from the damages' calculation.

In light of this expert opinion, and to avoid any misunderstanding as the parties prepare their cases for trial, McCain seeks to amend its invalidity contentions to explicitly reference the Canadian PEFed products and the other nine SKUs.

In its response to McCain's motion, Simplot states that although it reserves the right to challenge the admissibility of the SKUs at a later time, it does not oppose McCain's Motion to Amend with respect to the addition of the nine SKUs. Accordingly, McCain's Motion is GRANTED to that extent. Simplot does, however, oppose McCain's request that it be allowed to amend its infringement contentions to reference PEFed products produced in its Canadian facility and imported for sale in the United States.

### 2.  *Legal Standard*

Idaho's Local Patent Rules allow a party to amend its infringement contentions only by order of the Court upon a timely showing of good cause. *See* DIST. IDAHO LOC. PATENT R. 3.7.

---

[2] SKU stands for "stock-keeping unit"—more commonly referred to as a "bar code"—and is printed on product labels of most items marked for retail sale.

Good cause to amend turns on: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would be prejudiced if leave to amend were granted. *Barco N.V. v. Tech. Props. Ltd.*, No. 5:08-cv-05398 JF/HRL, 2011 WL 3957390, at *1 (N.D. Cal. Sept. 7, 2011). The party seeking leave to amend bears the burden of establishing diligence. *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *1 (N.D. Cal. 2014) (citation omitted). If the moving party was not diligent, there is "no need to consider the question of prejudice." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006).

   *3. Analysis*

Simplot begins by noting that McCain's original infringement contentions—served on November 7, 2017—explained it was seeking to protect its PEFed technology from Simplot's use "in its United States plants" without any mention of products produced in Canada and imported for sale in the United States. Dkt. 311-2, at 5. Simplot argues McCain's addition of this "new theory" is impermissible at this stage and that it will be prejudiced should the court allow amendment. In support, Simplot raises arguments regarding diligence and prejudice under the local patent rule.

The Court does not mean to summarily discount Simplot's diligence or prejudice arguments. Nevertheless, the Court's primary concerns are: (1) whether this is an impermissible new theory of the case, and/or (2) whether this amendment is even necessary in the first place. To be sure, Simplot addresses these concerns against the backdrop of the local rule, but the Court is not as persuaded by arguments of diligence when the issue seems to have arisen on literally the last day of expert discovery and McCain diligently filed the

instant motion two weeks thereafter. The Court does have concerns about prejudice, but, again, whether couched under the official prejudice umbrella or not, the Court is mostly concerned about the integrity of the pleadings and whether this is a new theory being asserted on the eve of summary judgment.

a. New Theory

In its original infringement contentions, McCain stated that Simplot infringed the '540 patent under 35 U.S.C. § 271(a). Dkt. 311-2, at 4. Section 271(a) outlines that:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

As part of its infringement contentions, McCain reserved the right to amend its pleadings under subsections (b) and (c), but never referenced subsection (g). Dkt. 311-2, at 4. Subsections (b) and (c) are irrelevant for today's purposes, but subsection (g)—the "new" subsection McCain seeks to reference—outlines that:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

35 U.S.C. § 271(g).

McCain first argues that while it cites a new subsection in support of infringement, it is not introducing a new legal theory of the case and the inclusion of subsection (g) will not affect anything that has already occurred or will yet occur. Simplot counters that "infringement liability under [Section 271(g)] is distinct" and allowing amendment now

would cause prejudice. Dkt. 311, at 14 (citing *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1359–60 (Fed. Cir. 2019), *cert. denied,* 141 S. Ct. 236 (2020)). In response, McCain highlights that, in the case cited by Simplot (*Syngenta*), that court was faced with a vastly different situation than the one present here and, furthermore, that it "did not hold Section 271(g) is a separate infringement theory from Section 271(a)." Dkt. 317, at 7. This is a somewhat convoluted argument—by both sides. While the *Syngenta* court did not say the theories are different under subsections (a) and (g), it also did not say they are the same. The *Syngenta* court's commentary dealt with liability, noting "infringement *liability* under the two sections is distinct." 944 F.3d at 1360 (emphasis added). McCain argues that the distinction, therefore, is when and how liability attaches, not whether or not there is infringement in the first place. The Court disagrees to a certain extent. The *Syngenta* court noted there are differences between "the act[s]" that give rise to the specific liabilities under subsections (a) and (g), thus indicating that the distinction isn't simply a difference in when liability attaches, but *how* liability is determined. *Id.* Thus, *Syngenta* does not specifically stand for the proposition recited by either party.

To be sure, the two subsections are closely related. This aside, the Court is concerned about allowing McCain to introduce this new subsection at such a late stage in the case—regardless of whether it is considered a new legal theory or not. This cuts against permitting amendment.

However, this brings the Court to McCain's second point which is that, regardless of how the alleged infringement is couched (be it under subsection (a) *or* (g)), *both* parties have been operating under the assumption that the sales into the United States from the

MEMORANDUM DECISION AND ORDER - 6

Canadian plant *were part of this lawsuit* from the outset. For instance, on October 27, 2017, McCain propounded Interrogatory Nos. 8-9 on Simplot asking it to identify all frozen potato and sweet potato products that Simplot has PEFed in the United States *or imported into the United States* which are accused of infringing the '540 patent or the '916 patent. Dkt. 307-1, at 4–6. When Simplot later responded to Interrogatory Nos. 8-9, it produced detailed spreadsheets with data regarding "each Simplot product made in the U.S.," "[e]ach Simplot product made in the U.S. and sold in the U.S.," and "[e]ach Simplot product processed using PEF technology *and imported into the U.S. for sale*". Dkt. 307-1, at 4–5 (emphasis added).

