UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>McCAIN FOODS USA, INC.,<br><br>        Defendant.<br><br>_____<br><br>McCAIN FOODS LIMITED,<br><br>        Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY,<br><br>        Defendant. | Case No. 1:16-cv-00449-DCN[1]<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are various motions and objections filed by the parties in anticipation of the upcoming trial. Within the submissions are large substantive requests regarding the theories of the case, what issues are appropriate for the court versus the jury, and how to structure damages. In addition, there are smaller objections to various trial submissions such as jury instructions and proposed voir dire. Today, the Court addresses McCain's argument that Simplot has changed its theory of the case as well as the parties'

---

[1] This case involves additional parties—namely Elea Vertriebs-und-vermarktungsgesellshaft, Mbh, and Food Physics LLC. However, because the impending trial does not involve those parties, the Court has removed them from the case caption for simplicity.

Motions in Limine. The Court will issue a separate order regarding the remaining evidentiary disputes at its earliest opportunity.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court DENIES McCain's request to bifurcate trial (Dkt. 533), GRANTS McCain's Motion in Limine (Dkt. 489), and GRANTS in PART and DENIES in PART Simplot's Motion in Limine (Dkt. 505).

## II. BACKGROUND

### A. Factual Background

The facts of this case are well known to both parties and the Court will only include a brief recitation here for context.

On October 7, 2016, Simplot filed a Complaint in the District of Idaho against McCain alleging infringement of Simplot's U.S. Patent No. D640,036 ("the '036 Patent") titled "Spiral Potato Piece." The '036 Patent, issued June 21, 2011, is a design patent. Simplot has alleged over the years that the '036 Patent covers the ornamental features of its Sidewinders French fry product. [2] In its original Complaint, Simplot also raised a claim

---

[2] As was explained in the Court's summary judgment decision, *see* Dkt. 474, at 63–66, and as will be detailed more below, Simplot's position has changed during this litigation with respect to specifically *which* patent (or patents) covers its Sidewinder product.

for unfair competition and trade dress infringement related to McCain's Twisted Potato product. *Id*.

On February 21, 2017, McCain filed suit against Simplot in the Northern District of Illinois, alleging infringement of its patent, U.S. Patent No. D720,916 ("the '916 Patent") titled "Root Vegetable Product." District of Illinois Case No. 1:17-cv-01326.3 The '916 Patent, issued January 13, 2015, is a design patent which McCain alleges covers the ornamental features of its Twisted Potato French fry product.[3]

On August 9, 2017, the District of Illinois transferred the McCain lawsuit against Simplot to the District of Idaho (assigned Idaho Case No. 1:17-cv-00350-DCN) and, on November 9, 2017, the undersigned consolidated the two cases. Dkt. 40.

On July 11, 2018, the Court held a claim construction—or *Markman*—hearing to determine the construction of the disputed claim terms. Dkt. 65. As for the '916 Patent and the '036 Patent, the Court decided to leave the terms as written in the patents themselves and "defined as shown in figures 1–7." Dkt. 69, at 29.

As part of summary judgment, Simplot asked the Court to grant summary judgment on McCain's claim that the Sidewinder product infringes the '916 Patent. Dkt. 330-1, at 52. Neither party moved for summary judgment on the '036 Patent.

After an all-day summary judgment hearing, the Court issued a 141-page decision.

---

[3] In that suit, McCain also accused Simplot of infringing Patent No. 6,821,540 ("the '540 Patent"). The '540 Patent, issued November 23, 2004, is a utility patent entitled "Process for Treating Vegetables and Fruit Before Cooking," and protects McCain's use of Pulse Electric Field ("PEF") technology to soften fruits and vegetables before cutting them. On summary judgment, the Court ruled in Simplot's favor and found the '540 Patent invalid for indefiniteness. Dkt. 474. The Court entered a partial judgment as to that claim (Dkt. 484) which allowed McCain to appeal (Dkt. 485). That matter is now proceeding at the Court of Appeals for the Federal Circuit and will not play a role in the upcoming trial.

Dkt. 474.  With respect to the '916 Patent, the Court reviewed the briefing and argument but held that "design infringement is a question of fact. Given the parties' genuine disputes about the prior art and how it relates to McCain's infringement claim, it is up to the jury to assess the similarities and differences between the '916 Patent, the Sidewinder product, and the prior art." *Id*. at 67. And again, because neither party moved for summary judgment as to the '036 Patent, the Court ultimately concluded "that the parties' claims regarding the competing design patents—the '916 Patent and the '036 Patent—must go to trial." *Id*. at 69. The Court issued its Decision on January 3, 2024. Thereafter, the Court set a trial date of August 19, 2024. Dkt. 480.

## B.  Procedural Background

In preparation for trial, the parties filed numerous documents. On July 22, 2024, McCain filed a Motion in Limine with one request. Dkt. 489. Also on July 22, 2024, Simplot filed a Motion in Limine with eleven requests. Dkt. 505.

