UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>McCAIN FOODS USA, INC.,<br><br>    Defendant.<br>_____<br><br>McCAIN FOODS LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY,<br><br>    Defendant. | Case No. 1:16-cv-00449-DCN[1]<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are various pretrial matters. The Court recently issued a decision regarding the parties' formal motions in limine and a large dispute about how trial will proceed. Dkt. 536.[2] However, there are numerous other evidentiary matters, objections,

---

[1] This case involves additional parties—namely Elea Vertriebs-und-Vermarktungsgesellschaft, mbH, and Food Physics LLC. However, because the impending trial does not involve those parties, the Court has removed them from the case caption for simplicity.

[2] A recently filed Motion in Limine from McCain is still outstanding. Dkt. 537.

MEMORANDUM DECISION AND ORDER - 1

and disagreements that require the Court's attention. The Court resolves some of them with this Order.

Motions in limine are designed to streamline trial by settling, in advance, any evidentiary disputes. *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). The Court has wide discretion in ruling on such motions, *see United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991), and the Court can alter or amend any rulings at trial should the evidence or testimony warrant a change. *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## II. DISCUSSION[3]

### A. Damages / Disgorgement

McCain believes the issue of any remedy in this case is equitable and should be decided by the Court, not the jury. Dkt. 491, at 17–18. For this reason, it objects to certain language Simplot has included in its proposed voir dire and proposed jury instructions. And while not spelled out, implicitly included in this objection concerning potential language is an objection regarding the introduction of evidence and testimony about damages in the first instance. Also, McCain prefers the word "remedy" to "damages."

McCain and Simplot have elected to seek the others' profits under 35 U.S.C. § 289 as the measure of infringement damages in this trial. 35 U.S.C. § 289 is titled "Additional remedy for infringement of design patent."

---

[3] For brevity, and due to time constraints, the Court will not reiterate each sides' arguments at great length. The Court will also forgo any background regarding the case itself or the patents at issue assuming the readers' familiarity with the same. For more background, *see* Dkt. 474, at 3–7; Dkt. 536, at 2–4.

McCain points out that the Federal Circuit has held, "if the patentee seeks only equitable relief, the accused infringer has no right to a jury trial." *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1290–91 (Fed. Cir. 2005). Citing two out-of-circuit district court cases[4] that held a claim for damages under § 289 to be equitable, McCain postures that the damages portion of trial—assuming it even occurs—should be in front of the Court, not the jury.[5]

Simplot responds with another Federal Circuit case, *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1290 (Fed. Cir. 2002), wherein a jury award under § 289 was affirmed. It also cites two inter-circuit district court cases where juries determined damages under § 289.[6] Notably, one of those district cases—*Columbia Sportswear*—was appealed. As part of the appellate decision, the Federal Circuit reviewed the *jury* award for damages. To be sure, the Federal Circuit did not come out and say who—the Court or a jury—must determine damages under § 289. But the circuit also did not comment (or even hint) that using a jury was improper. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363 (Fed. Cir. 2023), *cert. denied*, 2024 WL 2262346 (U.S. May 20, 2024). At the very least, Simplot suggests the Court can send the question to the

---

[4] *Shure Inc. v. ClearOne, Inc.*, 2021 WL 4991083, at *1 (D. Del. Oct. 27, 2021) (holding that "disgorgement is an equitable remedy"); *Red Carpet Studios v. Midwest Trading Grp., Inc.*, 2021 WL 1172218, at *2 (S.D. Ohio Mar. 29, 2021) ("[A] claim for damages under § 289 is one for equitable relief.").

[5] Notably, other Courts disagree. *See, e.g., Kitsch LLC v. Deejayzoo, LLC*, 2023 WL 4291445, at *3 (C.D. Cal. May 8, 2023) (holding there was "insufficient authority to support the contention that disgorgement of profits from design patent infringement under 35 U.S.C. § 289 presents a purely equitable issue").

[6] *Apple Inc. v. Samsung Elecs.*, 2018 WL 1586276 (N.D. Cal. Apr. 2, 2018) (giving the question of damages to the jury in a design patent case); *Columbia Sportswear N. Am. Inc. v. Seirus Innovative Accessories, Inc.*, 2018 WL 1805102 (S.D Cal. Apr. 17, 2018) (jury awarding over $3 million under 35 U.S.C. § 289).

