Dana M. Herberholz, ISB No. 7440
Jordan L. Stott, ISB No. 9820
Payton George (*pro hac vice*)
DORSEY & WHITNEY LLP
101 S. Capitol Boulevard, Suite 1100
Boise, ID 83702
Telephone: (208) 617-2550
Email: herberholz.dana@dorsey.com
         stott.jordan@dorsey.com
         george.payton@dorsey.com

Attorneys for J.R. Simplot Company

Brian M. Buroker (*pro hac vice*)
Anthony David Brzozowski, II (*pro hac vice*)
GIBSON, DUNN & CRUTCHER, LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: (202) 955-8500
Email: BBuroker@gibsondunn.com
         DBrzozowski@gibsondunn.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| J.R. SIMPLOT COMPANY,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>McCAIN FOODS USA, INC.<br><br>　　　　　　　　Defendant. | Case No. 1:16-cv-00449-DCN<br><br><br>**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285**<br><br><span style="color:red">**REDACTED COPY**</span> |
| McCAIN FOODS LIMITED,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>J.R. SIMPLOT COMPANY,<br><br>　　　　　　　　Defendant. | |
| J.R. SIMPLOT COMPANY,<br><br>　　　　　　　　Third-Party Plaintiff,<br><br>v.<br><br>ELEA VERTRIEBS-UND-VERMARKTUNGSGESELLSCHAFT, MBH; FOOD PHYSICS LLC,<br><br>　　　　　　　　Third-Party Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

BACKGROUND AND PROCEDURAL HISTORY.......................................................2

I.      THE '540 PATENT ..............................................................................................2

II.     THE PARTIES' INFRINGEMENT CLAIMS & THE ACCUSED PEF
SYSTEMS..............................................................................................................3

III.    CLAIM CONSTRUCTION OF THE '540 PATENT ...........................................4

IV.   DISCOVERY, DISPOSITIVE MOTIONS, AND JUDGMENT OF INVALIDITY..........5

LEGAL STANDARDS .....................................................................................................6

ARGUMENT ....................................................................................................................8

I.      SIMPLOT IS THE PREVAILING PARTY ........................................................8

II.     THIS CASE IS EXCEPTIONAL .........................................................................8

        A.     McCain's Infringement Claim Was Exceptionally Weak and Confirmed
That the '540 Patent Was Invalid....................................................................8

                1.     McCain Knew, Or Should Have Known, That The '540 Patent Did
Not Cover PEF Treatment ..................................................................9

                2.     McCain Filed An Objectively Baseless Infringement Claim ....................11

        B.     McCain Filed Its Retaliatory Claims To Harass And Burden Simplot..................13

        C.     McCain Litigated its '540 Patent Infringement Claim in an Unreasonable
Manner and Prolonged the Litigation Unnecessarily.............................................15

                1.     McCain's Shifting and Contradictory Claim Construction Theories ........15

                        (a)    Electroporation and reduced cutting resistance ................ 15

                        (b)    "Cooking" and "cutting" steps......................................... 16

                        (c)    Inconsistent positions before the USPTO and this
Court ............................................................................... 17

                2.     McCain's Unnecessary and Wasteful Discovery Tactics ........................18

i

ii

III.    THE COURT SHOULD AWARD SIMPLOT ITS ATTORNEYS' FEES ..........19

A.    The Hourly Rates of Simplot's Counsel Were Reasonable ...................................22

    1.    The Hourly Rates of Simplot's Idaho Counsel Were Reasonable.............22

    2.    The Requested Rates for Simplot's National Counsel Are
          Reasonable ................................................................................................23

B.    The Hours Worked Were Reasonable....................................................................25

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acqis, LLC v. Emc Corp.*,
No. 14-cv-13560-ADB, 2024 U.S. Dist. LEXIS 253600
(D. Mass. Mar. 6, 2024) .................................................................................................25

*AdjustaCam, LLC v. Newegg, Inc.*,
861 F.3d 1353 (Fed. Cir. 2017) ........................................................................................7

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ......................................................................................15

*Bayer CropScience AG v. Dow AgroSciences LLC*,
851 F.3d 1302 (Fed. Cir. 2017) ........................................................................................7

*Bouttier v. Weiser Memorial Hospital*,
No. CV44-25-0201 (November 17, 2025) .......................................................................22

*Bundy v. St. Luke's Health Sys.*,
No. 1-23-cv-00212-DCN, 2023 U.S. Dist. LEXIS 198153
(D. Idaho Nov. 2, 2023) ..................................................................................................22

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ..........................................................................................23

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987)........................20, 25

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
858 F.3d 1371 (Fed. Cir. 2017) ......................................................................................13

*Edmo v. Corizon, Inc.*,
97 F.4th 1165 (9th Cir. 2024) ....................................................................................19, 20

*Eon Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ......................................................................................19

*Farrar v. Hobby*,
506 U.S. 103 (1992) ..........................................................................................................8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
No. 2:20-CV-2766-JPM-TMP, 2023 U.S. Dist. LEXIS 159642
(W. D. Tenn. Sept. 8, 2023) ............................................................................................23

*Highmark, Inc. v. Allcare Health Mgm. Sys., Inc.*,
  687 F.3d 1300 (Fed. Cir. 2012)......................................................................................7

*Homeland Housewares, LLC v. Sorensen Rearch & Dev. Tr.*,
  581 F. App'x 877 (Fed. Cir. 2014) ...............................................................................19

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
  112 F. Supp. 3d 888 (D. Minn. 2015), *aff'd*,
  No. 2016-1047, 2017 U.S. App. LEXIS 16240 (Fed. Cir., Aug. 25, 2017) ......................13, 14

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ........................................................................................20

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
  745 F. App'x 153 (Fed. Cir. 2018) ...............................................................................19

*Lendingtree, Ltd. Liab. Co. v. Zillow, Inc.*,
  No. 3:10-cv-00439-FDW-DCK, 2014 U.S. Dist. LEXIS 203689
  (W.D.N.C. Dec. 8, 2014) ..............................................................................................24

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
  811 F.3d 479 (Fed. Cir. 2016).......................................................................................7

*Midwest Ath. & Sports All. LLC v. Ricoh USA, Inc.*,
  No. 2:19-cv-00514-JDW, 2023 U.S. Dist. LEXIS 67309
  (E.D. Pa. Apr. 18, 2023) ...............................................................................................18

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .....................................................................................25

*Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., Ltd. Liab. Co.*,
  No. 4:16-cv-00427-DCN, 2018 U.S. Dist. LEXIS 83875
  (D. Idaho May 15, 2018)...............................................................................................22

*Nova Chems. Corp. v. Dow Chem. Co.*,
  856 F.3d 1012 (Fed. Cir. 2017)......................................................................................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..................................................................................................7, 8

*Phigenix, Inc. v. Genentech Inc.*,
  No. 15-cv-01238-BLF, 2019 U.S. Dist. LEXIS 105371
  (N.D. Cal. June 24, 2019) .............................................................................................20

*Reiffin v. Microsoft Corp.*,
  214 F.3d 1342 (Fed. Cir. 2000)......................................................................................9

