UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

J.R. SIMPLOT COMPANY,

Plaintiff,

v.

McCAIN FOODS USA, INC.,

Defendant.

---

McCAIN FOODS LIMITED,

Plaintiff,

v.

J.R. SIMPLOT COMPANY,

Defendant.

---

J.R. SIMPLOT COMPANY,

Plaintiff,

v.

ELEA VERTRIEBS-UND-VERMARKTUNGSGESELLSCHAFT, MBH; FOOD PHYSICS LLC,

Third-Party Defendants.

Case No. 1:16-cv-00449-DCN

**MEMORANDUM DECISION AND ORDER**

# I. INTRODUCTION

Before the Court is Simplot's Bill of Costs (Dkt. 599) and Motion for Attorney Fees

(Dkt. 601). McCain objects to Simplot's Bill of Costs (Dkt. 603) and opposes the Motion for Attorney Fees. Dkt. 605.[1]

Upon review, and for the reasons below, the Court approves Simplot's Bill of Costs and GRANTS in PART and DENIES in PART Simplot's Motion for Attorney Fees.[2]

## II. BACKGROUND

The background of this case has been detailed in the roughly twenty substantive decisions the Court has issued in this case over the past decade and is well known to the parties. The Court only gives a short recitation here to put today's findings in context.

On October 7, 2016, Simplot filed a Complaint in the District of Idaho against McCain alleging infringement of one of Simplot's design patents. On February 21, 2017, McCain filed suit against Simplot in the Northern District of Illinois, alleging infringement of one of its own design patents[3] as well as one of its utility patents. McCain's utility patent—U.S. Patent No. 6,821,540 ("the '540 Patent")—issued November 23, 2004, is entitled "Process for Treating Vegetables and Fruit Before Cooking," and protects McCain's use of Pulse Electric Field ("PEF") technology to soften fruits and vegetables before cutting them.

---

[1] Simplot and McCain both filed Motions to Seal certain declarations, exhibits, and briefs explaining each contained information designated as "confidential" or "attorneys' eyes only" under the protective order previously entered in this case. *See generally* Dkts. 600, 604. Neither motion is opposed. Good cause appearing, the same are GRANTED and the documents so designated shall remain under seal. The parties correctly filed redacted copies for the public record.

[2] The Court finds the facts and legal arguments are adequately presented and will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B).

[3] Simplot and McCain proceeded to a jury trial on their competing design patents. Simplot ultimately prevailed. The design patents are not relevant to today's decision except for the role they play in the origins and timing of the Parties' competing lawsuits.

The PEF devices Simplot uses, that McCain claims infringe the '540 Patent, were manufactured by a German research institution, Deutsches Institut für Lebensmitteltechnik e.V ("DIL") and sold to Simplot by Third-Party Defendant Elea Vertriebs-und-Vermarktungsgesellschaft, MBH ("Elea"), and later, Food Physics.[4]

On August 9, 2017, the District of Illinois transferred the McCain lawsuit against Simplot to the District of Idaho—Case No. 1:17-cv-00350-DCN—and, on November 9, 2017, the undersigned consolidated the two cases. Dkt. 40.

On July 11, 2018, the Court held a claim construction, or *Markman,* hearing to determine the construction of the disputed claim terms. Dkt. 65. As for the '540 Patent, the dispute revolved around: (1) whether the preamble was limiting; and (2) the construction of three disputed claim terms: "high electric field," "under conditions," and "almost zero." Dkt. 69, at 29. Relevant here, the Court construed the term "high electric field" to mean a field of strength between 30 and 75 V/cm. *Id*.

Based upon the Court's construction that the term "high electric field" only encompassed a certain voltage range, Simplot moved for summary judgment of non-infringement (Dkt. 77) asserting it uses PEF technology on a scale outside of the disclosed range. McCain moved for reconsideration of the Court's claim construction order. Dkt. 70.