Additionally, McCain propounded Interrogatory No. 10 asking Simplot to identify the locations of the PEF systems used by Simplot to process its potato products, and Simplot disclosed that it had installed a PEF system in Portage la Prairie, Canada, to process potato products that "have been imported for sale in the U.S." *Id.* at 9.

Similarly, when Simplot was asked in Interrogatory No. 26 to identify products "sold by Simplot in the United States that Simplot has processed using the accused pulse electric field ("PEF") technology," Simplot produced documents providing information for "each Simplot product processed using PEF technology and *imported* into the U.S. for sale." Dkt. 307-2, at 4 (emphasis added).

In response, Simplot argues that "only a handful of interrogatories were directed to Simplot's alleged importation of PEFed products," (Dkt. 311, at 6) as if that diminishes their significance. While the number of interrogatories may not have been great, Simplot responded to the interrogatories by providing information regarding those products that

were "imported into the U.S. for sale." Dkt. 307-1, at 5. Simplot contends that even if its responses "admitted" something, McCain served its first Amended Infringement Contentions on Simplot months after Simplot responded to the interrogatories and McCain did not change its theories to include the Canadian plant or the imported products (as a result of Simplot's responses or otherwise). This observation goes both ways.

While McCain did not change anything in subsequent filings, neither did Simplot. In Simplot's second supplemental responses—filed just seven months ago—Simplot retained the language that it was providing information relative to products made in the U.S., but also for "product[s] processed using PEF technology and *imported into the U.S. for sale*." Dkt. 307-2, at 4-5 (emphasis added).[3] Thus, again, it appears both sides were operating under the assumption that the imported products were already included in this case.

The Court has dealt with similar issues in the past. For example, in *Harmon v. City of Pocatello*, the Plaintiff sought to amend her Complaint to identify two defendants that were previously unnamed—listed as "John Does" in the original complaint—because the Defendants sought their dismissal on summary judgment. 431 F. Supp. 3d 1135 (D. Idaho 2020), *aff'd*, 854 F. App'x 850 (9th Cir. 2021). There, the Court held that while it was a bit awkward to amend the complaint so late in the game, "the fact [was], the parties [had]

---

[3] In like manner, Simplot asserts that McCain has known about Simplot's Canada-PEFed products since at least October 2017, when it sued Simplot in Canada. This may be true, but it doesn't necessarily negate McCain's argument now. Again, McCain has been operating under the assumption (regardless of what was going on in the Canadian litigation) that the imported products fell under the umbrella of Section 271(a). Simplot has done nothing in this litigation to dispel that belief. To the contrary, it provided the sales data McCain requested that applied to the Canadian products.

pursued litigation knowing full well that [the specific defendants] played a role in the events," engaged in discovery surrounding the individuals and were "seemingly in sync" as to those Defendants' involvement. *Id*. at 1144. The Court ultimately allowed amendment so that the Complaint reflected the correct scope of the case that, by all accounts, was undisputed by the parties.

Relatedly, the Court recently found that a plaintiff could not move for summary judgment on a claim that was never clearly communicated in their complaint, was not the subject of any discovery, and did not conform with the parties' mutual understand of the issues. In *Kids' Town at the Falls LLC v. City of Rexburg*, the Plaintiff sought summary judgment on its trademark claim as it related to its logo. No. 4:20-CV-00083-DCN, 2021 WL 5217619, at *6 (D. Idaho Nov. 8, 2021). Defendants pointed out that Plaintiff's trademark claim—in the Complaint and as it understood it during discovery—was related to a different trade dress altogether. Defendants explained, and Plaintiff did not dispute, that discovery had focused on the other trade dress—not the logo. The Court ultimately agreed that "nothing within [the Complaint] [] would have alerted [Defendant]" to the "logo" claim and no discovery relative to that claim had occurred. Because the parties understanding of the claim did not revolve around that issue, the Court dismissed that argument and that claim.

The main distinction between the two cases cited and the present disagreement is that those cases dealt with formal complaints and how the parties behaved during discovery. The "behavior during discovery" component is similar here, but arises against

the backdrop of invalidity contentions rather than a formal complaint.[4] Regardless, the parties' behavior (including Simplot's) supports amendment here as both appeared to be in sync regarding the fact that the imported products were at issue.[5]

Thus, while the specific reference to subsection (g) might be considered "new," the parties have been operating under the assumption that McCain's *theory* warranted discovery on these products (at least as far as damages are concerned). Simplot's own expert—the one who brought this issue up in the first place—calculated damages *including* the disputed SKU's and the Canadian imports.