Both sides also filed trial briefs. Dkts. 492, 504. Within these trial briefs, the parties provided their respective case strategies and what they expect the evidence will show at trial. Both sides filed responses to the Motions in Limine. As part of those submissions, each side also objected to the other side's summary of the case from the trial briefs and how the other side indicated it would proceed at trial. For its part, Simplot accused McCain, among other things, of confusing which issues are matters of law for the Court and which are questions of fact for the jury. And McCain accused Simplot, among other things, of changing its entire theory of the case as it relates to the '036 Patent. In fact, McCain now contends the Court should bifurcate Simplot's '036 Patent from the impending trial and

reopen discovery on the issue. The Court discussed this disagreement in its pretrial call on August 5, 2024, and requested further briefing from the parties. Dkt. 530.[4] The Court appreciates the Parties' additional briefing on this important issue. Dkts. 533, 534.

Herein, the Court will address the dispute about Simplot's purportedly new theory and bifurcating trial, as well as the parties' Motions in Limine. Subsequent decisions will address the remaining evidentiary disputes.

## III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cnty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "an in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up), "a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and,

---

[4] Due to the wording the Court used in its docket entry requesting additional briefing, McCain suggests the Court misunderstands the dispute. Dkt. 532, at 5 n.1. The Court appreciates McCain's concerns. As will be discussed, however, the Court is aware of the issues. It is just currently in the middle of a complicated two-week criminal jury trial. The Court's shorthand in docket text to alert the parties to which issue required additional briefing need not be read as a failure to grasp the current dispute.

therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS[5]

A brief review of the type of claims at issue, what will be required of each party at trial, and what the jury will be asked to decide is helpful before diving into the substance of the parties' motions and disagreements.

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc*., 942 F.3d 1119, 1129 (Fed. Cir. 2019) (cleaned up).

Design patent infringement is determined using the "ordinary observer" test: "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). Determining design patent infringement is a two-part test: "(1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

---

[5] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments at great length. Additionally, as noted, the Court's rulings on these motions are preliminary. The Court is not inviting future requests to reconsider its decisions today. It is simply noting that, should evidence or testimony at trial change the Court's rulings herein, it could revisit or refine its conclusions.

As noted, the Court has already construed the '036 Patent and the '916 Patent "as shown in figures 1-7" of the respective patents; therefore, the first part of the infringement test is complete. Dkt. 69, at 29.

The second part of the infringement test is the comparison component. That is what the jury will decide at this trial. The relevant comparison is the accused products—the Sidewinder and the Twisted Potato—to the patented designs—the '916 and the '036 Patents. *Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc*., 953 F.3d 745, 750 (Fed. Cir. 2020) ("To determine infringement, you must compare the overall appearances of [the] accused design to the design claimed in the [asserted] [p]atent.").

The jury will also be asked to decide matters within the broader infringement umbrella such as invalidity and damages. But the primary question for the jury is whether Simplot's product infringes McCain's Patent and whether McCain's product infringes Simplot's Patent.

## A. New Theory of the Case

Within its trial brief, Simplot discussed the damages it would be seeking in conjunction with its claim that McCain infringed the '036 Patent. As part of that discussion, Simplot stated that "[t]he marking requirement of Section 287(a) does not apply to Simplot's '036 Patent infringement claim because Simplot did not have an 'article' to mark with the '036 Patent. Simplot's commercially-sold Sidewinder is the embodiment of Simplot's '243 Patent." Dkt. 504, at 17. This statement has thrown a wrench in things— to the point that McCain believes trial on Simplot's '036 Patent must be severed from trial on its own '916 Patent to allow further discovery. Some background is helpful.

In its original Complaint, Simplot asserted the '036 Patent "covers the ornamental features of Simplot's Sidewinders." Dkt. 1, at 8, 10. Based upon this, the Court previously held that the Sidewinder "embodies the '036 Patent." Dkt. 69, at 29. In summary judgment briefing, however, Simplot pivoted slightly and argued that the Sidewinder product is actually the embodiment of another of Simplot's Patents—U.S. Patent No. D723,243 ("the '243 Patent")—and that there is a "family" of patents covering the Sidewinder product.

When discussing the fact that Simplot had apparently changed its tune from arguing that the Sidewinder was based on the '036 Patent, to arguing the Sidewinder was based on the '243 Patent, the Court observed:

> To be sure, Simplot couched its reference to the '036 Patent as being "at least one of" the "dozens of patents" Simplot has related to various potato product designs. Dkt. 1, at 8. But the implication is clearly that the '036 Patent is best viewed as the Sidewinder product. Additionally, in introducing a visual in its Complaint, Simplot states, "McCain copied Simplot's patented Sidewinders design" and then shows the '036 Patent. Dkt. 1, at 9. *Thus, the Court (and McCain) have operated under the assumption that the Sidewinder was the embodiment of the '036 Patent.*

Dkt. 474, at 64 (emphasis added). The Court went on to explain, however, that, despite the "confusi[ng]" nature of Simplot's argument and its "seemingly changed position," these matters needed to go to a jury for resolution. *Id*. at 65–66. That was in January of 2024.