MEMORANDUM DECISION AND ORDER - 3

jury in an advisory capacity under Rule 39.[7]

While there are cases indicating that disgorgement of profits is an equitable remedy, there are also cases indicating it is not. Additionally, there is authority from the Federal Circuit supporting—albeit implicitly—the idea that the question of damages under § 289 can be presented to a jury for consideration. Thus, without formally deciding the matter, the Court finds that sending the question of damages to the jury in this case is proper.

And from a judicial economy standpoint, following such a procedure makes the most sense because *both* the Court and the jury will hear the relevant testimony. Thus, even if the Court then finds some reason to set aside the jury's award (or a higher court rules the jury award should not be considered), the Court will not have to rehear the evidence and testimony; it can simply decide. And the opposite is even more important: if the Court were to excuse the jury and decide the issue itself, and then change its mind (or if a higher court were to rule the jury should have decided the matter), then the Court would have to reconvene the prior jury or empanel a whole new jury. Thus, all things considered, the more economical thing to do is send the issue to a jury.[8] At a *minimum*, the jury's determination could be advisory.

Assuming infringement (and no invalidity) is found, the issue of disgorgement will be evaluated by a jury. As far as what to call it, the Court does not see a material difference

---

[7] Federal Rule of Civil Procedure 39(c)(1) outlines that, "in an action not triable of right by a jury, the court, on motion or its own may try any issue with an advisory jury").

[8] This is consistent with Rule 1 of the Federal Rules of Civil Procedure, which requires the Rules to be construed, administered, and employed by the Court in a manner to secure the just, speedy, and inexpensive determination of every action.

MEMORANDUM DECISION AND ORDER - 4

between the term "remedy" and "damage." To be sure, the term in § 289 is "remedy," but "damages" is the more commonly used term, and the Court will use that throughout its instructions.

### B. Voir Dire

Prior to voir dire, the parties would like the Court to read a short statement of the case. The Court will not read the statement *prior* to voir dire, but during voir dire to give prospective jurors a brief insight into what this case is about to ascertain whether they have any connection to the case.

The parties dispute whether to use the word damages or remedies in that statement. McCain also claims to dispute the inclusion of any statements summarizing which products are involved. Dkt. 520, at 5. However, the proposed voir dire paragraph does not include such examples. A proposed pre-evidence instruction includes summaries about the products (and McCain objects to those as well). Insofar as the Court has determined damages will go the jury (and that "damages" is the term it will use) those phrases will be included in the statement. McCain has also redlined some language about design patents, but the Court finds that language helpful. The paragraph that will be included in voir dire (likely question no. 6) will be as follows:

> This is a case involving a commercial dispute between two companies: Simplot and McCain. Both companies market food products, including frozen potatoes for commercial and home use. The case involves what are called "design patents" which are legal documents that give protection to the inventor of a particular design for a product. In this case, Simplot and McCain accuse each other of infringing the other's design patent. Both parties deny that they infringe the other's design patent and further contend that other party's design patent is invalid. The jury in this case will be asked to decide whether one party's product infringes the other party's patent, what

MEMORANDUM DECISION AND ORDER - 5

damages should be awarded, and if the patents are invalid.

### C. Jury Instructions

The Court's standard practice is to hold both an informal and a formal jury instruction conference near the end of the case to determine which post-evidence instructions should be given. The Court holds these conferences at that stage of the trial because experience has shown it is better to evaluate the importance (and form) of post-evidence instructions *after* seeing what evidence and testimony is admitted over the course of trial. The Court intends to do that in this case. So those objections and disagreements are held for a later time. The Court would note, however, that it prefers to use model instructions where possible. In the event that the Ninth Circuit does not have a model instruction on point, it will likely use the IPO Model Design Patent Jury Instructions.

That said, the parties have some pre-evidence instruction disagreements that need to be resolved prior to the first day of trial. However, the Court has issued multiple decisions now that may affect the parties' respective positions. The Court, therefore, asks that the parties meet and confer on the *pre-evidence* instructions and send *an email* to the Court's law clerk indicating which are still in disagreement. To be clear, there is no need to file additional briefing, simply a list of which instructions are still in dispute.[9]

### D. Witnesses

*1. Testimony by Deposition/Designations*

McCain has indicated it may call Bruce Walker, Matthew Petersen, Steven Vernon,

---

[9] Similarly, considering the Court's prior ruling (Dkt. 539) and this Order, some of the parties' disagreements regarding post-evidence instructions may be moot. The parties should review those as well.