*In re Rembrandt Techs. LP Patent Litig.*,
899 F.3d 1254 (Fed. Cir. 2018)......................................................................................7

*Roma Landmark Theaters LLC v. Cohen Exhibition Co. LLC*,
C.A. No. 2019-0585-PAF, 2021 Del. Ch. LEXIS 262 (Del. Ch. Nov. 8, 2021) ..................... 25

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
707 F. Supp. 2d 737 (N.D. Ohio 2010).........................................................................22

*Site 2020 Inc. v. Superior Traffic Servs., LLC*,
No. CV 21-63-M-DLC-KLD, 2024 U.S. Dist. LEXIS 239604
(D. Mont. Oct. 25, 2024)............................................................................................24

*SSL Servs., LLC v. Citrix Sys.*,
769 F.3d 1073 (Fed. Cir. 2014)....................................................................................8

*In re TransPerfect Global, Inc.*,
2021 Del. Ch. LEXIS 86, 2021 WL 1711797 (Del. Ch. Apr. 30, 2021) ................................25

**Statutes**

35 U.S.C. § 112...................................................................................................2, 6

35 U.S.C. § 285...................................................................................................7, 8

**Other Authorities**

Fed. R. Civ. P. 1.......................................................................................................9

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

The Court should award Simplot the substantial attorneys' fees it incurred defending against McCain's objectively unreasonable and retaliatory utility patent infringement claim and its litigation abuse throughout this nine-year old case. This lawsuit started when McCain launched its Twisted Potato product that infringed a Simplot design patent. Simplot sued right away to stop the infringing design from harming Simplot's Sidewinder sales and to prevent McCain from driving down Simplot's prices and diminishing the value of Simplot's patent. Simplot made clear to McCain that it was willing to drop its lawsuit if McCain promised to stop selling its infringing Twisted Potato in the United States. McCain refused. Instead, it retaliated with a global attack, suing Simplot for utility and design patent infringement and attacking Simplot patents having nothing to do with this case in various tribunals throughout the world. Simplot prevailed decisively in those disputes, including this one. Although McCain should have known its claims would fail in the end, McCain achieved its goal of tying Simplot up for a decade in nuisance litigation and burdening Simplot with millions of dollars in defense costs.

Here, in response to Simplot's design patent infringement complaint, McCain dusted off an old utility patent that lacked any clear objective boundaries. It leveraged that patent's indefiniteness to argue it covered electrically treating potatoes before cutting at field strengths McCain knew it did not invent. For the next nine years, McCain kept its claim alive with conflicting positions on claim construction, infringement, and invalidity, knowing that its counter-asserted utility patent could not be both valid and infringed. On top of that, McCain faced almost no financial exposure. So, it raised the stakes by demanding hundreds of millions in damages and treating this case as a lottery ticket, understanding it was unlikely to win, but if it did, it would win big. Simplot prevailed, but not before McCain saddled Simplot with years of fees.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 – 1**

The Patent Act empowers the Court to order McCain to pay Simplot's fees and find this case "exceptional." The Court need only find that the case "stands out from others" because McCain's claims were weak or because McCain litigated it unreasonably. Both are true. McCain asserted an objectively baseless infringement claim on a plainly invalid patent and maintained that claim in bad faith. McCain's conduct was exceptional, and the Court should award fees to Simplot.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    THE '540 PATENT

U.S. Patent No. 6,821,540 (the "'540 patent") is generally directed to a process for treating vegetables and fruit with a "high electric field" to reduce their resistance to cutting. *See* '540 patent (Dkt. 330-10) at 4:35-62. The patent does not define "high electric field" but discloses two "examples": (1) applying an electric field of 65 Volts per centimeter (V/cm) for 5 seconds; and (2) applying an electric field of 45 V/cm for 3 seconds. *Id.*, 3:19-32. Both examples are limited to treating potatoes. *See* Dkt. 332-1 at ¶¶29-30. The Patent Examiner relied on these two examples in allowing the Asserted Claims. *See* Dkt. 330-30. The electric field is "preferably" "between 30 and 75 V/cm approximately, and the processing period between 1 and 10 seconds approximately," but the "optimal conditions" must be "experimentally determined." '540 patent at 4:23-32. The specification makes no mention of electric field strengths outside of 30 to 75 V/cm or applying an electric field for less than 1 second or more than 10 seconds. *Id; see* '540 patent *generally*.

The '540 patent issued with six claims. McCain sued Simplot for infringing claims 1, 4, 5, and 6, but many claims were invalid on their face for violating 35 U.S.C. 112, ¶5. As a result, Simplot moved for Judgment on the Pleadings (Dkt. 104) and McCain disclaimed claims 3-5. *See* Dkt. 106 at p. 20. By the time dispositive motions were filed, McCain's infringement claim was limited to claims 1 and 6 (collectively, the "Asserted Claims") of the '540 patent.

## II.    THE PARTIES' INFRINGEMENT CLAIMS & THE ACCUSED PEF SYSTEMS

This lawsuit started in October 2016 when Simplot sued McCain for infringing U.S. Design Patent No. D640,036. After McCain launched its infringing Twisted Potato in the United States, Simplot filed its complaint for design patent infringement. Before Simplot even served the complaint, Simplot reached out to McCain in an effort to resolve the dispute. It informed McCain that it simply wanted McCain to stop selling Twisted Potatoes and that it would consider dropping the lawsuit altogether if McCain committed to do so. *See* Dkt. 576 (Trial Tr.) at 272:6-278:13. McCain fired back with a complaint filed in Illinois. McCain's case was transferred and consolidated with this one. *See* Dkt. 40.

In its retaliatory suit, McCain sued Simplot for infringing one if its own design patents, U.S. Patent No. D720,916 ("'916 patent), and the '540 patent. Both claims lacked merit. McCain's '540 patent claim was dismissed on summary judgment (Dkt. 474) and summarily affirmed on appeal (Dkt. 594), and McCain's '916 patent claim was rejected by the jury at trial (Dkt. 568).[1]

McCain asserted that Simplot directly infringed claims of the '540 patent by using processing systems that use pulsed electric fields ("PEF") to treat potatoes as part of a process for making French fries and other frozen potato offerings. *See* Illinois Complaint (Dkt. 77-4). Those systems (the "Accused PEF Systems") were designed and manufactured by a third-party, Elea, and sold to numerous companies, including Simplot, McCain, and other French fry processors. McCain alleged that the PEF systems infringed its patent by opening pores in cells of the potatoes to remove water and thereby soften the potatoes. *Id.* at ¶¶20-23. *Cf.* '540 patent, 2:44-50 ("The application of a high electric field… [has] the effect of softening which is favourable to shear cutting …."'").

---

[1] This motion is limited to Simplot's request for fees in connection with the '540 Patent, as the portion of the case concerning the design patents is currently awaiting resolution of post-trial motions (Dkts. 583, 584). Simplot reserves its right to seek its attorneys' fees and costs for that portion in accordance with the Court's Order Regarding Briefing Schedule (Dkt. 572).