In its January 11, 2019 Order (Dkt. 86), the Court denied Simplot's motion for summary judgment, granted McCain's motion for reconsideration, and reversed its

[4] DIL is a German research institution formed in the 1980s as an association of food manufacturers and food equipment suppliers. Elea was founded in 2012, as a spin-off from DIL, to sell PEF-related machinery. Food Physics was formed in 2016, primarily as an exclusive distributor for Elea to sell PEF devices in the United States and Canada.

construction of "high electric field" to align with McCain's original (and broader) proposed construction of the term: "an electric field strong enough to make the vegetable and/or fruit easier to cut." Dkt. 86 at 11.

As part of both its original Decision and its Decision on Reconsideration, the Court declined to address Simplot's contention that several terms of the '540 Patent were invalid for indefiniteness, noting indefiniteness was better left for summary judgment. Dkt. 69 at 11, 22-23; Dkt. 86, at 10.

It took a few years to get to summary judgment—due largely to the inclusion of international parties and extensive discovery. Simplot and McCain both filed discovery motions along the way. And both Parties won (and lost) some of those motions.

The '540 patent issued with six claims. McCain sued Simplot for infringing claims 1, 4, 5, and 6. During discovery, Simplot moved for Judgment on the Pleadings (Dkt. 104) and McCain disclaimed claims 3-5. *See* Dkt. 106, at 20. Thus, McCain's infringement claim was limited to claims 1 and 6 as the Parties approached dispositive motions.

Eventually the Parties filed cross-motions for summary judgment (along with a myriad of other motions). The Court held an all-day hearing to address the motions. On January 3, 2024, in a 141-page decision, the Court determined—among other things—that the '540 Patent was invalid for indefiniteness. Dkt. 474. The Court held, "McCain cannot have it both ways: it cannot argue for a broad construction of claim terms in support of its infringement case, but then argue those same terms should be construed more narrowly to avoid invalidity." *Id*. at 60. The Court held the term "high electric field" was "indefinite because it has no objective bounds and is virtually impossible to measure." *Id*. at 54. The

Court also held that "under conditions" was indefinite because "a [person of ordinary skill in the art] would have to guess what 'conditions' are required to accomplish the claimed invention." *Id*. at 54. Finally, the Court held the terms "almost zero" and "sufficiently low" failed to "provide clear notice of what is protected." *Id*. at 57.

In April 2024, the Court entered its Final Judgment regarding the '540 patent. Dkt. 484. McCain appealed. After a full round of briefing and oral arguments, the Federal Circuit summarily affirmed the Court's Judgment and indefiniteness holding. Dkt. 594.

On March 16, 2026, the Federal Circuit issued its Mandate, which triggered Simplot's ability to file the instant Bill of Costs and Motion for Attorneys' Fees. Dkt. 595.

## III. LEGAL STANDARD

### A. Federal Rule 54(d) and 335 U.S.C. § 285

Federal Rule of Civil Procedure 54(d) and Dist. Idaho Loc. Civ. R. 54.2 permit a party to move for recovery of attorneys' fees.

Under 35 U.S.C. § 285, courts have discretion to award reasonable attorneys' fees to the prevailing party in "exceptional" patent cases. "[A]n 'exceptional' case is simply one that stands out from others with respect to" either (a) "the substantive strength of a party's litigating position," considering both the governing law and the facts of the case, or (b) "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC Health & Fitness, Inc*., 572 U.S. 545, 553-54 (2014).

Courts evaluate exceptionality on a case-by-case basis, considering the totality of the circumstances. *Id*. Considerations "may include frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in

particular circumstances to advance considerations of compensation and deterrence." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1277 (Fed. Cir. 2018) (citation modified).

Section 285 "imposes no specific evidentiary burden, much less [] a high one," and the prevailing party need only establish entitlement to attorneys' fees by a preponderance of the evidence. *See Octane Fitness*, 572 U.S. at 557-58. A party's conduct need not be "independently sanctionable" under Federal Rule of Civil Procedure 11 for a case to qualify as "exceptional." *Id*. at 555.