In summary, adding a new statutory reference may not be a whole new theory, but it could complicate matters.[6] This cuts against amendment.[7] Conversely, the parties appear to have been operating under the mutual understanding that the imported sales were part of McCain's infringement contentions. This leans towards allowing amendment to conform with what has already taken place in this case. But this brings the Court to McCain's initial

---

[4] The Court notes that in its official Complaint, McCain alleged Simplot was using its patented PEF technology "in its United States plants to process potato products that are sold in this judicial district and throughout the United States." Case No. 1:17-cv-00350-DCN, Dkt. 1.

[5] Simplot cites *RevoLaze LLC v. J.C. Penney Corp., Inc.*, No. 2:19-CV-00043-JRG, 2020 WL 2220158, at *5 (E.D. Tex. May 6, 2020) for the proposition that "by waiting until the end of discovery to amend its infringement theories, [the Plaintiff] threatens the clear, focused path that both parties were following prior to the instant Motion." The irony, however, is that by all accounts, the "clear, focused path that both parties were following prior to the instant Motion" in the present case was that these specific sales *were* included.

[6] For example, Simplot notes—albeit with little support—that additional discovery might be necessary regarding Simplot's activities in Canada were the Court to allow amendment. This argument is belied by the idea that the issues are not necessarily Simplot's activities in Canada (requiring more discovery), but simply its sale of various products in the U.S (which have already been produced).

[7] That said, this is not a situation where a party is seeking to add an entirely new claim to the lawsuit. The amendment is just for the infringement contentions. McCain has already accused Simplot of infringement. It has already laid out its theory of the case. Adding another subsection (that is closely related to the subsection already listed) is not extreme, nor will it prejudice Simplot.

thought, and the Court's second concern: is this amendment even necessary in the first place?

b. Necessity of Amendment

Again, if the parties have been operating under a certain assumption during the pendency of this litigation, such begs the question: why change anything at all at this stage?

Now, the Court admits that the imported sales from the Canadian PEFed products *might* fit more squarely within subsection (g) of Section 271. That said, the Court cannot say those same sales do not also fit within subsection (a). McCain seems to agree that either subsection supports its infringement contentions. The Court has *not* been asked to make a legal conclusion regarding which subsection the PEFed products McCain seeks to add would actually fall under—nor will it at this time. But, regardless of whether the Court allows amendment, this issue of which section is applicable (and/or whether certain damages fall under any subsection) will likely come up.

The Court has already dealt with a similar conundrum in this case. In a prior decision, the Court had to determine whether foreign sales (from domestically-PEFed) products were discoverable. Dkt. 295, at 16–22. The Court eventually determined this data was discoverable, but as part of its analysis, it also discussed the interplay between an "infringing product" and "infringing use." *Id.* at 18–21. That same issue appears likely to rear its hear in this situation as well—*regardless of amendment.* For example, Simplot asserts the imported sales are not appropriate under subsection (a) (Dkt. 311, at 1), but it also contends that under subsection (g), the sales do not conform with McCain's infringement theory (Dkt. 311, at 13)—specifically the idea that Simplot infringed

MEMORANDUM DECISION AND ORDER - 11

McCain's process, not its products. Thus, the Court may yet have to decide whether these damages are recoverable, but that can be dealt with in Motions in Limine or later. After all, damages (and this entire dispute) only arise if Simplot is found liable.

Lastly, while contending that amendment is not strictly necessary under the circumstances (Dkt. 307, at 2), McCain simultaneously argues that if the Court does not include the Canadian products in the damages' calculation, "Simplot will be permitted to exploit" a loophole in the statute. Dkt. 307, at 9 n.4. This is not entirely true. There is currently co-pending litigation between these parties in Canada. A determination of infringement at the Canadian processing plant (if any) will be dealt with in Canada. Damages will be dealt with there as well. Simplot expresses a related concern that if the Court *includes* the Canadian products as part of the damages' calculation in this case, there could be a double recovery: once in Idaho and once in Canada. McCain points out that such might be appropriate (if, for example, both courts find infringement, each could award damages). Regardless, the Court does not need to concern itself with the Canadian litigation or any prospective damage awards. The Canadian case will be decided in Canada under Canadian law and any overlap (in either jurisdiction) for damages can be dealt with via jury instructions or motions to off-set various awards.

In sum, it is not entirely clear amendment is necessary. In like manner, however, it is also not clear that amendment would cause any real prejudice.

### c. Conclusion

The Court returns to where it began. While McCain's theory of the case has not changed, a citation to a separate (albeit related) statute at this late stage makes the Court

uncomfortable. Nevertheless, the parties have seemingly been operating under the assumption that the Canadian sales were including in this case for many years. Simplot responded to McCain's discovery requests on these matters, it provided the relevant data, and its experts opined on the final calculations. Thus, to conform with the parties' efforts and expectations thus far, the Court finds the request for amendment reasonable.

In addition, the Court does not find that additional discovery is warranted. This matter is fairly narrow—it deals with the calculation of damages, and only a portion of the damages at that. The parties' experts have *both already opined* on these matters. There is no need to delve into substantive questions or discovery related to the processing plant in Canada; such is for the Canadian court. The Court here must solely concern itself—if at all—with the raw data (the damages) that stem from the Canadian PEFed products. Again, these calculations and disagreements only arise if Simplot is found liable.