McCain now argues that Simplot has completely disavowed its prior position that the '036 Patent covers the Sidewinder product, and that because of this "about face," it needs further discovery and, therefore, trial must be continued. It also contends that Simplot's position—should it be allowed to proceed—will confuse a jury. McCain states, rather pointedly, that "the Court need only look to the docket entry setting this briefing to

see . . . the likelihood[] of jury confusion . . . .” Dkt. 532, at 11. The implication being: if the Court is confused, a jury will certainly be confused. The Court appreciates McCain's concern; it does not have the same expertise in patents as do the attorneys in this case. That said, the Court fully understands what is at issue today. It is just difficult to explain.

There are two lawsuits here: Simplot vs. McCain and McCain vs. Simplot. Both are based on a design patent. The Court has often grouped those suits together in verbiage in various decisions, as have the parties in their filings. In fact, the cases have been consolidated for years. And for good reason. Because each side accuses the other of infringing its design patent, consolidation (in practice and in terminology) makes logical sense. And the product that embodies each design patent is the accused product of the other side's design. Or at least it was originally. The overlapping and intertwining nature of the embodiments of the Patents with the infringement of the Patents themselves takes some mental gymnastics. The Court will strive to put the issue plainly.

McCain accuses Simplot of infringing its '916 Patent. McCain avers that its Twisted Potato product is the embodiment of that design. The product it accuses Simplot of selling that infringes the '916 Patent is Simplot's Sidewinder product. But McCain does not have to establish that the Sidewinder is the embodiment of any particular patent. McCain must simply show that the actual Sidewinder product—irrespective of which patent it embodies—is substantially similar to McCain's '916 Patent to the extent it would deceive an ordinary observer into believing the Sidewinder is the same design as that claimed in the '916 Patent.

Simplot has accused McCain of infringing its '036 Patent. The infringing product

McCain purportedly sells is its Twisted Potato product. For its part, Simplot has claimed that the Sidewinder is the embodiment of the '036 Patent. It has also claimed that the Sidewinder is the embodiment of the '243 Patent. Critically, however, that distinction or determination is, again, irrelevant for infringement purposes. Simplot must simply show that McCain's Twisted Potato product is substantially similar to its '036 Patent to the extent it would deceive an ordinary observer into believing the Twisted Potato is the same design as that claimed in the '036 Patent.

McCain explains the problem is not so much that Simplot is claiming the Sidewinder is the embodiment of the '243 Patent as opposed to the '036 Patent—although it takes issue with that as well—but that Simplot is apparently disavowing *any* connection between the Sidewinder and the '036 Patent.

As quoted above, the Court has already addressed the "confusi[ng]" nature of Simplot's argument and its "seemingly changed position." Dkt. 474, at 65, 66. And the Court recognizes that this "change" will affect how McCain presents its case at trial. But the fact remains: Simplot does not have to prove which of *its* products embodies the '036 Patent, it must simply prove that one of *McCain's* products infringes the '036 Patent. And McCain does not need to prove (or even allege) which patent covers the Sidewinder product, just that the product itself infringes the '916 Patent.

Now, it is not lost on the Court that most people (Simplot, McCain, experts, *the Court*) were under the impression for most of this case that the Sidewinder was the embodiment of Simplot's '036 Patent. And, while Simplot had maintained that the '036 Patents is "one of" the patents that protects the Sidewinder product, Simplot has never

(before its trial brief) flat out stated the '036 Patent *does not* cover the Sidewinder. *See, e.g.,* Dkt. 324, at 8. Because of this shared understanding, much of the discovery and testimony regarding infringement discussed the '036 Patent in the context of the Sidewinder product. This may mean that McCain needs to change its presentation, argument, and testimony around to some degree for presentation at trial. But again, the underlying distinction is not relevant to the infringement analysis of either patent.

The Court is also cognizant of the fact that if there is no embodiment, McCain's argument about invalidity could shift. It also recognizes that this "change" will likely affect McCain's presentation on damages. But the Court is not so sure that Simplot is *completely abandoning* any connection between the Sidewinder product and the '036 Patent. Reading this singular line in its trial brief with such sweep may be a bridge too far. What's more, *even if* Simplot is now trying to disavow any and all connection between the Sidewinder and the '036 Patent, it will have a tough row to plow. Simplot cannot say with a straight face that the Sidewinder and the '036 Patent are not connected in any way. Its own people have said *numerous* times—in discovery, in testimony, in *official court documents*—that the Sidewinder is the embodiment of the '036 Patent. At the very least, Simplot has said that certain features of the Sidewinder are protected by the '036 Patent. Thus, any "changed position" is ripe for McCain to attack at trial. Again, however, the Court does not know to what degree Simplot will say that the '036 Patent does not cover the Sidewinder product. Is this Simplot's new theory that will permeate the whole case? Or will Simplot just try to use this strategy to minimize (or maximize) damages? As Simplot's case unfolds, specific objections will be dealt with at trial.