MEMORANDUM DECISION AND ORDER - 6

Vid Mohan-Ram, and Allen Neel to testify at trial by deposition. Dkt. 496. Simplot objects to any of those witnesses being called by deposition. Should they be called by deposition, Simplot has also filed objections and counter-designations to McCain's designations.

Simplot has indicated it may call Michael Baughman, Samantha Melson, and David Rogers by deposition at trial.[10] Dkt. 508. McCain has not objected outright to Simplot calling these individuals by deposition, but it has objected to Simplot's designations and supplied counter-designations of its own.

In general, *absent a stipulation between the parties* or compliance with Federal Rule of Civil Procedure 32(a)(4), the Court prefers that witnesses testify live at trial. In this case, the Court does not have any evidence before it regarding why these individuals could not testify in person during trial. Again, McCain has not objected to Simplot calling certain witnesses by deposition. Once McCain confirms its non-objection is essentially a stipulation, the Court will adjudicate the designation disagreements as to those witnesses preparatory for them testifying via deposition at trial.

Simplot *has* objected to McCain calling Walker, Petersen, Vernon, Mohan-Ram, and Neel by deposition. The Court has already ruled that McCain cannot call Mohan-Ram (unless certain criteria are met). Dkt. 536, at 24–25. As for the others, McCain has not explained why these individuals could not testify live. Walker, Petersen, and Neel live in the Treasure Valley. They are within the Court's subpoena power and not otherwise

---

[10] Simplot has indicated others it might call by deposition at trial but explains that, in light of the fact that McCain will call those persons to testify live, it would prefer to go that route. As explained, the Court prefers live testimony as well.

MEMORANDUM DECISION AND ORDER - 7

unavailable. *See* Fed. R. Civ. P. 32(a)(4). Furthermore, Simplot has indicated it will be calling Walker and Petersen to testify live at trial and may call Neel as well. It has agreed to make all three available for McCain. And while Vernon lives in Washington, Simplot has stated it may call him to testify *and* that it would make him available should McCain call him to testify.

Unless and until McCain can show that these witnesses are unavailable, the Court expects them to testify live.

### 2. Haas

Simplot has objected to McCain calling David Haas, McCain's damages expert, on rebuttal because Hass did not file a rebuttal report. Dkt. 523, at 14–15. It is not clear to the Court where things stand on this disagreement. In general, Simplot is correct—experts can testify only as to things that were properly and timely disclosed. But McCain references a "supplemental report" by Haas and also states that Hass is waiting for Simplot's expert to respond to that supplement before Hass provides another supplement. Dkt. 491, at 11. Whether either of those supplements are "rebuttals" is not clear.

In short, the Court agrees with Simplot's general proposition, but the actual situation may not fit that conclusion.

### E. Other Matters

Simplot asserts that McCain has included multiple exhibits on its list related to the '540 Patent. As the Court noted in its recent order, the '540 Patent is irrelevant to the issues at this upcoming trial. Dkt. 536, at 21. Accordingly, any exhibits related to the '540 Patent

should be excised from the parties' lists.[11]

In like manner, some of McCain's exhibits apparently reference Elea. Elea is a third-party in this suit. But Elea's involvement is related to the '540 Patent. Thus, as above, exhibits related to Elea are not relevant and should not be included on any exhibit list.

### III. ORDER

Disgorgement will go to the jury. The parties should be prepared to address that at trial. Instructions, the verdict form, etc. should include disgorgement (styled as "damages").

If there is a stipulation between the parties as to any witness testifying by deposition, the Court will allow the same.[12] Otherwise, however, the moving party will have to show that particular witness is unavailable and get a ruling from the Court before it can proceed by deposition. Such a request should be done as soon as possible.

DATED: August 13, 2024

_____
David C. Nye
Chief U.S. District Court Judge

---

[11] As the Court outlined, *if* the parties need to refer to the '540 Patent or PEF technology as part of any background or history, they can do so vaguely without reference to this litigation or specific exhibits. *Id*.

[12] McCain shall confirm whether its non-objection to Simplot calling certain witnesses via deposition is the same as a stipulation to the same. It may do so via email to the Court's law clerk.

MEMORANDUM DECISION AND ORDER - 9