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 3**

The electric field strength of the Accused PEF Systems (1,000V/cm to 1,400V/cm) is orders of magnitude higher than the field strengths of the two examples disclosed in the '540 patent (45V/cm and 65V/cm). Order (Dkt. 474) at 17, 47-48. The treatment time of the Accused PEF Systems (1/100,000th of a second) is orders of magnitude shorter than the treatment time disclosed in the '540 patent (3-5 seconds). *Id.*; Dkt. 58 at ¶4. And while the '540 patent discloses using a low, alternating frequency ('540 Patent, 3:19-20), the Accused PEF Systems apply direct current. *See*, Illinois Complaint at ¶¶23-24. Because of these differences in operation, McCain had no choice but to insist on a broad claim construction of "high electric field" that McCain knew was untethered to the field strengths, treatment duration, and type of treatment disclosed in the patent. It demanded a construction of "high electric field" that extended well beyond the examples in the patent and to any electric field "strong enough" to make any fruit or vegetable "easier to cut."

## III.    CLAIM CONSTRUCTION OF THE '540 PATENT

In August 2018, the Court entered its Memorandum Decision and Order (Dkt. 69), construing the disputed terms of the Asserted Claims. In its Order on Claim Construction, the Court expressed concern that "under the current language [proposed by McCain] a third-party would have a difficult time understanding the bounds of the '540 patent." Dkt. 69 at 23. But the Court deferred consideration of indefiniteness until summary judgment. *Id.* Initially, it construed "high electric field" as "an electric field between 30 and 75 V/cm." *Id.* at 29. Simplot moved for summary judgment of non-infringement based on that construction (Dkt. 77), and McCain moved for reconsideration (Dkt. 70). In its January 2019 Order, however, the Court mooted Simplot's motion for summary judgment by granting McCain's motion for reconsideration and reversing its construction of "high electric field" in favor or McCain's broad and functional construction: "an electric field strong enough to make the vegetable and/or fruit easier to cut." Dkt. 86 at 11. It also affirmed that it would consider its concerns about indefiniteness at a later date. *Id.* at 10.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 4**

One of the many problems with McCain's proposed construction was that '540 patent does not describe how "strong" the electric field must be to be "strong enough" to constitute a "high electric field" or when a fruit or vegetable becomes sufficiently "easier to cut" or how to go about measuring ease of cutting. Those terms are entirely subjective, rendering the Asserted Claims indefinite. Simplot raised these concerns during claim construction (*see* Dkt. 57 at 22-23), and the Court ultimately agreed, finding the claims invalid for indefiniteness on summary judgment.

## IV.  DISCOVERY, DISPOSITIVE MOTIONS, AND JUDGMENT OF INVALIDITY

As summarized by the Court, McCain pursued its broad construction of "high electric field" because "McCain did not want [the disclosed] range to be limiting on them" because that range "pales in comparison to the range Simplot uses." Order (Dkt. 474) at 47-48. But McCain's limited disclosure was insufficient to inform a POSA of the metes and bounds of a "high electric field." *Id.* As detailed below, McCain's own expert admitted that the limited examples disclosed in the '540 patent were insufficient and may not even work.

Nevertheless, McCain pressed its infringement claim on a patent that it knew or should have known was invalid. It demanded over $100 million in damages, plus treble damages and attorneys' fees. Wielding these demands, McCain dragged Simplot through years of litigation where the parties produced hundreds of thousands of pages of documents and took more than 20 depositions related to McCain's '540 patent infringement claim. Stott Decl., ¶2.

In January 2022, after the close of discovery, Simplot filed its Renewed Motion for Partial Summary Judgment of Non-Infringement or, in the Alternative, Invalidity of the '540 patent. Dkt. 330. On January 3, 2024, the Court entered its 141-page Memorandum Decision and Order holding, among other things, that the '540 patent was invalid for indefiniteness, lack of written description and lack of enablement under 35 U.S.C. § 112. Order (Dkt. 474) at 43-60, 140. The Court noted, "McCain cannot have it both ways: it cannot argue for a broad construction of claim

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 5**

terms in support of its infringement case, but then argue those same terms should be construed more narrowly to avoid invalidity." *Id.* at 60. The Court summarized that "high electric field" "is indefinite because it has no objective bounds and is virtually impossible to measure." *Id.* at 54. The Court went on to explain that, "[w]ithout more specific direction, there is no way a person would know what 'high' means within the confines of the '540 patent and what the patented claims actually protect." *Id.*at 48. Likewise, the construction's focus on "easier to cut" lacked clear boundaries. As the Court held "it is not clear what amount of 'ease' must be present (and how to measure that ease) to ensure the product has, in fact, become 'easier to cut.'" *Id.* at 50.

The Court also held that "under conditions" was indefinite because "a POSA would have to guess what 'conditions' are required to accomplish the claimed invention." *Id.* at 54. Similarly, "almost zero" and "sufficiently low" failed to "provide clear notice of what is protected." *Id.* at 57. In April 2024, the Court entered its Final Judgment regarding the '540 patent (Dkt. 484).

McCain appealed. After a full round of briefing, the Federal Circuit held oral argument and, a mere three days later, it needed only one sentence to summarily affirm this Court's Judgment and indefiniteness holding.[2] Dkt. 594. On March 16, 2026, the Federal Circuit issued its Mandate, which triggered Simplot's ability to file this motion for attorneys' fees in this Court. Dkt. 595. Simplot timely filed this Motion. *See* Order (Dkt. 598).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 54(d) and Dist. Idaho Loc. Civ. R. 54.2 permit a party to move for recovery of attorneys' fees. Under 35 U.S.C. § 285, courts have discretion to award reasonable attorneys' fees to the prevailing party in "exceptional" patent cases. "[A]n 'exceptional'

---

[2] Simplot also prevailed at trial in Canada and successfully invalidated the Canadian counterpart to the '540 patent. After giving McCain an opportunity to argue, the Federal Court of Appeal in Canada ruled from the bench and affirmed the trial court's judgment and dismissed McCain's appeal without even hearing from Simplot's counsel. Stott Decl., ¶5, Exh. 6.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 6**

case is simply one that stands out from others with respect to" either (a) "the substantive strength of a party's litigating position," considering both the governing law and the facts of the case, or (b) "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014).

Courts evaluate exceptionality on a case-by-case basis, considering the totality of the circumstances. *Id*. These "may include frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018) (citation omitted). Exceptionality may arise when a party's "litigation position [i]s baseless" or when it litigates in an "unreasonable manner." *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017). Courts have found cases exceptional when a party "advance[es] frivolous arguments during the course of the litigation,"[3] "prolong[s] the litigation in bad faith,"[4] or litigates "in the face of evidence that contradicted" a position.[5]

Section 285 "imposes no specific evidentiary burden, much less [] a high one," and the prevailing party need only establish entitlement to attorneys' fees by a preponderance of the evidence. *See Octane Fitness*, 572 U.S. at 557-558. A party's conduct need not be "independently sanctionable" under Federal Rule of Civil Procedure 11 for a case to qualify as "exceptional." *Id.* at 555. Instead, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. On appeal, "all aspects of a district court's § 285 determination" are reviewed for abuse of discretion. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 482 (Fed. Cir. 2016) (citation omitted).