**B. The Lodestar Method**

"After establishing that a plaintiff is entitled to attorney's fees, the Court must calculate a reasonable fee award." *Animal Legal Def. Fund v. Otter*, 2016 WL 2910266, at *2 (D. Idaho May 18, 2016). To calculate a reasonable fee award, courts in the Ninth Circuit use the two-step "lodestar method." *Mares-Orozco v. Guzman*, 2023 WL 5179674, at *4 (D. Idaho Aug. 10, 2023) (citing *Edmo v. Idaho Dep't of Corr.*, 2022 WL 16860011, at *2 (D. Idaho Sept. 30, 2022)).

The lodestar method multiplies the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018). To establish the requested hours and rate are reasonable, the "burden is on the party seeking the fee award and can be carried by submitting evidence and documents supporting the hours worked." *Id.* (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)).

## IV. DISCUSSION

### A. Bill of Costs

Simplot has submitted a Bill of Costs seeking $64,423.86 inclusive of trial transcripts, deposition costs, and docketing fees. Dkt. 599. McCain objects on primarily three grounds. First, it contends Simplot is not the prevailing party in this action. Second, it claims Simplot should not be allowed to recover costs from nine depositions where both a videotape and written transcript were produced. Third, McCain claims some of the testimony at these depositions did not relate to the ’540 Patent and any award should be apportioned downward to account for this discrepancy.

Federal Rule of Civil Procedure 54(d) provides an award of taxable costs “*should be allowed* to the prevailing party” unless a statute, rule, or court order provides otherwise. Fed. R. Civ. P. 54(d)(1) (emphasis added). The decision to award costs is discretionary, but not unlimited. *Champion Produce, Inc. v. Ruby Robinson Co., Inc*., 342 F.3d 1016, 1022 (9th Cir. 2003) (the Court must “specify reasons” for its refusal to award costs).

As for McCain’s first umbrella argument—that costs should not be allowed because Simplot is not the prevailing party—the Court will address that more fully below. Suffice it to say, Simplot is the prevailing party as to the ’540 Patent.

McCain’s second argument is that Simplot did not need to order both stenographic transcripts and video recordings of numerous depositions. The Court finds this argument unpersuasive. Simplot reasonably anticipated that the video recordings would be necessary

to preserve and present testimony of unavailable witnesses at trial.[5] These were reasonable costs of litigation—costs McCain also availed itself of—and will be allowed.

Third and finally, McCain suggests the full costs of certain depositions should not be allowed because the deponents testified about other things besides the ’540 Patent (e.g. the design patents). This may be true, but McCain suggests no analytical framework for determining what a fair apportionment would be. Absent a detailed (and lengthy) review of the depositions themselves, the Court would simply be guessing what it thought was a fair distribution. This type of arbitrary reduction is unnecessary, especially considering the intertwined nature of the facts of this case.[6]

In sum, McCain’s objections are OVERRULED and the Court awards Simplot taxable costs in the amount of $64,702.86.[7]

**B. Attorney Fees**

*1. Entitlement of Fees*

The biggest battle regarding Simplot’s Motion for Attorney Fees is not the amount of fees sought—although McCain does have some concerns there—but the appropriateness of a fee award at all. As noted, in patent cases such as this, fees are only to be awarded in “exceptional” circumstances. McCain claims this case is an uneventful, run-of-the-mill infringement case not deserving of fees. Simplot counters this case is anything but

---

[5] Notably, Simplot’s suspicion proved true as several witnesses were called by video deposition during the design patent trial because those witnesses were outside of the subpoena power of the Court and could not attend trial live.

[6] In the event Simplot moves for costs related to the design trial and any of these deponents are involved there, the Court would not allow a double recovery.

[7] McCain identified some mathematical errors in Simplot’s bill which actually *increases* Simplot’s award slightly. The Court appreciates McCain’s thorough review and candor.

exceptional based on McCain's untenable position from the outset and the manner in which it litigated this case.

To begin, Simplot is the "prevailing party" for purposes of 35 U.S.C. § 285 and Rule 54(d). To qualify as the "prevailing party," Simplot must merely show that it "obtained relief on the merits [that] materially alters the legal relationship" of the parties. *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). "A party does not need to prevail on all claims to qualify as the prevailing party." *SSL Servs., LLC v. Citrix Sys.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014). Simplot prevailed on its invalidity claim, mooting McCain's '540 patent infringement claim. While Simplot did not win every single argument, the Court ultimately agreed the '540 Patent was invalid on all § 112 grounds asserted by Simplot: indefiniteness, lack of written description, and lack of enablement.