On that note: if Simplot wants to challenge the damages calculations, that is its prerogative. The Court is not affirmatively finding that the damages at issue here are automatically allowed or automatically disallowed. It concerns itself today solely with amendment. Simplot already raised concerns about foreign sales from domestically-PEFed products in prior discovery disputes and motion practice. While the Court eventually granted McCain's motion to compel, it explicitly held that "whether th[e] data is eventually admissible . . . or [will be] helpful in calculating damages," can be determined "at a later date." Dkt. 295, at 21. Here too, whether the imported sales are *appropriate* in calculating damages is left for later in the case. *Critically*, this issue remains regardless of amendment. Simplot has already indicated its concerns that the sales do not fit under subsection (g), but

MEMORANDUM DECISION AND ORDER - 13

it also already planned to dispute them under subsection (a) (after all, it was Simplot's expert who called the calculations into question in the first place—and before McCain had indicated any intention of amending).[8]

In sum, the Court finds McCain has met its burden under Local Patent Rule 3.7. Its application to amend was timely and good cause exists supporting the amendment. Consistent with Simplot's admission, the Motion is GRANTED as to the nine SKUs. As for the Canadian-PEFed products imported into the United States, the Court finds that because the parties operated under an apparent mutual understanding that such products were already included in this case, amendment to include subsection (g) is appropriate. The Motion is GRANTED in this respect as well.

## B. Simplot's Motion to Amend (Dkt. 308)

### 1. Introduction and Background

Following the close of fact discovery, Simplot informed McCain that it no longer planned on pursuing Count II of its Complaint regarding trade dress infringement and unfair competition. Simplot's justification was that while it still believes Count II is a viable claim, it wants to "simplify the issues for trial and focus on the patent infringement and third-party claims." Dkt. 308-1, at 2. McCain informed Simplot that while abandoning Count II would assuredly streamline matters, it was not comfortable just letting this claim

---

[8] To be sure, Simplot will have to overcome its own conduct in this case (of acting like the sales *were* at issue), but as the Court frequently advises parties, there is a difference between what is discoverable and what is ultimately admissible. Just because the parties engaged in discovery on a certain topic does not automatically mean it can use that discovery before a finder of fact or in support of any contention.

MEMORANDUM DECISION AND ORDER - 14

go after it previously filed a Motion for Summary Judgment on this very claim,[9] and has invested substantial time and money in defending against this claim. McCain stated it would be amenable to dismissing Count II *with prejudice* or via a formal ruling from the Court, but that it would not agree to simple amendment. Simplot would not accept this offer and filed the instant motion.

### 2. Legal Standard

"A party seeking to amend a pleading after the deadline for amendment must satisfy the 'good cause' standard of Rule 16(b) in addition to the more liberal standard for amendment of pleadings under Rule 15(a)." *Pinnacle Great Plains Operating Co., LLC v. Wynn Dewsnup Revocable Tr.*, No. 4:13-CV-00106-EJL-CW, 2015 WL 759003, at *1 (D. Idaho Feb. 23, 2015). Under Rule 16, once a court sets a case schedule, that "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "focus of the [good cause] inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (noting the primary consideration is the "diligence of the party seeking the extension") (citation omitted).

"[I]f there is good cause to modify the case schedule, the 'court should freely give leave [to amend pleadings before trial] when justice so requires.'" *Pinnacle Great Plains Operating Co.*, 2015 WL 759003, at *2 (quoting Fe. R. Civ. P. 15(a)(2)); *see also DCD*

---

[9] McCain previously filed a Motion for Partial Summary Judgment on Simplot's Trade Dress Claim more than four years ago in July of 2017. Dkt. 21. Pursuant to Federal Rule of Civil Procedure 56(d), Simplot urged the Court to wait until discovery could be completed before ruling on the matter. Dkt. 23. The Court ultimately denied McCain's motion without prejudice, finding that the parties needed to "conduct further discovery so that a full and accurate picture can be presented for the Court's determination." Dkt. 30, at 4.

*Programs Limited v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (adhering to the policy that leave to amend should be granted with "extreme liberality"). Accordingly, leave to amend should be "freely given" absent a strong showing of (1) prejudice to the opposing party, (2) bad faith, (3) undue delay, (4) futility, or (5) a repeated failure to cure deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The *Foman* factors are not of equal weight and "the most important factor is whether the amendment would prejudice the opposing party." *Pinnacle Great Plains Operating Co.*, 2015 WL 759003, at *2 (*citing Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973)). The party opposing amendment carries the burden of showing why leave to amend should be denied. *See DCD Programs*, 833 F.2d at 187.[10]

### 3. Analysis

Simplot's motion presents an interesting question. The Court often has parties "abandon," "withdraw," or "dismiss" claims that it views as no longer viable at or near the summary judgment stage of the case (either in briefing or at oral argument). By their nature, most parties (and the Court) treat those situation as "dismissals," not amendment. To further complicate matters, the Court notes that how it has previously resolved such requests does not fit within a singular mold.