MEMORANDUM DECISION AND ORDER - 11

Now, Simplot maintains that McCain's argument that it has presented a new theory of the case is simply a strategy to throw things in array because McCain has realized that, if the Sidewinder infringes the '916 Patent—and Sidewinders are the embodiment of the '243 Patent—then the '916 Patent is in trouble because the '243 Patent predates the '916 Patent. But that could be said of the '036 Patent as well. So, even if Simplot holds the line on its '243 argument, that does not mean the '916 Patent is invalid. Said another way, Simplot could argue that same thing using the '036 Patent (or any of its other nine patents that predate the '916 Patent for that matter). Regardless, the Court does not find Simplot's argument persuasive. It does appear that McCain was, in fact, surprised by Simplot's statement in its trial brief.[6]

In short, Simplot's "change" does not have the far-reaching effects that McCain implies. Does this affect trial? Yes. But to a degree to which McCain cannot adapt? No. The actual product that embodies the '036 Patent is irrelevant for an infringement analysis of the '036 Patent. That analysis instead focuses on the Twisted Potato. And to the extent that Simplot's change bleeds over into the '916 Patent claim and some strategy there, McCain can argue what it pleases. But as the Court has already explained: "regardless of

---

[6] That said, the Court cannot agree with McCain that Simplot's argument came completely out of left field. Simplot argued in summary judgment briefing *over two years ago* that " . . . Sidewinders are the same as the design of the '243 Patent . . . ." Dkt. 332, at 52. The parties briefed this issue, and McCain argued against Simplot's position then much as it does now. *See, e.g.,* Dkt. 410, at 52–56. The Court addressed the same in its summary judgment decision. Dkt. 474, at 63–69. Again, the Court can understand McCain's surprise at Simplot's purported total disavowal of any connection between the Sidewinder and the '036 Patent, but the parties have already been down this path before. And to assuage McCain's concerns, as explained above, the Court understands there is a difference between Simplot saying the Sidewinder is based on the '243 and Simplot saying the '036 Patent never covered the Sidewinder to begin with. But the Court's point is that this issue has been brewing for the past few years so for Simplot to double-down at trial is not as unexpected as McCain asserts.

which patent the Sidewinder embodies . . . the question remains whether the *product* would confuse the ordinary observer into believing it is the embodiment of the '916 Patent." Dkt. 474, at 65–66 (emphasis added).

The Court is a *big* proponent of Rule 1 of the Federal Rules of Civil Procedure. It *does not* want to waste time or resources on matters that are not ready for trial. That said, trial is the next step in this process. The Court needs answers from a finder of fact as it relates to numerous questions regarding the '036 Patent, the '916 Patent, infringement, invalidity, damages, the list goes on. The Court finds, therefore, that it is more economical to proceed to trial on both patents as planned. Then, *at the very least*, the Court will have factual findings it can use in post-trial motions.[7]

The Court will not go so far as to say that Simplot is *estopped* from arguing that the Sidewinder product is not the embodiment of the '036 Patent. It can argue what it wants. McCain can rebut the same, attack that change, and argue the implications thereof at trial. But the Court cautions the parties that this infringement trial need not turn into multiple mini trials about other things. For many years, the parties and the Court have proceeded towards trial with a *general* shared understanding of the issues and arguments. The Court is, frankly, not pleased that so many issues—substantial issues at that—arose at the proverbial 11th hour. Regardless of whether Simplot, McCain, or both parties are to blame for such confusion, Simplot's statement in its Trial Brief regarding not having an article to

---

[7] The Court is not implying post-trial motions will be necessary in this case. It is simply finding that, with less than two weeks until trial (and while currently amid a two-week jury trial itself) the best course of action is to proceed with the trial that has been scheduled for six months and in active litigation for almost eight years. The parties can address remaining issues after-the-fact *if necessary*.

mark with the '036 Patent is not grounds to delay trial or reengage in discovery at this stage. McCain's request to bifurcate trial is DENIED.

## B. McCain's Motion in Limine (Dkt. 489) / Simplot's Motion in Limine No. 4 (Dkt. 505, at 13) – GRANTED

In its Motion in Limine, McCain has just one request: that the Court preclude the parties from introducing testimony or evidence of their litigation outside of the United States—specifically in Canada. *See generally* Dkt. 489. McCain avers that nothing from that case is relevant to the issues being tried here and should be excluded. In response, Simplot agrees. Dkt. 523, at 17.

Relatedly, Simplot asked—in its fourth Motion in Limine—that the Court preclude evidence of the Canadian suit, but also of the parties' proceedings before the Trademark Trial and Appeal Board ("TTAB") and the Patent Trial and Appeal Board ("PTAB"). Dkt. 505, at 13. In response, McCain agrees that it does not intend to discuss any of the proceedings Simplot listed. But McCain worries that Simplot's request is too broad and speculates that Simplot could be trying to hamstring McCain's ability to attack the credibility of one of Simplot's witnesses—Jacqueline Beckley. As such, McCain contends the Court's order should not go so far as to prohibit McCain from being able to cross-examine Beckley.

Candidly, the Court does not understand McCain's request. It would appear McCain is saying that *in order to* attack Beckley, it is going to have to reference foreign litigation. But that is likely not accurate. Creative wording can avoid referencing any specific foreign proceedings/judgments and still allow McCain the opportunity to cross-examine Beckley.

Should this change, McCain can request a sidebar or hearing outside of the jury's presence.

In sum, the Court agrees with the parties: evidence or testimony about foreign proceedings, the TTAB proceeding, or the '540 PTAB proceedings is inadmissible at trial.