---

[3] *Highmark, Inc. v. Allcare Health Mgm. Sys., Inc.,* 687 F.3d 1300, 1316 (Fed. Cir. 2012).
[4] *Id.*
[5] *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017).

## ARGUMENT

### I.    SIMPLOT IS THE PREVAILING PARTY

Simplot is the "prevailing party" for purposes of 35 U.S.C. § 285 and Rule 54(d). To qualify as the "prevailing party," Simplot must merely show that it "obtained relief on the merits [that] materially alters the legal relationship" of the parties. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). "A party does not need to prevail on all claims to qualify as the prevailing party." *SSL Servs., LLC v. Citrix Sys.,* 769 F.3d 1073, 1086 (Fed. Cir. 2014). Simplot prevailed on its invalidity claim, mooting McCain's '540 patent infringement claim. In fact, the Court agreed that the patent was invalid on all § 112 grounds asserted by Simplot: indefiniteness, lack of written description, and lack of enablement. This materially alters the legal relationship between the parties.

### II.    THIS CASE IS EXCEPTIONAL

#### A.    McCain's Infringement Claim Was Exceptionally Weak and Confirmed That the '540 Patent Was Invalid

The "substantive strength of a party's litigating position can—i.e., whether it is objectively baseless—independently support an exceptional-case determination." *Nova Chems. Corp. v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017) (*citing Octane Fitness*, 572 U.S. at 553). Here, McCain asserted an objectively baseless infringement claim premised upon a hopelessly invalid patent. On top of the indefinite terms, "under conditions," "almost zero," and "sufficiently low," McCain pressed a broad, limitless, and unsupported construction of "high electric field" that only exacerbated the invalidity of the Asserted Claims. *See* Order (Dkt. 474). Despite its duty to "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, McCain prolonged its claim with contradictory positions on infringement and invalidity, drove up costs, and wasted the resources of Simplot and the Court in the process. This case is exceptional.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 8**

### 1. McCain Knew, Or Should Have Known, That The '540 Patent Did Not Cover PEF Treatment

When it filed this lawsuit, McCain knew exactly how the Elea PEF Systems operate because McCain uses the same systems to treat potatoes in its own plants. *See* Dkt. 330-24 at 13. Accordingly, it knew that the Elea PEF Systems apply microsecond pulses of *direct current* in the strength range of 1000-1400 V/cm. It also knew that its '540 patent came nowhere close to disclosing field strengths and treatment times of those magnitudes. Instead, the patent disclosed only two examples of applying substantially lower *alternating current* electric fields for substantially longer periods of time. *See* Stott Decl., Exh. 1. McCain filed this lawsuit anyway.

As this Court recognized, a patent is invalid when the claims "overreach the scope of the inventor's contribution to the field of art as described in the patent specification." Order (Dkt. 474) at 58 (citing *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). That was the case here for at least three reasons. First, McCain sought to capture "*every* possible iteration for reducing cutting resistance for all fruits and vegetables, using any and all electric fields, for any period of time, and under any and all conditions." *Id.* at 59. But McCain never invented technology that broad. Leading up to the filing of the patent, McCain experimented with treating potatoes for ▮ seconds with field strengths between ▮ and ▮ V/cm, and then ▮ V/cm for ▮ seconds. *See* Dkt. 332-20 at SIMP_TXLN_000180; Dkt. 60. These are in line with the parameters disclosed in the '540 patent. But as the Court correctly found, "there is nothing in the record to indicate that McCain thought this process would be utilized *outside* of those specific parameters." Order (Dkt. 474) at 59 (emphasis in original). McCain's invention records are devoid of any evidence that McCain tested, much less invented, treating *any* fruit or vegetable with a pulsed electric field of 1000-1400 V/cm (20 to 30 times higher than the examples disclosed in the patent)

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 9**

for microsecond bursts (hundreds of thousands of times shorter than the examples disclosed in the patent). In fact, McCain documented that ███ V/cm was "too high." Dkt. 60 at MCID003640.

Second, McCain did not even "discover" the PEF technology it claims to have invented and disclosed in the '540 patent until years *after* it filed for the patent. Dkt. 332-1 at ¶19. In a document prepared in 2009, McCain confirmed that its testing in the late 1990s leading up the filing of its patent application in 2001 was with "███████████████]." *Id.* But after that testing, McCain recorded that ███████████████████████ ████████████ Stott Decl., Exh. 2 at MCID007635. Even then, it was not McCain who discovered or invented PEF treatment of fruits and vegetables. McCain hired PEF experts, Dr. Knorr and Dr. Topfl at the University of Berlin, to evaluate whether PEF systems they developed could be employed in McCain's plants to treat potatoes. *Id.* at MCID007643.

Third, more than a decade before McCain filed its infringement claim, Dr. Topfl informed McCain that PEF is outside the scope of the '540 patent and that ██████████ ██████████████████████████████████. Dkt. 386, Exh. A. These differences prompted McCain and Dr. Topfl to ██████████████████ ████████████████████████████████████ ██████████████████████████.[6] Dkt. 366 at SOF 28. ███████ ███████████ – six years after McCain filed the '540 patent application. *Id.* at SOF 29. McCain's ████████████████████████████ in 2006 reinforces that McCain knew that the '540 patent did not protect those methods. It was objectively unreasonable for McCain to claim otherwise in its infringement claim against Simplot.

---

[6] ███████████████████████████████████████████████████.

### 2.     McCain Filed An Objectively Baseless Infringement Claim

Anchoring McCain's meritless infringement claim based on a plainly invalid patent was its construction of "high electric field." Knowing that it could not assert a good faith infringement claim against Simplot if "high electric field" was limited to the field strengths disclosed in the patent, McCain urged the court to adopt a broad and functional interpretation. It claimed that a patent directed to processing potatoes with a specific field strength range for a specific time range and under specific conditions extended to treating *any* fruit and vegetable with *any* electric field for *any* amount of time and under *any* conditions, so long as the fruit or vegetable became "easier to cut" without too much temperature increase.

McCain's construction injected even more ambiguity and indefiniteness into the claims, reinforcing their invalidity. The patent does not define "reduced cutting resistance," "easier to cut," or describe "what amount of 'ease' must be present (and how to measure that ease) to ensure that the product has, in fact, become 'easier to cut.'" Order (Dkt. 474) at 50. Instead, as the Court recognized, "easier" is "completely arbitrary and subjective" and results in a claim that is "unintelligible and circular." *Id.* at 53-54. McCain argued that a POSA could experiment with various processing conditions until they eventually found an electric field "high" enough to make a fruit or vegetable "easier to cut." But the Court confirmed that such trial-and-error testing failed to satisfy the statutory requirement of enablement. *See id.* at 57-60.

More problematic for McCain were the admissions from its own expert, Dr. Floros, who could not identify any objective boundaries for "easier to cut." Despite claiming that the '540 patent teaches others how to use any electric field, Dr. Floros admitted that █████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 11**

███████████████████████████████████████████████████████████

███████████ *See* Dkt. 332-1 at ¶¶82(i)-(iv), 85(iii). In fact, Dr. Floros testified that it ████

██████████████████████████████████████████████. *Id.* at ¶85(ii).