Even though Simplot prevailed, the question is still whether this case "stands out" as one requiring an award of attorney fees considering the strength of McCain's case or the manner in which it litigated the same. *See Octane Fitness*, 572 U.S. at 557–58.

Simplot contends McCain's case was flawed from the outset and should have never been filed and, once filed, McCain litigated its claims in an unreasonable manner that drove up costs and wasted time. The Court will address each contention in turn.

a. <u>Strength of McCain's case</u>

The Court's biggest concern—and what it sees as Simplot's strongest argument in support of the "exceptional" nature of this case—is the fact that McCain belatedly sued Simplot, *and only Simplot*, and it utilized a Patent that was inherently flawed.

McCain became aware that Simplot was using PEF technology in late 2013 and

confirmed as much in early 2014. Dkt. 80-5, at 8. But it did not file suit to protect the process outlined in the ’540 Patent until three years later. Case No. 1:17-cv-00350-DCN, Dkt. 1. Even then, McCain sued only Simplot for using Elea’s PEF Systems. It did not sue Elea. Nor did it sue any of its other competitors who purchased and used Elea’s PEF Systems, or any other PEF manufacturers. It singled Simplot out. Thus, it is difficult to say McCain’s suit was anything but retaliation for Simplot’s design patent lawsuit or, at the very least, a targeted attack on Simplot.[8]

As the Court noted years ago:

> Prior to this litigation, McCain has never accused DIL, Elea, or Food Physics of infringement of the ’540 Patent. Additionally, as of today’s date, McCain has never sued (or suggested infringement against) any other customers of DIL-manufactured PEF devices. This is so, despite McCain knowing that since at least 2013 Third-Party Defendants had sold the devices to customers in the United States—including Simplot.

Dkt. 474, at 73. If McCain truly thought the ’540 Patent covered all PEF uses, it would have been suing Simplot (and others) for many years to protect its intellectual property. Its choice to belatedly sue Simplot, *and* only Simplot *and* shortly after Simplot filed a lawsuit against McCain, weighs in favor of finding the case exceptional. That’s the timing aspect of this case that concerns the Court.

Relatedly, and arguably more important, is the Court’s merits-based concern. While this was a hard-fought battle—which the Court recognized at times—when it came right down to it, McCain’s interpretation of the claim terms of the ’540 Patent was untenable.

---

[8] To be sure, Simplot could have been the first lawsuit on McCain’s list. However, to the Court’s knowledge, McCain has not (to date) sued anyone else for anything related to the ’540 Patent. At least in the United States.

McCain argued for a broad construction of the terms in the '540 Patent. The Court originally found there was zero basis to support such an interpretation. Dkt. 69, at 19. Simply put, there was no evidence to suggest McCain ever thought about (let alone protected) the voltage ranges Simplot used in its PEF process which were hundreds or thousands of magnitudes higher that those outlined in the '540 Patent. *Id*.

And although the Court reversed itself as to the term "high electric field" and accepted McCain's proposed definition, it did so because it felt "constrained under Federal Circuit precedent to change its ruling." Dkt. 474, at 51; *see also id*. at 6–7. As the Court explained in its decision on reconsideration, its error was nuanced—even "more nuanced" than McCain argued. Dkt. 86, at 8. The Court was worried its decision conflicted with seminal Federal Circuit cases regarding the interplay between limitations and examples listed in the patent specification. *See generally* Dkt. 86, at 3–9. Notably, however, the Court's decision on reconsideration did not reach any other definition or issue.

This is important because, while the Court changed course and sided with McCain, as it previously explained, "claim construction is a task separate and apart from infringement and invalidity." Dkt. 474, at 45. Just because the Court agreed with how a claim should be *construed* in light of relevant and binding caselaw does not mean McCain was justified in bringing the claim in the first place.