For example, in *Kids' Town*, the plaintiff determined—following discovery—that one of its claims did not fit and abandoned it. While Kids' Town originally alleged a

---

[10] The Court notes (and as will be detailed below) that there is some confusion and differing opinions among courts (and parties) on which standard applies when a party seeks "dismissal" of a claim. Simplot seeks amendment via the present motion, but even if it were seeking dismissal, the Ninth Circuit has stated that "Rule 15, not Rule 41, governs the situation when a party dismisses some, but not all, of its claims." *General Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1513 (9th Cir.1995).

copyright infringement claim alongside a trademark claim, it determined that "'[its] interest are adequately and more appropriately protectable under trademark law' and, as a result, it was 'withdraw[ing] [its] claims for copyright infringement.'" 2021 WL 5217619, at *1. In that case, the Court "dismissed"[11] the abandoned claim. *Id*.[12]

In another case, however, the Court affirmatively "granted" summary judgment on the claims the plaintiff no longer wished to pursue. In *Jackson's Buy, Sell, Trade, Inc. v. Giddings*, the Plaintiffs noted in response to Defendants' motion for summary judgment that they would not be opposing the request for summary judgment on their state-law claims. Plaintiffs confirmed as much at the hearing and the Court "grant[ed] Defendants' motion for summary judgment on the [state-law claims]." No. 3:18-CV-00124-DCN, 2019 WL 4777298, at *2 (D. Idaho Sept. 30, 2019).

Other judges in this District have taking similar approaches, hybrid approaches, or no approach at all. *See, e.g., Bias v. Robison*, No. 4:19-CV-00280-REB, 2021 WL 879047, at *13 (D. Idaho Mar. 8, 2021) (noting that plaintiff withdrew a claim in his summary judgment briefs and as a result, that claim was "dismissed . . . as [Defendants] requested in their motion for summary judgment"); *Willnerd v. Sybase, Inc*., No. 1:09-CV-500-BLW, 2011 WL 2710085, at *6 (D. Idaho July 12, 2011) (noting simply that plaintiff withdrew a claim and not addressing it further).

---

[11] The Court did not note whether the dismissal was with or without prejudice.

[12] Similar to McCain's argument today, the Defendant in Kids' Town argued at the summary judgment hearing that it had expended considerable time and energy defending against this claim and that, as a result, it should be allowed to seek fees related to that discovery. The Court noted then—and it will reiterate the same later in this decision—that any questions relative to fees will be taken up at the conclusion of the case.

The Court's purpose in reviewing these cases is to illustrate that when presented with the situation where a party wishes to no longer pursue a particular claim, it has sometimes "dismissed" the claim and sometimes granted "summary judgment" on the claim.[13] Some type of similar resolution is what McCain seeks here. BUT, as Simplot points out, the present situation is distinguishable from the above cases because it is not withdrawing or abandoning its claim, but rather seeking to amend its complaint to formally remove the claim all together. The Court agrees these are two difference approaches; however, any distinction between the two is not entirely clear, nor is that distinction dispositive of the issue today.

For its part, McCain argues that Simplot is playing fast and loose and trying to circumvent summary judgment and an adverse ruling by "amending" its complaint in order to preserve this claim for a later day. The Court is not as convinced.

To be sure, it is somewhat telling that following all the deposition testimony on this matter—which arguably was not favorable to Simplot and its asserted trade dress claim—Simplot filed a petition with the United States Patent and Trademark Office seeking to register the purported trade dress.[14] Also, it bothers the Court that Simplot appears to justify its Motion to Amend by citing the fact that McCain has also filed a Motion to Amend. While it is true that both are "motions to amend," the motions are vastly different. The

---

[13] In light of the cases cited above and below, it appears the best option in these circumstances is to either (1) treat the request to abandon/dismiss a claim as a motion to amend, or (2) affirmatively grant summary judgment on the abandoned/dismissed claim.

[14] Abandoning a claim after unfavorable discovery is not what surprises the Court—after all, such action is appropriate and efficient. The Court's surprise comes from Simplot's seemingly abrupt decision to seek protection for its alleged trade dress *at the conclusion of this case.*

applicable standards are different. Also, simply because the Court may or may not grant a party's request in a certain circumstance does not mean it automatically has to grant or deny another party's request on a similar (or somewhat related) matter.

There is a fine line between tactful strategy and impermissible gamesmanship. Thus, while the Court shares some of McCain's concerns about how Simplot arrived at this juncture, it cannot say to a reasonable degree of certainty that Simplot is engaging in the latter under the present circumstances.

The Court's concerns aside, Simplot is correct that the relevant standard in this circumstance is not dismissal, but amendment under Rule 15. Despite there being multiple ways to approach this issue, Simplot chose amendment and that is the standard the Court must apply. McCain does not dispute that *most* of the *Foman* factors[15] are either irrelevant at his juncture or weigh in favor of Simplot. The one factor McCain focuses on—and the factor that concerns the Court the most—is the first factor: prejudice. While the other factors are surely relevant, as noted: the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973).

Before discussing prejudice, the Court must address McCain's overarching procedural argument that "a motion for leave to amend 'is not a vehicle to circumvent summary judgment.'" Dkt. 314, at 6 (citing *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d

---

[15] McCain argues that Simplot was dilatory in bringing this motion. In its estimation, Simplot could have acquiesced on this claim either, (1) at the outset of this case when it "kn[ew] [] it could not substantiate [the claim]," or (2) following a particular deposition in November 2019. Dkt. 314, at 11. Simplot asserts that it was not so much the November 2019 deposition that caused it to change its mind, but depositions taken between February and May of 2021. Could Simplot have brought this motion earlier? Maybe. But it appears it did not think such would be necessary until recently (because McCain might have stipulated to dismissal). Regardless, the Court finds Simplot did not unreasonably delay in bringing this motion.