### C. Simplot's Motion in Limine (Dkt. 505)

*1. To Exclude the Introduction of the '916 Patent as Evidence of Non-Infringement of Simplot's '036 Patent – DENIED.*

In its first Motion in Limine, Simplot asks the Court to prohibit McCain from using the '916 Patent as evidence that it (McCain) does not infringe Simplot's '036 Patent. Simplot's biggest concern is that McCain will argue that, because the USPTO granted the '916 Patent, that administrative action means the product that embodies that Patent (the Twisted Potato) cannot infringe another Patent (the '036 Patent). The Court doubts McCain will argue this because such is a misstatement of the law. Just because a patent is awarded, and embodied by one product, does not mean that product cannot infringe another patent. *See Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell.") (cleaned up). But the law is also clear that the jury can consider evidence of a patent as to non-infringement. *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996) (" . . . separate patentability is relevant, and is entitled to due weight.").

McCain can discuss the '916 Patent as evidence of non-infringement. Simplot can argue none of that matters and USPTO determinations of patentability differ from judicial

determinations of infringement. The Court agrees, however, with Simplot (and McCain) that a limiting instruction may be helpful to the jury to avoid confusion. The Court is not committing to giving that instruction now, but it would like the parties to have an instruction prepared (jointly if possible) should the situation arise.

One final comment on "confusion." Both sides repeatedly state that the other side will "confuse" the jury with its arguments, evidence, testimony, or exhibits. The Court will do its best under Rule 403 to avoid that confusion from a *legal* standpoint. But some of the material at issue in this trial is simply complicated. And explaining complicated topics can be confusing at times. McCain "appreciates that [its arguments] may appear confusing" but asserts its evidence at trial will "dispense with any perceived confusion." Dkt. 491, at 15. This is, frankly, the art of trial. Counsel will be tasked with explaining difficult topics in simple terms. But just because something might be complicated, or even confusing to a certain degree, does not mean it must be excluded in total. It just means that counsel will have to figure out a way to explain the concept to the jury in an understandable manner.

2. *To Exclude the File History of the '036 Patent and Evidence and Testimony Regarding Indefiniteness – DENIED.*

Simplot next asks that the Court exclude the file history of the '036 Patent, and any argument regarding indefiniteness of the '036 Patent, arguing indefiniteness is for the Court to decide, not a jury. The Court agrees that indefiniteness is a legal question. In fact, in its summary judgment decision, the Court explained:

> "The Federal Circuit has made clear that indefiniteness is a legal question that district courts may decide prior to trial." *Pat. Holder, LLC v. Lone Wolf Distributors, Inc.,* 2018 WL 4643059, at *2 (D. Idaho Sept. 27, 2018). *See*

MEMORANDUM DECISION AND ORDER - 16

> *also Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d
> 696, 705 (Fed. Cir. 1998) ("A determination of claim indefiniteness is a legal
> conclusion that is drawn from the court's performance of its duty as the
> construer of patent claims.").

Dkt. 474, at 44. McCain is also correct, however, that while the determination of
indefiniteness is legal, it is based on factual underpinnings. *Akzo Nobel Coatings, Inc. v.
Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("Indefiniteness is a question of law
. . . subject to a determination of underlying facts."); *BJ Servs. Co. v. Halliburton Energy
Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) ("[D]efiniteness is amenable to
resolution by the jury where the issues are factual in nature. Because the issues here are
essentially factual, we review the jury's verdict to determine if the ultimate conclusion
reached is supported by substantial evidence."). But the Court never got to these factual
underpinnings because *neither side moved for summary judgment as it relates to the '036
Patent.*[8]

The problem then, as the Court sees it, is because these "factual" disagreements
were not previously argued before the Court, the Court does not know if there is even a
material fact in dispute to begin with. The Court assumes there is, however, because the
parties have experts with competing interpretations of what an ordinary person skilled in
the art would have gleaned from the '036 Patent and its history. So, while the Court would
have *strongly preferred* to have adjudicated this dispute at the summary judgment stage (as

---

[8] Because of this, Simplot argues McCain has waived any right to bring up indefiniteness now. As is evident
from some of its other comments herein, the Court has been caught off guard by some of the parties'
arguments at this stage of the proceedings. But the Court cannot find that McCain has waived its right to
argue indefiniteness because such can be adjudicated at trial.

it did with the '540 Patent), that ship has sailed. Someone (the jury at this point) must resolve those questions. Thus, the Court will allow McCain to pursue its indefiniteness theory at trial. However, the Court reserves the right to analyze whether the jury made the correct determination based upon the disputed facts (as it would have done at summary judgment) post-trial.