The Federal Circuit exposed the indefiniteness of "high electric field" and "easier to cut" during oral argument, forcing McCain to concede that it "never pointed to any expert testimony about what it means to be easier to cut." Stott Decl., Exh. 3 at 22:43-50. McCain argued it did not need such testimony because it would be "easy" for a POSA to determine whether something is "easier to cut." *Id.* at 22:52. As Judge Hughes remarked, "[t]hat's just conclusory." *Id.* at 23:04.

McCain's construction of "high electric field" also read "high" completely out of the Asserted Claims. But, as the Court confirmed, "high" is presumed to have meaning and "cannot be unlimited." Order (Dkt. 474) at 48. The term is relative. "Something is high (or low) as compared to, in relation to, or measured against, something else. Without something to compare it to, the term 'high electric field' in the '540 patent is, in essence, just an 'electric field.'" *Id.* As the Court correctly held, without any objective bounds, "it is very likely that two POSAs could reach differing conclusions about what 'high' means," leaving the Asserted Claims indefinite. *Id.* at 49.

The terms "high" and "easier to cut" weren't McCain's only problems. The Asserted Claims also require that the "high electric field" be applied to "vegetables and/or fruit *under conditions* such that the resulting increase in the temperature of the vegetables and/or fruit is *almost zero* or *at least sufficiently low* as to not amount to a preheating step." But "almost zero" and "at least sufficiently low" are also arbitrary and subjective, making it impossible for a POSA to determine whether the temperature increase falls inside or outside the Asserted Claims. The same is true for "under conditions." The '540 patent does not identify the "conditions" that a POSA must implement to perform the claimed invention, leaving a POSA to guess. *Id.* at 50-51.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 12**

In sum, the '540 patent was dead on arrival the day it issued and was invalid for a host of reasons, including indefiniteness. McCain brought its infringement case anyway, stretching an already invalid patent to cover a technology it knew that it did not invent and did not patent, and taking positions that it knew or should have known would make the invalidity issues with the patent even worse. McCain's conduct "stands out" from others, making this case exceptional.

### B.    McCain Filed Its Retaliatory Claims To Harass And Burden Simplot

A patent case may also be exceptional when filed with "motivation to harass or burden an opponent." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) (cleaned up). The timing of McCain's complaint confirms that McCain brought its infringement claims in retaliation for Simplot's lawsuit and to burden Simplot with years of legal fees. Simplot purchased its first of many PEF Systems from Elea in 2013, and McCain knew that Simplot was using those systems as early as February 2014. Dkt. 80-5 at McCain Resp. to Intr. 3. But McCain never complained until three years later when it filed its '540 patent infringement claim against Simplot, just weeks after it was served with Simplot's Complaint for design patent infringement.

McCain's conduct is like the patentee's conduct in *Octane Fitness* that resulted in an exceptional case finding and a fee award against the patentee. *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 896-99 (D. Minn. 2015), *aff'd*, No. 2016-1047, 2017 U.S. App. LEXIS 16240 (Fed. Cir., Aug. 25, 2017). In that case, the patentee scoured its patent portfolio to find a lawsuit it could "throw" at the defendant, and it "ultimately landed on a 10-year old patent that was never commercialized and was merely 'sitting on the shelf.'" *Id*. at 899. Because the patent was old and had never been commercialized, the patentee "had little to lose by injecting the validity of the [patent] into a lawsuit." *Id*. Moreover, "throughout the litigation" the patentee relied on a "broad construction" that "could consist of an unlimited combination of unnamed parts" and that read the word "linear" out of the claims. *Id*. at 893, 895. The court found the patentee's

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 13**

proposed construction, and its reliance on it throughout the litigation, "highly unreasonable." *Id*. It found the patentee's conduct exceptional because its arguments were "at odds with the patent text, prosecution history, and inventor testimony, and would have resulted in impermissibly broad claims." *Id* at 892-93, 895.

Here, in response to Simplot's Complaint, McCain scoured its patent portfolio and settled on a patent that was even older than the patent asserted in *Octane Fitness*. When McCain brought its retaliatory infringement suit against Simplot (and only Simplot), the '540 patent was 13 years old and had been "sitting on the shelf," never commercialized or asserted against anyone in any lawsuit, including other competitors who used the same PEF system or against any of the manufacturers that make those systems. Likewise, McCain brought its suit in a forum (N.D. Ill.) highly inconvenient to Simplot, where Simplot has no plants or facilities, and where none of the accused PEF Systems were located. Like the patentee in *Octane Fitness*, McCain insisted on highly unreasonable and impermissibly broad interpretations of the Asserted Claims.

McCain had nothing to lose by filing its retaliatory lawsuit. Simplot did not demand excessive damages for McCain's infringement of Simplot's design patent. It merely wanted McCain to stop selling its Twisted Potato—a commitment McCain refused to make. McCain, on the other hand, punched back by demanding hundreds of millions of dollars, including treble damages, for Simplot's alleged infringement of McCain's utility patent. McCain leveraged this imbalance to its advantage. It forced Simplot to incur millions of dollars in fees and expenses to defend against claims that were unfounded. McCain faced virtually no exposure and had every incentive to press its baseless claims. McCain's motive in filing and maintaining this lawsuit, by itself, makes this case exceptional and warrants awarding of fees to prevent similarly situated parties from pursuing baseless retaliatory infringement assertions.

**C.** **McCain Litigated its '540 Patent Infringement Claim in an Unreasonable Manner and Prolonged the Litigation Unnecessarily**

McCain did not limit its exceptional conduct to *filing* a baseless and retaliatory claim based on a clearly invalid patent. From the beginning of this lawsuit to its end on appeal nine years later, McCain litigated this case in an unreasonable manner by presenting shifting and contradictory claim construction positions and by using discovery as a tool to harass Simplot and drive up costs. McCain's litigation conduct is an independent ground for the Court to find the case exceptional.

### 1. McCain's Shifting and Contradictory Claim Construction Theories

McCain shifted its arguments throughout this lawsuit, interpreting the Asserted Claims one way to maintain its infringement claim, only to interpret them an entirely different way to avoid invalidity. The Federal Circuit has criticized this tactic, warning that "[a] patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

#### (a) Electroporation and reduced cutting resistance

McCain's nose twisting started with the Complaint. There, McCain alleged that electroporation (creating pores to allow water to leak out) was evidence of Simplot's infringement. Illinois Complaint, ¶¶21-24. It asserted that treating potatoes with PEF causes electroporation, which is proof that those systems "reduce [potatoes'] resistance to cutting," as required by the Asserted Claims. But later, to avoid invalidity over prior art (Angersbach) that also disclosed causing electroporation when treating fruits and vegetables with PEF, McCain claimed there was no correlation between electroporation and reduced cutting resistance. Dkt. 59-5 at 35 n.8. Therefore, according to McCain, electroporation reduces cutting resistance for purposes of McCain's infringement claim, but not for Simplot's invalidity claim.

McCain also alleged that treating potatoes with PEF reduced their cutting resistance by making them "softer." Illinois Complaint, ¶22. But later, to avoid invalidity over prior art that also disclosed treating fruits or vegetables with PEF to make them softer, McCain argued there is no correlation between softening and reduced cutting resistance. Dkt. 59-5 at 37 Therefore, according to McCain, softening falls within the Asserted Claims for purposes of McCain's infringement claim, but not for Simplot's invalidity claim.