Critically, when it came to invalidity, the Court was clear. McCain's expanded construction left the terms "undefined and unbounded." *Id*. at 46 n.21. Over the course of 18 pages (*id*. at 44–61) the Court analyzed and evaluated the Parties' arguments as to invalidity. The Court discussed the "multiple problems" it had with McCain's arguments.

*Id*. at 48. It analyzed the ways in which McCain's interpretations left terms "ambiguous" (*id*. at 49) and "amorphous" (*id*. at 51), "completely lacking in any objective boundaries" (*id*. at 52) and "arbitrary and subjective" (*id*. at 53). It held McCain's arguments resulted in "unintelligible and circular" results (*id*. at 54) and left the public "in the dark" as to the scope of the '540 Patent (*id.* at 51). As for McCain's argument that a person of ordinary skill in the art could just figure it out—the Court found that was simply "a bridge too far" (*id*. at 61) and that it was "improper" for McCain to suggest the '540 Patent covered "*all* PEF ranges, for *all* fruits and vegetables under *all* conditions" (*id.* (emphasis in original)).

The Court's observation that McCain "cannot have it both ways" is worth repeating. *Id*. at 60. McCain argued for "a broad construction of claim terms in support of its infringement case, but then argue[d] those same terms should be construed more narrowly to avoid invalidity." *Id*.; *see also id*. at 47. This illustrated McCain had to "twist" its case outside the normal bounds. *Id*. (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1351 (Fed. Cir. 2001)). For all these reasons, the Court found the '540 Patent invalid for indefiniteness under 35 U.S.C. § 112.

The Court's repeated findings that McCain's arguments lacked sufficient support or otherwise resulted in unsound outcomes illustrates the weakness of its position. And while McCain postures it is not the *correctness* of its position that matters but the *substantive strength*, *see* Dkt. 605, at 12, the Court finds this distinction immaterial. McCain's position was not correct because its substantive arguments were weak. McCain knew, or should have known, the '540 Patent did not cover PEF treatment in the manner Simplot employed that technology. And it knew, or should have known, the '540 Patent was invalid because

the claim terms were almost entirely impossible to comprehend.

These observations support a finding of exceptionalness.

b. Manner of Litigation

Simplot spends significant time arguing about McCain's behavior during discovery and how it increased the time and expense of this litigation with its tactics. It cites to passing comments the Court made in decisions disapproving of McCain's positions or arguments. McCain counters that it was Simplot, in fact, who delayed and drove up costs during discovery. It cites comments from the Court against Simplot.

The Court finds these arguments are not as persuasive or valuable as the prior discussion. Over nine and a half years have elapsed since the time McCain filed its initial suit in Illinois to final judgment on the '540 Patent being entered a few weeks ago. There are over 600 docket entries in this case. The Court has issued over a dozen *substantive* decisions (as well as numerous procedural orders and other opinions) addressing a litany of arguments, theories, and positions put forward by both parties. The Court ruled in favor of McCain on some issues and against McCain on others and in favor of Simplot on some issues and against Simplot on others. It even reversed itself. Thus, it is not hard to find instances in which the Court accepted or rejected either Parties' arguments or spoke with praise (or condemnation) against either Party. But, en masse, the Court cannot say that McCain's discovery tactics are worthy of fees.

Now, as the Court explained above, it agrees with Simplot that McCain's entire case has been weak from the start and that McCain's interpretations of the claimed terms was unsupported. Thus, to a certain degree, McCain's discovery tactics are likewise flawed

(because it continued to pursue a claim it should never have raised in the first instance). But, again, the Court's point is that both McCain and Simplot incurred some censure from the Court during discovery for litigation tactics so that factor, alone, is not indicative of anything "exceptional."

c. Conclusion

In sum, the Court gives less credence to Simplot's arguments regarding McCain's discovery tactics. But it agrees that McCain filed a targeted lawsuit against Simplot without a sufficient basis. Not only was Simplot the only company sued (when others were doing the same thing), but McCain knew or should have known that the '540 Patent could not be both valid and infringed. McCain premised its infringement claim on a construction of terms that were far too broad and subjective. In some instances, not even McCain's own expert could defend it. *See* Dkt. 474, at 50, 55, 60–61. The fact that McCain brought (and pursued) a case on that basis was unreasonable and qualifies as "exceptional."[9]

2. *Amount of Fees*

Having concluded Simplot is entitled to fees, the Court must turn next to the appropriate amount of any award. A few introductory comments.