435, 443 (9th Cir. 1991), *overruled on other grounds, Cramer v. Consol. Freightways, Inc.*,
255 F.3d 683, 692-93 (9th Cir. 2001). This is an accurate quotation and represents a correct
legal principle. That said, the six citations McCain then references to support this
statement—and three citations later on in its brief—all involve situations where the party
requesting amendment did so in an effort to *add* claims. *Id.* at 6–7; 7, n.3; 10–11. Those
courts uniformly noted that a last-ditch effort to *add claims* "to circumvent summary
judgment" was inappropriate. To be sure, a *similar* sentiment exists when it comes to
removing claims on the eve of summary judgment—as will be discussed below—but
McCain's statements here (and citations to multiple supporting cases), while not
necessarily misleading, require some context to flesh out their applicability.[16]

Along similar lines, McCain cites to *Barnes v. D.C.,* 42 F. Supp. 3d 111 (D.D.C.
2014), and notes that it "collect[ed] cases finding late amendment to remove claims raises
the concern that plaintiff may reassert the claims later, resulting in prejudice to the
defendant who has expended resources preparing to litigate now." Dkt. 314, at 9–10.
Again, this is partially correct. The *Barnes* case does have a string cite of numerous cases.
Some of those cases involved the removal of claims via amendment, other involved the
addition of claims by amendment. Some discuss potential future litigation, and others
discuss the format of dismissal. This aside, the overarching purpose of the string citation—
according to *Barnes* itself—was to illustrate that Rule 15 gives courts the "authority to

---

[16] In like manner, McCain's citations in support of its argument that it has already engaged in substantial litigation on these matters also dealt with situations where the party seeking amendment was doing so in order to *add* claims. Dkt. 314, at 7–8.

impose conditions when permission to amend is allowed." *Barnes*, 42 F. Supp. 3d at 115. For example, some of the cases cited in *Barnes* imposed conditions as it related to fees and costs, while others imposed conditions on the form of dismissal (such as with or without prejudice). Again, while not wholly inaccurate, McCain's broad statement and the attending citations need to be viewed in context.

Now, the Court did not review these cases to slight McCain. As will be explained shortly, there is little by way of caselaw on this particular topic. Thus, it is understandable that while there are many citations in McCain's brief, only a select few deal with the precise circumstance here: whether to condition a motion to amend that seeks to *remove* a claim prior to summary judgment. Consistent with the above-cited cases, the Ninth Circuit has held that district courts may, in their discretion, "impose reasonable conditions on a grant of leave to amend a complaint." *Int'l Ass'n of Machinists and Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1391 (9th Cir. 1985) (cleaned up). The relevant question then, is what, if any, conditions should the Court impose on Simplot's amendment today?

McCain argues that unless the Court allows amendment only on the condition that the claim is dismissed with prejudice, it may have to defend against this claim in a future lawsuit. This is a real concern and the crux of the Court's decision today.

McCain cites to *Bark v. Larsen* in support of its argument that it would be improper for Simplot to preserve its ability to re-litigate these claims in a future lawsuit. No. 06-1119-AS, 2006 WL 4852688 (D. Or. Jun. 26, 2006). While *Bark* is similar in that the Plaintiff there sought to dismiss claims on the eve of summary judgment, it did so after affirmatively "conced[ing] the merits" of the claims and admitting that they were "no

longer substantiated" based upon an adverse court ruling. *Id*. at *8. Those admissions stand in stark contrast to the situation here where the Court has not ruled in any fashion on Count II and Simplot still believes Count II is a viable claim.[17]

McCain also cites to *Garner v. USAA General Indemnity Company*, CV-19-59-M-KLD, 2020 WL 7231135 (D. Mont., May 6, 2020), which is more applicable to McCain's proposition. In *Garner*, the plaintiff did not affirmatively state the claim he sought to omit (via amendment) was without merit, but he did reaffirm he had no plans to re-assert the claim in future litigation. The plaintiff also argued that even if he did reassert his abandoned claim down the road, the work had already been done and so no additional expense would occur. The *Garner* court found that future cost savings was not as important as cost already incurred. It determined it would be inequitable to "leave the door open for Plaintiff to reassert its claim . . . in a future action." *Id.* at *2.

McCain concludes that "many courts require that claims dropped by amendment late in a case can only be dismissed if the dismissal is with prejudice" and cites two cases. Dkt. 314, at 12. Again, while the two cases cited by McCain do support this statement,[18]

---

[17] The Court does not know if Count II is (or will at some later time) be viable or not. But such is irrelevant for the Court's inquiry today. Simplot freely notes that its decision was largely premised on testimony from McCain's witnesses who testified that McCain stopped selling its Twisted Potato product in the United States shortly after this lawsuit was filed and that its sales in the United States were modest. Dkt. 320, at 6. Whether Simplot views that testimony as evidence that "dooms" its claim entirely or simply as evidence that pursing the claim is not economically, legally, or financially sound at this time is beside the point. What Simplot hasn't done, however, is *ever* say the claim was without merit. It has not conceded the facts or acknowledged that the claim is baseless or unsubstantiated.