Because the Court will allow McCain to argue indefiniteness, it will allow McCain to use the '036 Patent file history. *See Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of . . . the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). Because there are disputes as to what a person skilled in the art would have understood from the '036 Patent, the Court finds the '036 file is relevant. Again, Simplot is free to argue "that was then, this is now" and "those determinations are not binding" (or whatever else it wants) but the Court will not wholesale exclude the '036 file. This motion is denied.[9]

*3.   To Exclude Evidence and Testimony Related to Functional Invalidity – GRANTED.*

Here, Simplot asks the Court to exclude evidence and testimony related to a functional invalidity argument it *suspects* McCain will make to claim the '036 Patent is functional. McCain responds that it has no intent of arguing the '036 Patent is functional. It then speculates, however, that Simplot might be trying to prohibit it from introducing

---

[9] The one caveat is the Court agrees with Simplot that it (the Court) determines claim scope. It has already ruled that the '036 Patent is what is shown in figures 1-7 of the patent itself. So the Court would not allow McCain to suggest otherwise. But discussing the file history should not put the Court's definition at risk. And if Simplot feels McCain has overstepped, it can move for a limiting instruction.

testimony about how Simplot's '036 Patent could be made if it were not indefinite—specifically the difference between what a six-cut blade and an eight-cut blade would do to a potato and whether either of those resulting shapes is what was envisioned in any of the patents at issue.

The Court does not know what Simplot meant with its request. In only knows what Simplot actually requested. And McCain has agreed to that: no testimony or evidence about functional invalidity will be permitted. As for McCain's supposition, the Court can only hold at this juncture that the sole evidence and testimony allowed at trial is that which was: 1) the subject of discovery; 2) properly disclosed, and/or 3) would otherwise fall within the Court's prior rulings. Specific objections can be dealt with at trial.

4. *To Preclude Evidence of or Reference to Foreign and Administrative Proceedings – GRANTED.*

As noted above, *see infra, Section IV(A)*, no evidence or testimony about foreign proceedings, the TTAB proceeding, or the '540 PTAB proceedings will be allowed at trial.

5. *To Preclude Any Evidence of, or Reference to, Simplot's Trade Dress Infringement Claim – GRANTED (with reserved ruling if door is opened).*

Here, Simplot asks the Court to preclude any references to its prior claim for trade dress infringement, alleging it is not dispositive of any issue at trial.

By way of background: Simplot originally pleaded a claim for Trade Dress Infringement / Unfair Competition in this case. Dkt. 1, at 12. Early on, however, McCain sought summary judgment on that claim. Dkt. 21. Simplot asked for deferment under Federal Rule of Civil Procedure 56 (Dkt. 23) which the Court granted (Dkt. 30) holding

that discovery was needed to flesh this dispute out. After the close of discovery, Simplot sought to Amend its Complaint to remove this claim. Dkt. 308. In its subsequent decision, the Court discussed, *at length*, that what Simplot was seeking—amendment instead of dismissal—was somewhat confusing. Dkt. 323, at 14–27. Ultimately, however, the Court allowed Simplot to remove its trade dress claim and said the parties could address the issue of fees related to that claim at "a later time." *Id*. at 28.

McCain opposes Simplot's request to exclude evidence of this old claim at trial. But it does not object based on substance, but rather perceived fairness. McCain does not disagree that Simplot's prior trade dress claim has little to no relevance as it relates to any issue currently on trial. But it thinks it should be allowed to say that Simplot abandoned this claim if and when Simplot paints McCain out "as a bad actor," or implies McCain filed a lawsuit to harass Simplot.

The Court does not see any relevance between the old trade dress claim and the issues to be resolved at trial. Thus, the Court will not allow any mention of the trade dress claim to the jury.

The Court cannot rule on McCain's fairness argument at this time. The Court does not know how Simplot will portray McCain during trial. But even if Simplot says what McCain thinks it will say, that does not necessarily mean evidence of an old claim comes in. Parties abandon claims all the time, for a variety of reasons. If McCain feels Simplot has "opened the door" regarding its credibility to the point that mention of the trade dress claim would be *relevant*, it must ask the Court outside of the jury's presence to be able to bring it up. And even if allowed, the discussion will be narrow. McCain can say that

MEMORANDUM DECISION AND ORDER - 20

Simplot brought a prior claim that it later abandoned, Simplot can say what it wants in explanation, and the parties will move on. This trial is about design patents, not retaliation or litigation tactics.

6. *To Preclude Any Evidence of, or Reference to, McCain's '540 Patent, PEF Technology, or McCain's '540 Patent Infringement Claim — GRANTED.*

Simplot next asks the Court to prohibit McCain from referencing the '540 Patent or PEF Technology because it has no bearing on the issues in this trial. The Court agrees. After years of litigation, the Court ruled on such issues, which are now on appeal.

The '540 Patent itself, and the litigation surrounding it, are completely irrelevant to the design patents at issue and will not be discussed at trial. PEF technology is a closer call, but again, there are ways to discuss such technology without implicating the '540 Patent.

McCain suggests that this motion is like Simplot's prior motion about the dismissed claim in that it might *need* to address PEF technology with the jury to explain the story and history of this case. The Court disagrees. First, McCain's justification for the prior motion was to rebut potentially negative testimony. That is not present here. Second, McCain's contention that it might need to address PEF technology to help explain the concepts at issue in this case is fine—but this can be done with more generic wording that does not implicate the '540 Patent or that portion of the lawsuit now on appeal.