McCain's expert, Dr. Floros, only added to the confusion and exposed the lengths McCain would go to avoid admitting invalidity. He testified that the two examples disclosed in the '540 patent may not even work to perform McCain's claimed invention. *See* Dkt. 332-1 at ¶¶82(i)-(iv), 85(iii). And despite McCain's assertion in the Complaint that electroporation reduces cutting resistance, Dr. Floros testified that ██████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████ *Id.* at ¶85(ii)-(iii); Dkt. 332-18 at 145:15-146:21, 321:16-18.

(b)     "Cooking" and "cutting" steps

McCain's contradictory interpretations of the claim term "cooking" were also egregious. To avoid the prior art, McCain insisted that the preamble of the Asserted Claims was a limitation, requiring the steps of cooking and cutting. Dkt. 59-5 at 12. McCain argued that, if there were no cooking and cutting steps, the claimed invention would be meaningless. Dkt. 59-5 at 18-19 ("If one ignores the pre-cutting and pre-cooking aspects, then all the claim requires is apply a high electric field such that its resulting heating is negligible" and the prior art "would anticipate the claimed methods"). The Court agreed. It adopted McCain's construction and confirmed that the claims require a cooking step. Dkt. 69 at 10. But when it came time to prove infringement and to show that Simplot performed the cooking step (which it did not), McCain backtracked and ignored the Court's construction. It insisted that the preamble was *not* a limitation, and it minimized the

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 16**

cooking and cutting steps, claiming that the invention was simply "replacing preheaters with PEF."

Dkt. 154 at 37:7-11; Stott Decl., Exh. 4 at 3.

After the close of discovery, McCain doubled down on its contradictory positions. It argued that, even if the Asserted Claims required a cooking step, Simplot cooked its potatoes when it partially fried ("par-fried") them in its factories in preparation for freezing and storing them for up to 24 months. Order (Dkt. 474) at 20. But McCain knew that par-frying was not cooking. On its own website, McCain admitted that its par-fried, frozen potato products are not cooked and, like Simplot's, those products must be cooked before consumption. Dkt. 332-1 at ¶47. Therefore, according to McCain, Simplot cooks when it par-fries but McCain does not cook when it par-fries.

(c)    <u>Inconsistent positions before the USPTO and this Court</u>

McCain also presented arguments to this Court that contradicted those it presented to the PTO. The parties agreed that "cooking" meant "heating to prepare for consumption." Dkt. 47 at 2. To avoid the PTO instituting a review of the '540 patent in IPR, McCain hinged its argument on *consumption* of the treated fruit or vegetable, arguing that the Esthiaghi prior art refence did not disclose "cooking" because it did not disclose *consuming* the fruit/vegetable (a beet) after electric field treatment. Dkt. 59-5 at 41. But when it came time to prove infringement before this Court, McCain argued that consumption did not matter. Dkt. 360 at 12-16. It claimed that Simplot "cooked" its potato products when it par-fried them in its factories before freezing them for up to 24 months and before selling them to customers who actually cooked them for consumption. *Id.*

McCain spent seven years whipsawing Simplot and the Court with its shifting positions, forcing Simplot to conduct costly discovery before Simplot finally pinned McCain down on summary judgment. Eventually, McCain's contradictory positions caught up to it when the Court invalidated the Asserted Claims, noting that "McCain cannot have it both ways." Order (Dkt. 474)

at 60. "[I]t cannot argue for a broad construction of claim terms in support of its infringement case, but then argue those same terms should be construed more narrowly to avoid invalidity." *Id*.

### 2. McCain's Unnecessary and Wasteful Discovery Tactics

McCain also weaponized discovery, using it to harass Simplot and increase costs. For example, McCain filed a baseless motion to compel, seeking to invade the attorney-client privilege and demanding all communications "relating to the '540 patent," including communications between Simplot's in-house counsel and its litigation counsel *in this lawsuit*. Dkt. 165-1. McCain also demanded that Simplot's Idaho counsel be precluded "from accessing McCain's competitive financial information," even though they were authorized to do so under the operative protective order. Dkt. 166-7 at 6. The Court denied the motion, describing McCain's argument as "suspect," "difficult to stomach," and demanding a result that "does not sit well with the Court." Order (Dkt. 253) at 11-14. McCain's motion although baseless, would have imposed drastic consequences on Simplot and its counsel if granted.

In addition to making unreasonable discovery demands, McCain went out of its way to obstruct discovery. For example, it refused to produce documents from the named inventors of the '540 patent and refused to make them available for deposition, even though McCain made them available for deposition in the Canadian lawsuit involving the '540 patent's Canadian counterpart. *See* Dkt. 122-16 ¶¶6-7, Exh. 3. Instead, McCain forced Simplot to conduct costly and time-consuming discovery through the Hague Evidence Convention and through letters rogatory directed to the Central Authority of France. *See* Motion for Issuance of Letters of Request (Dkt. 122). The Court granted Simplot's motion over McCain's objections (Order [Dkt. 157] at 26-32) and Simplot was eventually able to obtain limited discovery through a Court-conducted proceeding in France with the assistance of European counsel. *See* Dkt. 277-1 (noting that Simplot "could not

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 18**

question the witness"). Although McCain could not stave off all discovery from the inventors, it was able to delay this case for a more than a year, while Simplot jumped through hoops in France to obtain limited discovery that McCain could have readily turned over.

In summary, since the outset of this lawsuit, McCain "dissembled, tap-danced, and otherwise tried to avoid the ultimate outcome that it should have known was inevitable." *Midwest Ath. & Sports All. LLC v. Ricoh USA, Inc.*, No. 2:19-cv-00514-JDW, 2023 U.S. Dist. LEXIS 67309, at *3 (E.D. Pa. Apr. 18, 2023) (declaring case exceptional and awarding fees under where plaintiff continued to pursue baseless infringement claims after the close of discovery). The '540 patent could not be valid and infringed, and McCain knew it when it filed its complaint and when it presented contradictory positions to keep its infringement claim alive. Nevertheless, McCain insisted on pressing its baseless claim for nearly a decade, forcing Simplot to spend millions defending a frivolous lawsuit that McCain knew had no chance of success. *See Eon Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (upholding the award of attorneys' fees where evidence showed that plaintiff "exploit[ed] the high cost to defend complex litigation").

## III.     THE COURT SHOULD AWARD SIMPLOT ITS ATTORNEYS' FEES

A court may award a party all its attorneys' fees where it finds the case exceptional based on the totality of the circumstances. *See Homeland Housewares, LLC v. Sorensen Rearch & Dev. Tr.*, 581 F. App'x 877, 879 (Fed. Cir. 2014). A substantial fee award is particularly appropriate where, as here, litigation misconduct is "pervasive" or "infected" the litigation. *See Large Audience Display Sys., LLC v. Tennman Prods., LLC,* 745 F. App'x 153, 157 (Fed. Cir. 2018).