First, because this case has been going on for so long, numerous attorneys and paralegals have been involved. For reasons unknown to the Court, Simplot elected to "write off" any timekeeper that was only peripherally involved. That cutoff? $25,000. In other

[9] McCain again references the Court's comments over the years about some decisions being a "close call," how this case dealt with complicated legal issues, and its praise of McCain's counsel. Those things are all still true. This case was complicated. Some decisions were a close call. And McCain's counsel are all excellent attorneys. But those things can all be true while it can still be true this case should never have left the starting gate.

words, Simplot is not seeking reimbursement for any of the dozens of people who billed less than $25,000 in this matter. This is Simplot's prerogative. However, this concession or reduction is immaterial to the Court. It will not *increase* Simplot's award elsewhere just because Simplot sua sponte *reduced* its own award here.[10]

Second, the Court has already explained it will not award Simplot's California attorneys their California rates. Dkt. 474, at 132–33.[11] As the Court explained there, the "relevant market" is Boise, Idaho. Those are the rates that will apply in this case. The Court does not want to take away from national counsel's expertise, experience, and contributions to this case; however, their involvement was not mandatory. Simplot was *not* in the position where it could not find competent local counsel to protect its interest. Case-in-point, fully 75% of the hours billed in this case were from Simplot's *Idaho* counsel.[12] On to the math.

First, McCain does not object to the hours sought. The Court has reviewed the timekeeper logs and finds the hours spent are adequately detailed and appropriate.

Likewise, McCain does not object to any rate for the Idaho attorneys or paralegals. The Court is very familiar with these attorneys and the rates in the Boise, Idaho, area. Because this case took a long time, the lawyers and paralegals have averaged out their

---

[10] To be clear, the Court is not implying Simplot is abandoning these fees as some rouse to garner favor with the Court at to other areas of its request. The Court is just mystified why Simplot would sacrifice hundreds of thousands of dollars it is otherwise entitled to. But Simplot can do what it pleases.

[11] Simplot reiterates, as it did before, that it has already paid its national counsel the rates it was billed so that's the going rate. Not so. Simply put, the Court does not care what Simplot paid. That's a contract between Simplot and Gibson Dunn. But it has no bearing on the Court's determination today. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), opinion amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987) ("determination of a reasonable hourly rate is not made by reference to rates actually charged[.]")

[12] Simplot requests fees for 9,085.70 hours expended. 2,193.80 of those hours were incurred by Gibson Dunn lawyers and paralegals in California. This represents 24% of the total hours requested.

hourly rates over the last decade. Such a practice is permissible. The attorney rates range from $282 per hour to $423 per hour. These are reasonable in the Boise area for attorneys with comparable experience. Simplot's paralegal rate of $174 per hour is also reasonable. Those fees result in a total of $2,275,594.60 and will be awarded. *See* Dkt. 602, at 27 (breakdown of fees).[13]

McCain does object to national counsel's rates. As the Court just noted, it will be reducing the fees to reflect Idaho rates.[14] The Court's standard practice when reducing fees from national counsel to match Idaho rates has generally taken two forms. The first is what the Court will call the "comparison" method. Here, the Court evaluates the out-of-state attorney's resume and matches it with an in-state attorney. Said another way, if the out-of-state attorney has been practicing for ten years, it will award a fee equal to an in-state attorney with ten years' experience. The second method is less defined and essentially reduces the out-of-state attorney rate down to the highest in-state rate. Said another way, the Court picks essentially the highest known rate in the relevant market and awards that to all out-of-state attorneys. While the second method is easier, it does not reflect the array of experience of the out-of-state attorneys. The Court finds the comparison method most appropriate in this case.