[18] In *Matlink, Inc. v. Home Depot U.S.A., Inc.*, the Court did condition the dismissal of withdrawn claims with prejudice based on a finding of undue delay and the costs of resources already expended. 07cv1994 DMS(BLM), 2008 WL 11338407, at *2 (S.D. Cal., Jul. 10, 2008). And, in *Vanguard Logistics Services*

(continued)

there are "many" other cases where the court dismissed (or allowed amendment) without prejudice.[19] Frankly, the decision is discretionary and fact-specific.

Candidly, most of the citations to dismissal without prejudice come in the context of a true dismissal under Rule 41. Simplot cites to *In re Lowenschuss*, and its parentage[20] for the conclusion that "the inconvenience of defending another lawsuit or the fact that the defendant has already begun trial preparations does not constitute prejudice." 67 F.3d 1394, 1401 (9th Cir. 1995). Again, a correct statement, but each of these cases dealt with dismissal under Rule 41, not a Motion to Amend under Rule 15.[21] Thus, while Simplot repeatedly points out that it is not seeking dismissal, but rather amendment, Simplot must, nonetheless, rely on "dismissal" cases to support its contention that a "with prejudice" ruling is inappropriate.

It is, frankly, obvious why both sides had to resort to case citations dealing with motions to dismiss (or voluntary dismissals) as opposed to motions to amend when trying

---

*(USA), Inc. v. Groupage Services of New England, LLC*, the District Court dismissed the matter with prejudice in order to preserve the issue of costs and fees for later. CV 18-517 DSF (GJSx), 2021 WL 4520969, at *3 (C.D. Cal., Jan. 4, 2021).

[19] Even one the cases McCain cited bears this out. In *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc*, the district court was confronted with a motion to amend in order to withdraw a claim (much like here). It determined, however, that, based upon the specific circumstances of the case, dismissal without prejudice was appropriate. No. 09-CV-00970-PAB-KMT, 2010 WL 3630118, at *8 (D. Colo. Sept. 9, 2010).

[20] *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994), as amended (July 25, 1994); *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982)).

[21] Even then, Simplot is incorrect in its assertion that because it is seeking amendment, as opposed to dismissal, "McCain is not entitled to any order of dismissal, let alone an order dismissing a claim with prejudice." Dkt. 320, at 12. As noted above, it is within the Court's power—under both Rule 41 and Rule 15—to impose "reasonable conditions" on any dismissal or leave to amend, including whether the matter is adjudicated with or without prejudice.

to determine if conditions should attach. The Court has undertaken an exhaustive search and, likewise, finds only limited examples of courts attaching conditions to motions to amend *that dropped a claim*.[22]

For example, in *Perez v. Cent. Ohio Gaming Ventures, LLC*, the Court was presented with a Motion to Amend to drop claims that essentially cut a class action in half. Plaintiffs readily admitted that the dropped claims would likely be brought in a subsequent lawsuit. Defendants opposed the motion on the grounds that it would be prejudicial to have to re-litigate the matters in a future lawsuit. The Court concluded that "even accepting defendant's assumption of future litigation" as true, "the proposed amendment will not so prejudice defendant as to warrant denial of the Motion to Amend." No. 2:15-CV-2636, 2016 WL 8193586, at *2 (S.D. Ohio Apr. 26, 2016). While the Court did not find prejudice (in the general sense) in allowing amendment, and granted the motion without any conditions, in did not specifically discuss dismissal with or without prejudice.

In *N. Nat. Gas Co. v. L.D. Drilling, Inc.*, the plaintiff filed a motion to amend to remove certain claims. No. 08-1400, 2011 WL 3847378, at *1 (D. Kan. Aug. 30, 2011). The defendants opposed the motion asking instead for a dismissal of the claims with prejudice because the plaintiff had a history of quasi-abusive litigation tactics and because it had spent considerable time and money defending itself against those specific claims. Defendants also argued that they did not want to face the possibility of similar future litigation. The Court found that despite such concerns, changing circumstances are the

---

[22] Again, there are ample cases where conditions were applied to parties seeking to add claims at a late stage via amendment, but limited few where a court attached conditions to *dropped* or *withdrawn* claims.

nature of litigation. Additionally, it noted that while defendants' "stated desire to avoid future litigation is understandable" it was not enough to overcome the presumption that amendment to drop claims (as opposed to dismissal with prejudice) was warranted.

In *McBride v. Jenny Craig, Inc.*, the plaintiffs sought to dismiss various claims via amendment. No. 07CV2382 JLS (AJB), 2010 WL 11508736, at *5 (S.D. Cal. Mar. 29, 2010). The same day, defendants filed motions for summary judgment. The defendants subsequently objected to plaintiffs' motion to amend on the basis that (1) they had incurred time and expense litigating the matters over the course of roughly 28 months, (2) summary judgment and class certification motions were pending, and (3) plaintiffs appeared to be trying to avoid federal jurisdiction and return to state court. The district court found each reason unavailing, granted the motion to amend (without any conditions), and remanding the matter to state court.[23]