7. *To Preclude Evidence or Testimony of McCain's Deductible Expenses for Sales of its Twisted Potato – DENIED.*

Here, Simplot asks that the Court prohibit McCain from presenting evidence or testimony regarding any deductible expenses it may have incurred as part of the sale of its

Twisted Potato product. It claims McCain should not be allowed to so argue because McCain did not disclose any deductions during discovery. Simplot argues that no fact or expert witness testified on these matters and, therefore, McCain is estopped from making those arguments at trial.

McCain counters that one of its witnesses did, in fact, testify on this topic and it should be allowed to present such evidence at trial. But the witness McCain references only vaguely said such costs might include "the cost of goods that roll into that as well as transportation costs, shipping, freight." Dkt. 520-2, at 234.[10] This ambiguous and rather generic guess as to what costs might be included is hardly enough to put Simplot on notice of what McCain's *theory* of its deductions are, let alone any actual calculations.

Nevertheless, McCain has stated it had deductions. And there is apparently a joint exhibit (i.e. an exhibit Simplot knows is coming in at trial and has agreed to) that discusses these losses. So McCain can introduce *that* evidence and testimony. But it cannot introduce new evidence. Said another way, the testimony can come in to the degree it was properly disclosed. Simplot will then be free to refute or challenge the weight to be given to that evidence.

8. *To Preclude Any Evidence of Pre-Suit Damages for Alleged Infringement of the '916 Patent – GRANTED*

Simplot requests that the Court prohibit McCain from arguing it is entitled to pre-

---

[10] McCain includes a long string of citations from the deposition, asserting those instances are where the deponent testified "at length about the losses" it sustained. Dkt. 520, at 22. The Court reviewed those eleven citations. Finances (specifically costs and/or deductions) are not discussed in all portions of those cited references. But even when that topic is discussed, it is vague like the cited testimony above.

suit damages for Simplot's alleged infringement of the '916 Patent because it never disclosed any such damages. McCain agrees, noting that it is only seeking damages from the date it filed suit forward. Dkt. 521, at 23. Thus, any argument that McCain is entitled to pre-suit damages will not be allowed.

But like many of its other responses, McCain supposes that Simplot has another motive behind its requests and so reserve the right, "if necessary," to introduce evidence of Simplot's pre-suit sales to show "the full set of facts." *Id*. at 23.

The Court disagrees. If McCain is not seeking pre-suit damages, there is no reason to bring up pre-suit sales. And whatever marginal relevance those sales could have on the "full set of facts" is outweighed by the implication that those sales numbers should be used as part of some determination or calculation at trial.

9. *To Preclude Any Evidence, Opinions, Arguments, or Theories that the Court Excluded in its Daubert Order – GRANTED*

Simplot seeks to exclude anything that is subject to the Court's prior order regarding expert witnesses. McCain confirms it has no intent of violating the Court's order.[11] The Court will follow its prior *Daubert* rulings and expects the parties to do so as well. *See* Dkt. 474, at 104–138.

///

///

---

[11] McCain feigns ignorance, claiming it is "unclear what particular evidence Simplot seeks to preclude . . . ." Dkt. 521, at 23. But Simplot *literally* said what it was referring to—certain testimony from Steven Visser. Dkt. 505, at 21. Regardless, McCain has confirmed it will follow the Court's rulings.

*10. To Preclude McCain from Calling Simplot's In-House Counsel as a Witness –*
   *GRANTED.*

Simplot next asks the Court to preclude McCain from calling Simplot's in-house Counsel, Dr. Vid. Mohan-Ram, to testify at trial. Simplot primarily asserts there is little that McCain could elicit from Mohan-Ram that would not involve confidential or privileged materials, or would not invade the attorney-client and/or work-product doctrines. The Court agrees.

Mohan-Ram is not simply a corporate representative or vacant observer of these proceedings. He has been intimately involved in this litigation for years. Actions he took have been the subject of discovery disputes, *see, e.g.,* Dkt. 253, at 9, 14, and substantive disagreements at summary judgment, *see, e.g.,* Dkt. 474, at 91–97. The Court is not implying this means Mohan-Ram is untouchable from a witness perspective, but rather that calling him would be more akin to calling one of Simplot's (or McCain's) trial attorneys as opposed to an arm's-length "VP of legal affairs."

Now, McCain avers that it only wants to ask Mohan-Ram questions about Simplot's public webpage and that such questions will be harmless and not invade any privileges. But it also admits that there are likely "other witnesses" who could provide the same testimony. Dkt. 520, at 25. If there is another individual who can testify to these matters, there is little reason to complicate things by calling Mohan-Ram.

Finally, Simplot contends that McCain did not list Mohan-Ram in its initial Rule 26 disclosures as a witness who had discoverable information. While McCain does not dispute this, it does claim that Simplot listed Mohan-Ram as the person most knowledgeable about

changes to Simplot's webpage. But just because *Simplot* listed him does not mean *McCain* gets to call him. For starters, the Court does not believe Mohan-Ram's deposition was ever taken on this subject. Although a deposition is not a pre-requisite to testifying at trial, that fact lends credence to the conclusion that McCain's request at this late stage is improper. Furthermore, the Court does not know if McCain ever supplemented its Rule 26 disclosures to include Mohan-Ram.