"The district court has broad discretion in calculating attorneys' fees." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). In doing so, courts apply the two-step "lodestar method." *Id*. In the first step, courts multiply the number of hours reasonably expended on the prevailing party's case by a "reasonable hourly rate, based on evidence of the market rate

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 19**

for the services provided." *Id*. In the second step, courts consider whether to enhance the award based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975):

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id*. Consideration of the *Kerr* factors is "required in a determination of reasonable attorney's fees." *Kerr,* 526 F.2d at 70. These factors are "largely subsumed within the initial calculation of [the lodestar method]."). *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1212 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987).

Here, Simplot defeated McCain's '540 patent infringement claim and its demand for more than $300,000,000.00, including treble damages. The time and labor to defend a case of this magnitude were substantial, demanding the resources of dozens of Simplot employees and requiring counsel with specific expertise in patent litigation, engineering, and cellular biology. McCain's '540 patent infringement claim involved disputed issues of infringement, validity, and damages after years of extensive fact and expert discovery. The hourly rates and total hours billed by Simplot's counsel were reasonable, and the Court should award attorneys' fees to Simplot in the amount of $4,415,150.55. This is less than the median attorneys' fees incurred in patent infringement cases where, as here, there was more than $25M in dispute and counsel worked at law firms with 60 or more attorneys. (Declaration of Dana M. Herberholz ("Herberholz Decl.") ¶10, AIPLA 2025 Economic Survey, I-168]) (showing median of $5 million).[7]

---

[7] Courts "routinely rely on [AIPLA] economic survey results" in determining attorneys' fees awards in patent infringement cases. *Phigenix, Inc. v. Genentech Inc*., No. 15-cv-01238-BLF, 2019 U.S. Dist. LEXIS 105371, at *33 (N.D. Cal. June 24, 2019).

Nearly 50 timekeepers billed Simplot on this matter since it started nearly ten years ago. Although all fees incurred were reasonable, Simplot's request is conservative, and Simplot is only seeking reimbursement for hours billed by the following 13 lawyers and staff:

| TIMEKEEPER | LAW FIRM & TITLE | TOTAL HOURS BILLED | AVERAGE HOURLY RATE | TOTAL AMOUNT REQUESTED |
|---|---|---|---|---|
| 1. Dana Herberholz | Parsons Behle & Latimer – Shareholder<br><br>Dorsey & Whitney - Partner | ■ | ■ | $904,646.97 |
| 2. Jordan Stott | Parsons Behle & Latimer – Associate, Shareholder<br><br>Dorsey & Whitney - Partner | ■ | ■ | $931,936.56 |
| 3. Christopher Cuneo | Parsons Behle & Latimer – Of-Counsel | ■ | ■ | $154,018.91 |
| 4. Brook Bond | Parsons Behle & Latimer – Shareholder | ■ | ■ | $123,205.23 |
| 5. Kennedy Luvai | Parsons Behle & Latimer – Shareholder | ■ | ■ | $51,695.73 |
| 6. Kevin Speirs | Parsons Behle & Latimer – Of Counsel | ■ | ■ | $48,621.91 |
| 7. James Meaders | Parsons Behle & Latimer – Associate | ■ | ■ | $34,113.98 |
| 8. Janelle Finfrock | Parsons Behle & Latimer – Paralegal | ■ | ■ | $27,361.76 |
| 9. Brian Buroker | Gibson Dunn - Partner | ■ | ■ | $1,359,312.50 |
| 10. Vladimir Semendyai | Gibson Dunn – Associate | ■ | ■ | $411,612.50 |
| 11. Anthony Brzozowski | Gibson Dunn – Associate | ■ | ■ | $209,270.50 |
| 12. Alexander Harris | Gibson Dunn – Associate | ■ | ■ | $63,027.00 |
| 13. Omar Amin | Gibson Dunn – Associate | ■ | ■ | $38,814.50 |
| 14. Michael Walther | Gibson Dunn – Partner | ■ | ■ | $30,736.00 |
| 15. Gaya Holman | Gibson Dunn – Paralegal | ■ | ■ | $26,776.50 |

*Id.* ¶10; Buroker Decl. ¶7. Even though they were necessary and reasonable, Simplot is not seeking reimbursement for any of the dozens of timekeepers who billed less than $25,000 to this matter.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 21**

A.     **The Hourly Rates of Simplot's Counsel Were Reasonable**

1.  **The Hourly Rates of Simplot's Idaho Counsel Were Reasonable**

The hourly rates of Simplot's counsel at Parsons Behle & Latimer and (later) Dorsey & Whitney LLP (collectively, "Idaho Counsel") were reasonable. Since this lawsuit was filed, the average hourly rate of Simplot's lead trial counsel, Dana Herberholz, was $▮ [ranging from $▮ in 2017 to $▮ in 2024]. Herberholz Decl. ¶6(a). The average rate of senior associate (and later partner), Jordan Stott, was $▮ [ranging from $▮ in 2017 to $▮ in 2024]. *Id.* ¶6(b). The average rates of other lawyers at Parsons who billed to this matter are between those of Mr. Herberholz and Mr. Stott. *Id.* ¶7. The average hourly rate of paralegal, Janelle Finfrock, was $▮ [ranging from $▮ in 2017 to $▮ in 2023]. *Id.* The hourly rates of Simplot's Idaho Counsel are less than the rates that Idaho courts have approved and found reasonable in other matters. *See, e.g. Bouttier v. Weiser Memorial Hospital,* No. CV44-25-0201 (November 17, 2025) (awarding hourly rate of $820 for lead counsel and partner in the Boise office of Holland & Hart, LLP in commercial litigation dispute) (attached as Stott Decl., Exh. 6); *Bundy v. St. Luke's Health Sys.*, No. 1-23-cv-00212-DCN, 2023 U.S. Dist. LEXIS 198153, at *10 (D. Idaho Nov. 2, 2023) (approving hourly rates of $540 and $396 for lead counsel/partner and associate, respectively, at Boise office of Holland & Hart in commercial litigation dispute); *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., Ltd. Liab. Co.*, No. 4:16-cv-00427-DCN, 2018 U.S. Dist. LEXIS 83875, at *6 (D. Idaho May 15, 2018) (approving rate of $435 for partner at Boise office of Holland & Hart).

The rates of Simplot's Idaho Counsel are particularly reasonable considering their expertise in patent law. Indeed, "[a]ttorneys who specialize in particular fields 'such as admiralty law, ***patent law***, or antitrust and other complex litigation' tend to charge more for their services." *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 759 (N.D. Ohio 2010) (emphasis added). In addition, patent law is "by its very nature, national and not necessarily

regional in scope." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2:20-CV-2766-JPM-TMP, 2023 U.S. Dist. LEXIS 159642, at *24 (W. D. Tenn. Sept. 8, 2023) (citation omitted). Several of Simplot's Idaho Counsel, including Mr. Herberholz, Mr. Stott, and Mr. Cuneo, maintain national practices focused on patent litigation. Herberholz Decl. ¶6(a)-(c), Exh. 2. The Court should approve the hourly rates of Simplot's Idaho Counsel.