[13] Simplot's calculations are all off by a marginal amount. For example, it requests $904,646.97 for Dana Herberholz representing 2333.3 hours at $388 per hour. However, 2333.3 x 388 = $905,320.40. Similar discrepancies—some as small as $1; others a few hundred dollars—are present for all individuals. The Court has corrected the math to match the number of hours spent times the requested hourly rate.

[14] Simplot has already reduced its national counsel's rates downward. Dkt. 602, at 30–31. The Court appreciates Simplot's efforts. But the final calculations seem to be based on cases from Massachusetts and Delaware. *Id*. The Court does not know the legal market in those districts and finds it more appropriate to simply use the Boise market as the starting point.

The Court is aware that an Idaho state court judge recently awarded a senior partner at the Boise office of Holland and Hart $820 per hour.[15] The Court knows the attorney at issue in that case (Erik Stidham) and he is one of the best in Idaho. Nevertheless, a rate of over $800 per hour would be a *drastic* increase from where the Court was just last year. In *SBP LLLP v. Hoffman Constr. Co. of Am.*, the Court awarded an attorney with over forty years' experience $460 per hour. No. 19-cv-00266-DCN, 2025 WL 959517, at *4 (D. Idaho Mar. 31, 2025). And earlier this year, the Court awarded an attorney with over 40 years' experience $500 per hour. *Champine v. Boise Sch. Dist.*, No. 23-cv-00338-DCN, 2026 WL 1847099, at *2 (D. Idaho June 26, 2026). To be sure, those attorneys were both at smaller firms than Stidham and at smaller firms than Simplot's national counsel.

Notably, just last week Chief Judge Amanda K. Brailsford discussed the rising rates in Boise[16] and awarded a partner at Holland and Hart with 12 years' experience $595 per hour in a complicated Hague Convention child custody dispute. *Gorlitz v. Haydock*, 2026 WL 2906374, at *4 (D. Idaho Sept. 28, 2026). The Court has taken those decisions into account in fashioning its award today.

Gibson Dunn attorney Brian Buroker requested a mixed rate of $1,195 per hour. Buroker has been an attorney for 29 years. The Court finds an average award of $650 per

---

[15] That said, this was done in a round-about way. That court did not conduct a lodestar analysis per se. The case was deemed frivolous, so the judge awarded fees. However, he reduced the time spent "to forty hours at the hourly rate for defense counsel" and then awarded $32,800. Dkt. 601-19, at 6. Thus, by reverse engineering the math, that works out to $820 per hour. Respectfully, the Court is of the opinion that this amount is too high.

[16] Judge Brailsford analyzed recent cases from the undersigned (and others) illustrating a rise in fees over the past few years. She also noted Wendy Olsen—a respected and seasoned attorney at Stoel Rives in Boise charges $710 per hour. *Gorlitz*, 2026 WL 2906374, at *4. The Court fully trusts that this is Ms. Olsen's hourly rate; however, it is unaware of any court decision awarding that rate.

hour is appropriate. This is less than what Wendy Olsen ($710) and Erik Stidham ($820) are purportedly charging, but both of them have been in practice for over 35 years. This is, however, *more* than the Court previously awarded to two attorneys with 40+ years' experience, but again, those attorneys were both at relatively small firms. Thus, taking into account the legal market in Boise, the experience of these various attorneys, and the firm size, the Court finds $650 per hour is appropriate for Buroker.

The remaining Gibson Dunn attorney rates will be as follows: Vladimir Semendyai (10 years' experience) - $450 per hour; Anthony Brzozowski (8 years' experience) - $430 per hour; Alexander Harris (15 years' experience) – $500; Omar Amin (20 years' experience) – $550; Michael Walther (40 years' experience) - $700. Gibson's requested rate for their paralegal is $454 per hour. Judge Brailford, in her recent decision, awarded a paralegal $330 per hour but noted that was "significantly higher" than what the Court would normally award. *Gorlitz*, 2026 WL 2906374 at *4 (noting the high end of paralegal rates is typically $215 per hour). Judge Brailsford determined that award was appropriate given the paralegal's experience (30+ years) and the nature of the case. *Id*. Here, the Court finds an award for Gibson's paralegal (with over 20 years' experience) in the amount of $300 per hour is appropriate.