The *brief* review above is indicative of the varying approaches courts take on these matters. And, despite the Court's observations that the parties are conflating Rule 15 and Rule 41 to some degree, as one district court in the Ninth Circuit recently noted: "this distinction is of little consequence. . . . Whether the motion is made under Rule 15 or Rule 41(a)(2), the choice of rules is largely a technical one as both rules leave the final decision to the court's discretion. *Hall v. W. Ref. Retail, LLC*, No. 519CV00855VAPSKX, 2021 WL 4497925, at *1 (C.D. Cal. June 23, 2021) (cleaned up). "The primary focus for the

---

[23] Other Courts have determined that when a plaintiff seeks to remove claims via amendment "in opposition to summary judgment" such is evidence "that [plaintiff] cannot prove the claims" and a "with prejudice" dismissal is appropriate. *See, e.g., Bosco v. United States*, No. 14 CIV. 3525 (JFK), 2016 WL 5376205, at *15 (S.D.N.Y. Sept. 26, 2016). Again, however, this case is distinguishable because Simplot filed its motion *before* summary judgment briefing commenced.

Court's determination under either rule is whether the other party will suffer prejudice. Likewise, the Court may impose conditions under either rule in order to alleviate or mitigate any prejudice." *Id*. (cleaned up).

Thus, the Court returns to where it started: prejudice. Frankly, the Court cannot tell if Simplot chose amendment over dismissal in an effort to avoid the matter of fees and/or whether McCain opposed the request with fees in mind. Regardless, a determination on fees is left for another day. A condition of the Court granting the motion to amend today is that the issue of fees remains open. Thus, that prejudice is alleviated. The other potential prejudice McCain highlights is that of future litigation.

Utilizing Rule 41 cases in support, Simplot persuasively notes that a "with prejudice" condition only attaches when the opposing party will suffer "plain legal prejudice," as a result of the dismissal and that "plain legal prejudice [] does not result simply when [a] defendant faces the prospect of a second lawsuit or when [the] plaintiff merely gains some tactical advantage." *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). *See also, Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996) ("[T]he threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice.").

The Court finds that the Rule 41 concept applies equally here. While McCain may suffer some minor prejudice as a result of Simplot's Motion to Amend, that prejudice is

not *undue*.[24] What's more, there is the possibility that Simplot could actually suffer prejudice in the future were the Court to dismiss this claim with prejudice and McCain reintroduced its product in the United States. Under such conditions, Simplot would be left without remedy.[25] In sum, under Rule 15's liberal standard, the Court finds Simplot has met its burden and amendment is appropriate in this case. The Motion is GRANTED.

### III. CONCLUSION

While the two pending motions raise discrete issues of amendment, both are highly technical and could have far-reaching implications in this case.

First, the Court finds McCain may amend its infringement contentions to reflect the other nine SKUs not included previously. Additionally, the Court will allow McCain to amend its infringement contentions to reference 35 U.S.C. § 271(g) as it relates to the Canadian PEFed products because the parties have been operating under the assumption that the sought-after information *was already* part of this case. That said, no further discovery is warranted and the ultimate questions of whether the damages' calculations come in, for which products, and to what degree, are each reserved for later in the case.

Second, the Court finds that granting Simplot's Motion to Amend will streamline matters for trial and will not unduly prejudice McCain. In granting the motion, the Court does not attach a "with" or "without" prejudice condition. The sole condition is that the

---

[24] And lest it go unnoticed, McCain also receives a benefit in that it has to defend itself against one less claim moving forward.

[25] Future litigation is wholly speculative. The Court's ruling today does not prohibit or condone future litigation or any arguments in any future litigation (about fees, claim preclusion, etc.). The Court's decision today is confined to this lawsuit.

issue of fees associated with the withdrawn claim is held over for a later time.

## IV. ORDER

1. McCain's Motion to Amend (Dkt. 306) is GRANTED. McCain shall file its Amended Infringement Contentions within three business days.

2. Simplot's Motion to Amend (Dkt. 308) is GRANTED. Simplot shall file its Amended Complaint within three business days.

3. The Motions to Seal (Dkts. 305, 312, 318) are GRANTED.

4. The Court previously held in abeyance Simplot's two pending motions for Partial Summary Judgment (Dkts. 206, 208) pending the close of discovery. The Court also recently stayed all deadlines pending the resolution of these two motions. Dkt. 310. Discovery is now complete, and the two motions have been adjudicated. Accordingly, the following shall apply:

   a. Simplot's prior Motions (Dkts. 206, 208) are deemed MOOT. The renewed motions, and all supporting evidence, shall be refiled as new motions.

   b. All dispositive motions and *Daubert* motions shall be due on January 26, 2022. Response briefs will be due on February 23, 2022. Reply briefs will be due on March 16, 2022.

      i. As it applies to Motions between Simplot and Elea: each opening motion and response brief is limited to 40 pages. Each reply brief is limited to 20 pages. Any statement of facts may be up to 30 pages in length.

MEMORANDUM DECISION AND ORDER - 28

    ii. As it applies to Motions between Simplot and McCain: each opening motion and response brief is limited to 50 pages. Each reply brief is limited to 25 pages. Any statement of facts may be up to 20 pages in length.

    iii. *Daubert* Motions shall conform with the Court's standard page limitations (20-page opening and response briefs; 10-page reply briefs) but shall follow the same deadlines as outlined above for opening/response/reply briefs.

c. The Court will set a hearing date once it has received all briefing.

DATED: January 5, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 29