Under the totality of the circumstances, the Court GRANTS Simplot's motion and will not allow McCain to call Mohan-Ram to testify at trial. The *only* reason the Court would revisit this determination is if McCain could show: 1) it properly notified Simplot of its intent to call Mohan-Ram (preferably in a previously-filed Rule 26 supplement) *and* (2) there was no other witness who could competently testify as to the webpage subject matter. Assuming McCain elects to try that route, the Court will revisit the matter at the final pre-trial conference.

11. *To Preclude McCain from Introducing Testimony or Evidence That it Shielded from Discovery Under the Attorney-Client Privilege – GRANTED in PART and DENIED in PART.*

Finally, Simplot asks that the Court limit one of McCain's witnesses—John Aikens—from testifying on matters that were never fleshed out in discovery because McCain invoked the attorney-client privilege. During Aikens' deposition, McCain's counsel apparently instructed Aikens several times not to answer Simplot's questions based on the attorney-client privilege, or at least to the degree the answer would involve "attorney advice or legal strategy." Simplot asserts McCain cannot shield that testimony from

discovery and then use it at trial.

Again (*see infra* note 11), McCain claims quasi-ignorance, stating that Simplot's "motion is unclear as to what specific testimony [it seeks] to exclude." Dkt. 520, at 26. Yet, McCain then goes on to list the three topics Simplot specifically called out in its motion, and why each is unavailing.

Regardless, McCain does have a point. While Simplot has listed three categories of Aikens' testimony it thinks are problematic—and provided examples within those categories—it is difficult for the Court to rule on these requests at this time as it does not know what testimony will actually be presented at trial and if that testimony will be in the same form as that which was previously objectionable.

The Court recognizes the three categories of testimony that are concerning to Simplot. And the Court affirms McCain cannot use the shield of attorney-client privilege to refuse to answer questions during a deposition and then elicit that information at trial to its advantage. Such would be prejudicial to Simplot. But without hearing the actual testimony, the Court's ruling is preliminary.

In sum, the motion is granted to the extent the Court will not allow McCain to elicit testimony that Simplot did not have a full and fair opportunity to discover. But the motion is denied in the sense that the Court cannot fully adjudicate the request until it hears Aikens' testimony.

///

///

///

# V. CONCLUSION

While this is a complicated case, the subject matter—essentially French Fries—is relatively straightforward. And the average person is likely familiar with general concepts of patenting, designing, and marketing.

The trick in this case will be for counsel to avoid confusing the jury. Whether inadvertently (with legal acumen or difficult intellectual property concepts) or on purpose (to suggest the task is too complicated and the jury should just do as counsel directs) confusion in this case could result in a verdict that does not "line up," and/or a slew of post-trial motions seeking to modify or undue what the jury decided. Counsel's mandate for this trial, then, is to explain the concepts, the disputes, and the potential outcomes in such a manner that the jury can understand and make an informed decision. If the Court needs to address certain issues on the back end, so be it. But counsel is admonished to strive for fairness and clarity in their respective presentations to the jury.

Large issues arose very late in the game here. Simplot's position as it relates to the Sidewinder and what patent (or patents) that product embodies has caused McCain concern. And McCain's decision to address indefiniteness at trial instead of summary judgment has caused Simplot concern. Both situations caused the Court concern. These matters should have been raised and addressed much sooner. But insofar as that did not happen, the Court has ruled today, and the parties need to move forward and continue preparing for trial.

The Court will not bifurcate trial. And, while it has limited certain aspects of each side's presentation via their Motions in Limine to ensure the issues are properly presented,

MEMORANDUM DECISION AND ORDER - 27

it has left the field largely open. But it does so because there are numerous factual disputes (large and small) which are ripe for determination by a finder of fact. Direct and cross-examination will bring the issues into focus and each side will have a fair opportunity to put on its case as it sees fit. The other side will be allowed to poke holes in that case. The jury will then decide.

The parties should study the Court's decision to ensure their presentation stays within the boundaries outlined. Additionally, some of the remaining disputes about certain evidence, testimony, jury instructions, and the verdict form were premised on arguments put forth by the parties in these motions. To the extent the Court's ruling today impacts those disputes, the Parties should work together to resolve (if possible) the issues based upon the Court's rulings herein.

And, as noted, depending on what testimony and evidence is ultimately presented, what foundation is laid, and what arguments are made, the Court *may* modify its holdings as required. Should it appear that the evidence is leading towards a ruling the Court has already made, either party should request a short recess so that the Court and counsel can discuss the matter outside of the jury's presence.

## VI. ORDER

IT IS HEREBY ORDERED:

1. McCain's request to bifurcate (or for additional discovery) is DENIED.

2. McCain's Motion in Limine (Dkt. 489) is GRANTED.

3. Simplot's Motion in Limine (Dkt. 505) is GRANTED in PART and DENIED in PART as outlined above. Motions in Limine Nos. 3, 4, 5, 6, 8, 9, and 10 are

GRANTED. Motions in Limine Nos. 1, 2, and 7 are DENIED. Motion in Limine

No. 11 is GRANTED in PART and DENIED in PART.

DATED: August 10, 2024

David C. Nye
Chief U.S. District Court Judge