### 2.    The Requested Rates for Simplot's National Counsel Are Reasonable

The hourly rates of Simplot's national counsel at Gibson Dunn & Crutcher LLP were also reasonable for a case of this magnitude. Simplot relied on the expertise of Gibson lawyer, Brian Buroker, who has three decades of experience litigating high-stakes patent infringement lawsuits. Buroker Decl. ¶¶2-3. Mr. Buroker played a critical role in all phases of this dispute after the Court's claim construction order, including preparing and arguing Simplot's Motion for Judgment on the Pleadings and serving as lead counsel on appeal before the Federal Circuit. Vladimir Semendyai and David Brzozowski, at the time Senior Associates at Gibson, also played key roles in defending against McCain's infringement allegations and successfully prosecuting Simplot's invalidity counterclaim. *Id.* ¶6. After the Court revised its Claim Construction Order, Simplot retained Gibson and Mr. Buroker due in large part to Mr. Buroker's expertise in the law on patent eligibility under 35 U.S.C. § 101 and his experience before the Federal Circuit and U.S. Supreme Court on that issue. *See* Buroker Decl. Exh. 2.

Although courts typically look to the "prevailing market rates in the relevant community" when applying the lodestar method, "[r]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform or because they lack the degree of experience, expertise, or specialization required to properly handle the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal citation and quotations omitted).

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 23**

Courts in other rural judicial districts have held that the hourly rates of national counsel were reasonable. One such court held it was "appropriate to expand the relevant community beyond the forum district of Montana" because "the Court is not aware of any Montana law firm that is currently representing parties in patent litigation matters of comparable complexity and scope without the specialized assistance of out-of-district counsel." *Site 2020 Inc. v. Superior Traffic Servs., LLC*, No. CV 21-63-M-DLC-KLD, 2024 U.S. Dist. LEXIS 239604, at *42 (D. Mont. Oct. 25, 2024). A court in the Western District of North Carolina awarded fees under § 285 and held "the 'market' rate in [the] forum need not be limited to attorneys' physically residing in this district." *Lendingtree, Ltd. Liab. Co. v. Zillow, Inc.*, No. 3:10-cv-00439-FDW-DCK, 2014 U.S. Dist. LEXIS 203689, at *9 (W.D.N.C. Dec. 8, 2014) (finding rates up to $949.50 reasonable).

Simplot is not aware of any patent infringement case tried in the District of Idaho that had the complexity, scope, or exposure that this case presented. With hundreds of millions of dollars at stake and multiple patents in dispute, Simplot retained national patent litigation counsel for their substantial expertise and their ability to provide the resources needed to try a case of this magnitude. McCain did the same. It retained the international firm of Jones Day who handled every aspect of this case with minimal assistance from its local Idaho counsel.

Even though Gibson's national rates were reasonable for this case, Simplot understands those rates are high for the legal market in Boise, Idaho. Therefore, Simplot seeks reimbursement of Gibson's partners' fees at reduced rates through the life of the matter of $▆▆▆ - $▆▆▆ (down from $▆▆▆). For Gibson partners, Simplot's requested rates reflect the rates charged by such partners at the outset of the case and do not account for any increases. Likewise, Simplot seeks reimbursement of Gibson's associates' rates at a reduced hourly rate of $▆▆ (down from $▆▆. Those rates have already been found to have been reasonable and were approved for Gibson

timekeepers in a patent infringement case. *E.g., Acqis, LLC v. Emc Corp.*, No. 14-cv-13560-ADB, 2024 U.S. Dist. LEXIS 253600, at *13 (D. Mass. Mar. 6, 2024) (after finding case exceptional, awarding attorneys' fees of $4,044,180.15, and finding Gibson's blended hourly rates for partners ($996) and associates ($747) reasonable); *Roma Landmark Theaters LLC v. Cohen Exhibition Co. LLC,* C.A. No. 2019-0585-PAF, 2021 Del. Ch. LEXIS 262, at *14-15 (Del. Ch. Nov. 8, 2021) (finding Gibson's rates of $1645 for partners reasonable). Notably, the court in *Roma* found that reasonable rates for experienced litigators in complex matters included "partner rates ranging from $1,225 to $1,775 and associate rates of $695 to $1,120." *Id.* (citing *In re TransPerfect Global, Inc.*, 2021 Del. Ch. LEXIS 86, 2021 WL 1711797, at *13 (Del. Ch. Apr. 30, 2021)). It also denied objections to such rates where opposing counsel did not supply their own rates and amounts charged. *Id.* at *15. The requested rates for Gibson are reasonable.

### B.     The Hours Worked Were Reasonable

Next, the Court must determine the number of hours that are recoverable. The prevailing party has the burden of submitting time records to justify the hours claimed. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended by* 808 F. 2d 1373 (9th Cir. 1987). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Here, Simplot seeks recovery of 9,085.7 hours of billed time over more than nine years, which is only a portion of the total hours billed. Most of the time billed was from Idaho Counsel at lower rates. The fees Simplot seeks are reasonable, and the Court should award them in full.

### CONCLUSION

For the foregoing reasons, Simplot respectfully requests that the Court grant the motion, find this case "exceptional" under 35. U.S.C. § 285, and award Simplot its attorneys' fees.

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 25**

DATED THIS 14th day of May 2026

DORSEY & WHITNEY, LLP


__/s/ Dana Herberholz_____
Dana Herberholz
Jordan Stott
Payton George


GIBSON, DUNN & CRUTCHER LLP
Brian M. Buroker
A. David Brzozowski, II

*Attorneys for J.R. Simplot Company*

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 26**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026 I caused a copy of the foregoing document to be filed electronically via the Court's CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Meredith M. Wilkes, Attorney for McCain
mwilkes@jonesday.com

John C. Evans, Attorney for McCain
jcevans@jonesday.com

Joseph D. Farley, Attorney for McCain
jdfarley@jonesday.com

John A. Marlott, Attorney for McCain
jamarlott@jonesday.com

Joshua R. Nightingale, Attorney for McCain
jrnightingale@jonesday.com

David B. Cochran, Attorney for McCain
dcochran@jonesday.com

Susan M. Gerber, Attorney for McCain
smgerber@jonesday.com

Vishal V. Khatri, Attorney for McCain
vkhatri@jonesday.com

Teague Ian Donahey, Attorney for McCain
tidonahey@hollandhart.com

Anne Henderson Haws, Attorney for McCain
ahhaws@hollandhart.com

Kenneth J. Sheehan, Attorney for Elea and Food Physics
Ken.sheehan@icemiller.com

**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 27**

T. Earl LeVere, Attorney for Elea and Food Physics
earl.levere@icemiller.com

Lesley McCall Grossberg, Attorney for Elea and Food Physics
lesley.grossberg@icemiller.com

Simone Park, Attorney for Elea and Food Physics
simone.park@icemiller.com

Bradley J. Dixon, Attorney for Elea and Food Physics
bradleydixon@givenspursley.com

Kersti H. Kennedy, Attorney for Elea and Food Physics
kerstikennedy@givenspursley.com


　　　　　　　　　　　　_/s/ Dana Herberholz_ __
　　　　　　　　　　　　Dana Herberholz


**J.R. SIMPLOT COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR FEES PURSUANT TO 35 U.S.C. § 285 - 28**