This is not an exact science. The Court has tried to account for the size of the firm and the experience of the attorneys involved. It has made those comparisons to attorneys it knows in Boise and the rates those attorneys charged and are currently charging. Critically, it must be remembered that this is a *blended* or averaged rate. And it's a little dated. Most of the work done in this case was billed between 2019-2024. Thus, the rate awarded today

is not necessarily the current market rate in Boise—for in-state or out-of-state attorneys. The Court has tried to harmonize each of these considerations with an eye towards equity.

With these rates in mind, Simplot is awarded fees for its national counsel as follows:

| Name | Hours | Rate | Award |
|---|---|---|---|
| Brian Buroker | 1137.5 | $ 650 | $ 739,375 |
| Vladimir Semendyai | 552.5 | $ 450 | $ 248,625 |
| Anthony Brzozowski | 280.9 | $ 430 | $ 120,787 |
| Alexander Harris | 84.6 | $ 500 | $ 42,300 |
| Omar Amin | 52.1 | $ 550 | $ 28,655 |
| Michael Walther | 27.2 | $ 700 | $ 19,040 |
| Gaya Holman (paralegal) | 59 | $ 300 | $ 17,700 |

This results in an award of $1,216,482.[17] Adding in the rates the Court already approved for Simplot's Idaho counsel results in a total award of $3,492,076.60.

Finally, it is unclear to the Court whether Simplot has included its fees in bringing the current motion as part of the total amount requested. The Court believes those *were not* included. *See* Dkt. 602-1 (counsel's declaration discussing how it will file a supplement with the Court for fees incurred for the instant motion). Because the Court is awarding fees today, Simplot should file this supplement forthwith so that the Court can add those fees to the award. Because the Court has already found fees are warranted, McCain cannot object on that basis. And assuming Simplot uses the hourly rates approved here, McCain cannot object on that basis either. It can, however, object to the hours spent if it so chooses. Simplot's supplement is due 14 days from the date of this order; McCain's objection (if any) seven days after that, and Simplot's reply (if necessary) seven days after that.

[17] Simplot's national counsel's original request was $2,139,549.50. Utilizing the Court's adjusted rates results in a reduction of $923,067.50.

## V. CONCLUSION

This was an interesting case. It was the first *Markman* hearing the undersigned held as a federal judge. And to the Court's knowledge, the design patent trial was only one of a handful of such trials in recent years in the region. The issues were interesting and challenging. And both sides worked hard.

But as for the '540 Patent, the Court agrees with Simplot. McCain should never have brought that claim in the first place. The objective evidence at the time *clearly* showed Simplot *did not* use PEF technology in the manner protected by the '540 Patent. McCain did not sue anyone else; only Simplot. And only after Simplot filed suit against McCain.

And then McCain argued for a broad construction (which the Court approved) only to then try and harmonize that broadness for infringement with a narrower interpretation for invalidity. It did not work. There was no basis for it. The terms were invalid for indefiniteness. McCain's decision to initiate and pursue a lawsuit on that basis lacked strength. For this reason, the case regarding the '540 Patent was exceptional and an award of fees is appropriate in the amount outlined above.

## VI. ORDER

1. Simplot's Bill of Costs (Dkt. 599) is APPROVED and Simplot is awarded taxable costs in the amount of $64,702.86.
2. Simplot's Motion for Attorney Fees is GRANTED in PART and DENIED in PART. It is granted to the extent the Court will award fees, and denied as to the amount requested. Simplot is awarded $3,492,076.60 in fees.
3. The Parties' Motions to Seal (Dkts. 600, 604) are GRANTED.

4. The Court will wait to enter a final amended judgment until it has received and resolved Simplot's forthcoming requests for fees associated with this motion. As noted, Simplot's supplement is due within 14 days, McCain can respond 7 days thereafter, and Simplot can reply 7 days after that.

DATED: October 5, 2026

David C. Nye
U.S. District Court Judge